applicable aggregates. LMC must defend and indemnify the RCAB for claims arising prior to March 31, 1964.

50. LMC's denial of any obligation to defend and indemnify the RCAB on the following grounds is meritless: (a) the "aggregate limits" of the policies are "exhausted"; (b) the RCAB did not obtain LMC's consent to the settlement which constitutes a voluntary assumption of liability on the part of the RCAB; (c) the underlying bodily injury claims are not "occurrences" within the meaning of the policy because they were "expected or intended from the standpoint of the insured"; (d) the RCAB failed to conduct adequate investigation of the underlying sexual abuse and negligent supervision claims; and (e) the RCAB is obligated to use statutory immunity to limit all awards to $20,000.

51. LMC has not satisfied, and will not be able to satisfy, its burden of proof on the following issues: (a) that there are aggregate limits in the policies issued to the RCAB that are applicable to the claims at issue; (b) that the global settlement was invalid as a voluntary assumption of liability on the part of the RCAB; (c) that the underlying claims were expected or intended by the RCAB; (d) the RCAB failed to conduct adequate investigation of the underlying sexual abuse and negligent supervision claims; and (e) that the RCAB is obligated to use its immunity from tort liability in the settlement and/or defense of the underlying claims.

52. LMC also issued excess policies from September 1973 through September 1977. These policies provide coverage with $5 million per occurrence limits of liability, without any applicable aggregate limits. In 1998, LMC wrongfully misrepresented to the RCAB that all primary policies issued to the RCAB covering the period prior to September 23, 1977 were "exhausted", when, in fact they were not. LMC and the RCAB thereupon entered into an

agreement whereby LMC would "buy-back" the excess policies insuring the period from 1973 through 1977, and LMC paid the RCAB $2.5 million in 2002. LMC knew or should have known that the primary policies were not, and could not be, "exhausted" by the payment of prior claims and that the excess policies themselves had no aggregate limits. The RCAB reasonably relied on LMC's statements as to the existence and applicability of aggregate limits in both the primary and the excess policies issued by LMC, and its agreement to allow LMC to "buy-back" the excess policies for the years 1973-1977 was premised on those statements and the RCAB's reasonable reliance thereon. The RCAB seeks a declaration that LMC's liability under the excess policies covering the period from September 1973 through September 1977 is not limited to the $2.5 million paid by LMC, and that those policies remain in full force and effect.

53.     An actual controversy exists between the RCAB and LMC concerning the rights and obligations of the parties with respect to claims alleging sexual molestation by various priests incardinated to the RCAB. The resulting uncertainty concerning its insurance coverage for these claims has caused the RCAB to incur significant costs, and continuing uncertainty can reasonably be expected to cause additional costs and disruption to the operations of the RCAB.

54.     The RCAB seeks a declaration that LMC issued policies to the RCAB from 1954 through March 31, 1983, and that those policies did not include aggregate limits applicable to bodily injury claims outside of the products liability and completed operations hazards. The RCAB seeks a further declaration that the underlying sexual abuse and negligent supervision claims are covered by the policies issued by LMC and the RCAB is not precluded from coverage for any of the reasons advanced by LMC. RCAB is entitled to judgment against LMC for defense costs and indemnity as aforesaid.

## COUNT II
## Breach of Contract

55. The RCAB repeats and realleges each and every allegation contained in paragraphs 1 through 54, as if fully set forth herein.

56. The RCAB fulfilled all terms and conditions of the liability insurance policies issued by LMC and is entitled to receive the benefits of the policies.

57. LMC has breached its contracts of insurance with the RCAB by refusing or failing to perform its duty to defend and indemnify the RCAB with respect to claims by individuals alleging sexual molestation by priests, and negligent supervision by the Individual Insureds. LMC's breaches include, without limitation: (a) its wrongful denial of any coverage for the Initial Claims on the ground that no coverage existed; (b) its wrongful denial of coverage for the portion of claims that occurred during coverage periods that LMC wrongfully asserted to be exhausted; (c) its wrongful denial of excess coverage from 1973-1977; (d) its wrongful denial of coverage for the Recent Claims on the ground that the RCAB had waived any coverage by its failure to secure LMC's consent to the recent agreement; (e) its wrongful denial of coverage for any claims arising prior to March 31, 1964; and (f) its wrongful denial of coverage on the ground of the spurious coverage defenses detailed above.

58. As a result of LMC's breach of the contract of insurance, the RCAB has been deprived of the benefit of the insurance coverage for which it paid premiums to LMC. The RCAB therefore has been or will be required to pay defense costs and make settlement payments, as well as attorneys' fees and other expenses to prosecute this action.

59. LMC is obligated, in light of its wrongful refusal to defend and indemnify the RCAB, to pay all expenses and settlement amounts incurred by the RCAB to date or in the future with respect to claims arising out of sexual molestation by priests associated with the RCAB and negligent supervision thereof.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing

60. The RCAB repeats and realleges each and every allegation contained in paragraphs 1 through 59, as if fully set forth herein.

61. LMC has violated the implied covenant of good faith and fair dealing by a variety of means, including in particular, and without limitation: (a) failing to do a complete and diligent search for the missing policies issued by LMC to the RCAB; (b) misrepresenting the terms of the policies; (c) wrongfully refusing to acknowledge its coverage obligations and to make an offer of settlement in a reasonable time; (d) failing to indemnify the RCAB for claims on the ground that the policies were "exhausted;" (e) misrepresenting that there had been an agreement to modify the policies when, in fact, there was never any such agreement; (f) asserting coverage defenses without reasonable basis, as set forth above; (g) asserting that the settlement constitutes a "voluntary payment and assumption of liability on the part of the RCAB"; and (h) refusing to accept an extension binder and supporting documentation as evidence of excess coverage from 1973-1977.

