PEM/kjs/#254127                                                                                                9999-9999

## BUY-BACK AGREEMENT and RELEASE OF POLICIES

THIS AGREEMENT AND RELEASE (hereinafter "Agreement") is made this ____ day

of December, 2001, by and between the Roman Catholic Archbishop of Boston ("RCAB") with

its principal place of business in Boston, Massachusetts, and Lumbermens Mutual Casualty

Company (herein "LMC"), an Illinois corporation with its principal place of business in Long

Grove, Illinois (herein collectively the "Parties"):

### WITNESSETH:

1.    **Definitions**

1.1.    For the purpose of this Agreement, the term RCAB includes The Roman Catholic

Archbishop of Boston, a corporation sole, as it now exists, its officers, directors, employees or

agents and any predecessor or successor organization, affiliate, subsidiary, and/or division and

also includes all priests, deacons, pastors, vicars, bishops, archbishops, cardinals, parishes,

schools, or organizations within or ever affiliated with the RCAB. It is the intent of the Parties

that any company, or individual, or legal entity that could or does have an interest in the alleged

insurance policies which are the subject of this Agreement are included within this definition.

Further, it is the intent of the Parties that any company, or individual, or legal entity potentially

identified as a named insured or additional insured, or which could be defined as a named

insured or additional insured under the alleged insurance policies which are the subject of this

Agreement are also included within this definition, including, but not limited to, all priests,

deacons, pastors, vicars, bishops, archbishops, cardinals, parishes, schools, or organizations

within or ever affiliated with the RCAB.

1.2.    The term Lumbermens Mutual Casualty Company (herein "LMC") includes any

other insurance company that was or is now a member of the Kemper Insurance Companies.

The term includes, but is not limited to, American Motorists Insurance Company, American Protection Insurance Company, and American Manufacturers Mutual Insurance Company.

## 2.  **Background**

2.1.    From September 14, 1973 through September 23, 1977, LMC allegedly issued to RCAB certain umbrella or excess policies of general liability insurance.

2.2.    The alleged umbrella or excess policies of general liability insurance will be collectively referred to herein as the "LMC Policies."

2.3.    RCAB has contended, and LMC has denied, that the LMC Policies exist and that LMC is or may be obligated under the LMC Policies to defend and indemnify RCAB in connection with past, present and future claims for bodily injury, property damage, or other liability claims.

2.4.    By means of this Agreement, RCAB and LMC intend to put to rest and resolve all disputes and controversies between them relating in any way to whether coverage is available under the LMC Policies for any claims whether known or unknown; to satisfy, discharge, release, and terminate any and all past, present, and future rights and obligations under or in connection with the LMC Policies; and to effect the complete extinguishment and termination of any and all contractual and insurance relationships, express or implied, between RCAB on the one hand, and LMC, on the other, in respect of the LMC Policies.

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and undertaking herein contained, and intending to be legally bound, the Parties hereto agree as follows:

## 3.    **Payment, Cancellation, and Release of Further Policy Obligations**

3.1.    By its execution and delivery of this Agreement, RCAB acknowledges receipt from LMC of the sum of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) which sum represents a repurchase or "buy-back" of any coverage which RCAB may have, has, had or could have had under the LMC Policies. It is expressly understood that this is not a payment on any claim or claims.

3.2.    In consideration of the payment referred to in ¶3.1 hereof and the other provisions of this Agreement, the Parties hereby agree that:

(a)    Except insofar as rights and obligations arise by virtue of this Agreement, any and all duties and obligations, of any kind or nature whatsoever, past, present or future, that exist or might be deemed to exist under or in connection with the LMC Policies, are hereby satisfied, discharged, terminated and released; and a complete extinguishment and termination of any such coverage under these policies is hereby effected. RCAB acknowledges that as of the date of this Agreement RCAB has no liability insurance coverage under the LMC Policies.

(b)    The provisions of ¶3.2(a) hereof shall apply with respect to the LMC Policies in connection with any and all claims that have in the past been or that may in the future be asserted against RCAB and/or against the officers, directors, employees or agents of RCAB and all priests, deacons, pastors, vicars, bishops, archbishops, cardinals, parishes, schools, or organizations within or ever affiliated with the RCAB.

4.    **Non-Waiver of Rights**

4.1.    The Parties have entered into this Agreement as a means of finally compromising, settling and resolving all questions and issues among them relating to the existence of coverage for RCAB under the LMC Policies, without incurring the expense, inconvenience, and uncertainty of continued or protracted litigation. Nothing herein shall be construed or interpreted

3

as a concession or admission by the Parties with respect to any issue in dispute between them or with respect to any dispute either of them may have now or in the future with any other person, firm or entity; and neither this Agreement, nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any such issue or dispute.

5.    **Miscellaneous Provisions**

5.1.    This Agreement shall be construed under and in accordance with the laws of the State of Massachusetts.

5.2.    This Agreement constitutes the entire agreement and understanding between the Parties regarding the existence of, and regarding any coverage for claims that may exist under, the LMC Policies; and replaces, cancels, and supercedes any and all other or prior agreements, understandings, or undertakings of the Parties.  It is acknowledged that each party has participated in the drafting of this Agreement, and that any claimed ambiguity should not be construed for or against either party on account of such drafting.

5.3.    This Agreement may be amended only by a writing signed by or on behalf of each party hereto.

5.4.    This Agreement shall be binding upon and shall inure to the benefit of each of the Parties hereto and any person who may be described as a "named" or "additional" insured, or who may otherwise be entitled to make a claim under any of the LMC Policies; their respective subsidiaries, divisions, and affiliates; the directors, officers, employees and agents of any such entity; and the successors, assigns and trustees of any such entity or person.

5.5.    The individuals who have executed this Agreement on behalf of the respective Parties expressly represent and warrant that they are authorized to sign on behalf of such companies for the purpose of duly binding such companies to the terms of this Agreement.

5.6.    The terms of this Agreement shall be deemed CONFIDENTIAL and shall not be disclosed except as required by law or with the written consent of all Parties hereto; provided, however, that nothing in this Agreement shall prevent any party hereto from disclosing the existence and/or terms of this Agreement in any judicial proceeding (a) to enforce or construe this Agreement; or (b) to rebut any implied or express claim of "bad faith," "unfair claim practices," or similar other charge.

5.7    RCAB and LMC, each as to itself, represent and warrant that:

(a)    It has not and will not assign, transfer, convey or sell, or purport to assign, transfer, convey or sell to any Person any claims relating to the matters released herein;

(b)    It will not in any way voluntarily assist any other Person in the establishment of any claim against the other in any way relating to the investigation, handling, defense, or settlement of any and all of RCAB's claims for insurance coverage, incident to the LMC policies;

(c)    It has taken all necessary corporate and legal actions to duly approve the making and performance of this Agreement and that no further corporate or other approval is necessary;

(d)    It has read this Agreement and knows the contents hereof, and that it has signed this Agreement of its own free act; and

(e)    In making this Agreement it has obtained the advice of legal counsel.

5.8    LMC represents that as of the date of this Agreement, LMC has no other evidence of the existence of the LMC policies, other than those materials which have been provided to LMC by RCAB within the past several years.

WHEREFORE, the Parties have caused this Agreement to be executed on their respective behalves as of the date first above written.

ROMAN     CATHOLIC     ARCHBISHOP     OF BOSTON, a corporation sole

By: _____

WITNESS:

_Maria A. Pepi_

LUMBERMENS     MUTUAL     CASUALTY COMPANY

By: _____

WITNESS:

_____