62. The position of LMC is contrived, in whole or in part, to limit its contractual liability and does not reflect a reasonable or good faith interpretation of its obligations under the contracts of

insurance issued to the RCAB.

63. By denying the coverage benefits to which the RCAB is entitled, and by forcing the RCAB to engage in costly litigation to secure those benefits, LMC has knowingly disregarded its obligations to the RCAB and intentionally inflicted injury on the RCAB.

## COUNT IV
### Fraud

64. The RCAB repeats and realleges each and every allegation contained in paragraphs 1 through 63, as if fully set forth herein.

65. There are no aggregate limits in the policies issued by LMC to the RCAB that are applicable to claims for bodily injury, except those arising out of the products liability or completed operations hazards (and, in the excess policies, the occupational disease hazard).

66. LMC represented that there were aggregate limits applicable to claims alleging sexual molestation for the purpose of inducing reliance by the RCAB. LMC either knew or should have known that there were no applicable aggregate limits contained in either the primary or the excess policies issued to the RCAB.

67. The RCAB reasonably relied to its detriment on the representations made by LMC, and as a consequence has been or will be required to pay defense costs and settlement payments.

## COUNT V
### Negligent Misrepresentation

68. The RCAB repeats and realleges each and every allegation contained in paragraphs 1 through 67, as if fully set forth herein.

69. There are no aggregate limits in the policies issued by LMC to the RCAB that are applicable to claims for bodily injury, except those arising out of the products liability or completed operations hazards (and, in the excess policies, the occupational disease hazard).

70. LMC misrepresented on multiple occasions that there were aggregate limits of liability applicable to the type of bodily injury claims at issue here. LMC failed to exercise reasonable care or competence in obtaining or communicating the information about the applicability of aggregate limits in the policies it issued to the RCAB.

71. The RCAB reasonably relied to its detriment on the representations made by LMC, and as a consequence, has been or will be required to pay defense costs and settlement payments.

## COUNT VI
### Unfair and Deceptive Acts and Practices

72. The RCAB repeats and realleges each and every allegation contained in paragraphs 1 through 71, as if fully set forth herein.

73. Both the RCAB and LMC are engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A, §11.

74. LMC has engaged in unfair and deceptive acts and practices by a variety of means, including in particular and without limitation by maliciously: (a) misrepresenting pertinent facts or insurance policy provisions relating to the coverages at issue (especially with regard to the aggregate limits); (b) failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (c) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (d) refusing to pay claims without conducting a reasonable investigation based on all available information; (e) refusing to timely pay defense costs to the RCAB; (f) asserting that the RCAB entered into an "agreement" to modify the insurance policies at issue to impose aggregate limits where none exist; (g) asserting that the settlement constitutes a "voluntary payment and assumption of liability on the part of the RCAB"; (h) asserting the spurious coverage defenses set forth above without any reasonable or good faith basis; and (g) refusing to accept an extension binder (along with other supporting documentation) as evidence of the excess policies issued to the RCAB from 1973-1977.

75. LMC's conduct constitutes a willful and knowing violation of its obligations under the contracts of insurance issued to the RCAB; such conduct occurred primarily and substantially in the Commonwealth.

76. The RCAB has suffered and will continue to suffer injury, including the loss of money and property, as a result of the wrongful conduct of LMC.

## COUNT VII
### Estoppel

77. The RCAB repeats and realleges each and every allegation contained in paragraphs 1 through 76, as if fully set forth herein.

78. LMC consistently refused to participate in settlement negotiations, but also consistently indemnified the RCAB to a limited extent for settlements made without its approval, although it did so on the basis of "aggregate limits."

79. LMC argues that the recent settlement agreement constitutes a voluntary payment and assumption of liability on the part of the RCAB, yet it raised no objection or even any comment when the proposals were made by the RCAB to the plaintiffs. LMC does not and cannot deny that it was fully informed of the substance and process of the negotiations that led to the settlement.

80. LMC has acknowledged that the types of claims at issue here – those alleging sexual abuse of individuals by clergy incardinated to the RCAB and negligent supervision by the RCAB and the Individual Insureds – are covered by the policies issued by LMC to the RCAB.

81. LMC is estopped by its conduct during the settlement negotiations and by its past conduct and course of dealing with the RCAB from asserting that the RCAB's payments are voluntary and an assumption of liability on the part of the RCAB, and that the claims at issue here are not covered by the policies issued to the RCAB.

WHEREFORE, the RCAB respectfully requests that this Court:

1. Declare under Count I that LMC is obligated to defend and indemnify the RCAB and Individual Insureds under the various contracts of insurance issued to the RCAB by LMC for claims arising out of the conduct of various priests between 1954 and 1983 without annual aggregate limits of liability on those policies;

3. Award the RCAB damages under Counts II, III, IV, and V, as well as its costs and attorneys' fees;

4. Award the RCAB its actual damages, as well as double or treble damages, and its costs and attorneys fees under Count VI; and

5. Award such other and further relief as the Court deems just and proper.

THE RCAB DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE

By its attorneys,

*/s/ Paul B. Galvani*

Paul B. Galvani (BBO# 183800)
Thomas H. Hannigan, Jr. (BBO# 220420)
Kate Cimini (BBO# 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: March 5, 2004