UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE,<br>　　　　　Plaintiff,<br>v.<br><br>LUMBERMENS MUTUAL CASUALTY COMPANY,<br>　　　　　Defendant. | C.A.04-10461-DPW |

**MEMORANDUM IN SUPPORT OF LUMBERMENS MUTUAL CASUALTY
COMPANY'S MOTION FOR PROTECTIVE ORDER AND
FOR THE RETURN OF AN INADVERTENTLY PRODUCED DOCUMENT**

Defendant Lumbermens Mutual Casualty Company ("LMC") submits this Memorandum in Support of Its Motion for a Protective Order and for the Return of an Inadvertently Produced Document by The Roman Catholic Archbishop of Boston, A Corporation Sole (The "RCAB").

**OPERATIVE FACTS**

In fulfillment of its disclosure obligations in this case, LMC, through an initial disclosure of documents on July 1, 2004, and a number of supplemental disclosures thereafter, has provided the RCAB with more than 168,000 pages of documents. Affidavit of John E. Tener, ¶12. Inadvertently included among these, was a two-page document which contains privileged attorney-client information and attorney work product relative to LMC's investigation into the availability of reinsurance for the claims paid to the RCAB. Affidavit of John E. Tener, ¶14. LMC discovered this inadvertently produced document on August 17, 2004, after receiving notice that the RCAB had served a subpoena on Sidley, Austin, Brown & Wood, LLP ("Sidley Austin"), a law firm retained by LMC in connection with its investigation into the availability of

reinsurance. Affidavit of John E. Tener, ¶14. Upon reviewing the document, counsel for LMC confirmed with counsel at Sidley Austin that the document was privileged and contained confidential information intended only for LMC. Affidavit of John E. Tener, ¶¶15 and 16. Thereafter, on August 23, 2004, counsel for LMC sent a letter to the RCAB's counsel informing the RCAB's counsel that the document had been inadvertently produced. Affidavit of John E. Tener, ¶16; Ex. 2. By this letter, LMC requested the RCAB to delete the document from all media on which it was stored electronically and to destroy all hardcopies. Affidavit of John E. Tener, ¶17; Ex. 2. By letter dated August 24, 2004, counsel for the RCAB rejected LMC's request. Affidavit of John E. Tener, ¶18; Ex. 3.

As necessitated by the tight Phase I discovery deadlines set forth in the Court's June 3, 2004 Scheduling Order, LMC's counsel undertook extensive efforts to identify and review the voluminous documents required to be disclosed in accordance with Fed.R.Civ.P. 26(a)(1). All of the documents that were gathered from LMC were delivered to a document management firm for coding, indexing, and scanning. Affidavit of John E. Tener, ¶5. The imaged data comprised not only the actual image of each of the documents, but also searchable fields that included for each document the following categories of information: the beginning and ending bates numbers; the document type (e.g., correspondence, memorandum, handwritten notes); the document date; the author of the document; the direct recipient of the document; the recipients of copies of the document; and the optical character recognition ("OCR") of the document. Affidavit of John E. Tener, ¶6. It was the OCR element that enabled LMC's attorneys to effectively and efficiently review documents for privilege. Attorney Mary Cataudella, Attorney Brian McDonough, and a paralegal, Amy Marks, reviewed the 168,000 scanned pages using carefully constructed searches

in an effort to identify all materials that include information protected from disclosure by the attorney-client privilege or the work product doctrine. Affidavit of John E. Tener, ¶¶6-8.

With the exception of the single document that is the subject of this motion, the diligence of Attorney Cataudella, Attorney McDonough, and Ms. Marks appears to have resulted in a completely successful document review process. To date, LMC has produced to plaintiff a total of 72,910 documents comprising approximately 168,000 pages. Out of that massive volume only a single document, comprising just two pages, was inadvertently produced. Significantly, during the period of review and production, LMC's counsel in this action had not been informed that the Sidley Austin firm had been retained by LMC in connection with reinsurance matters related to the RCAB claims. Affidavit of John E. Tener, ¶11. Consequently, LMC's present counsel did not search the database for documents authored by or referencing Sidley Austin. Affidavit of John E. Tener, ¶11.

Counsel for both LMC and the RCAB recognized that despite their diligent efforts, due to the time constraints imposed by the Scheduling Order and the vast numbers of documents that would be produced by both parties, the inadvertent production of protected or privileged material was foreseeable. Accordingly, counsel for LMC and the RCAB discussed this issue and counsel for the RCAB requested counsel for LMC to draft an Inadvertent Disclosure Agreement. Affidavit of John E. Tener, ¶13; Ex. 1. The agreement states in pertinent part:

> 1. In the event that a document that is protected from disclosure by the attorney client privilege, the work product privilege, or any other privilege, is inadvertently produced by any party to this proceeding, the party may request that the document be returned.
>
> 2. In the event that such a request is made, the party to whom the inadvertently disclosed document was produced and their counsel and any other person to whom a copy of the document was provided, shall promptly return all copies of the document in their possession, custody, or control to the producing party and shall not retain or make any copies.

>   3.  Such inadvertent disclosure of a privileged document shall not be deemed a waiver of any privilege with respect to that document or other documents involving similar subject matter.

Counsel for the RCAB received the draft Inadvertent Disclosure Agreement on July 8, 2004. Affidavit of John E. Tener, ¶13. Despite repeated follow-up from counsel for LMC, counsel for the RCAB neither signed the Inadvertent Disclosure Agreement, nor responded to communications from LMC's counsel in this regard. Affidavit of John E. Tener, ¶13.

## ARGUMENT

### I. The Production of this Document Was "Inadvertent" as that Term has Been Construed by This Court.

The factors this Court has considered in determining whether a claimed inadvertent disclosure was, as a matter of law, "inadvertent," include: (1) the quantity of material that is claimed to have been inadvertently produced; (2) the amount of time that has lapsed since the production of the documents; and (3) the manner in which the documents were reviewed for privilege or work product and how the document production was managed. With respect to the first factor, there is a single two-page document, out of a production set exceeding 168,000 pages that was inadvertently produced. In VLT Corp. v. Vicor Corp., 194 F.R.D. 8 (D. Mass. 2000), this Court found that the disclosure of only two privileged documents supported a finding of inadvertence. Similarly, in Milford Power Limited Partnership v. New England Power Co., 896 F.Supp. 53 (D. Mass. 1995), this Court found that the eight documents claimed to be protected from disclosure by the attorney work product doctrine were produced inadvertently. In contrast to the facts in these cases, in Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287 (D. Mass. 2000), the movant claimed that two hundred documents constituting thousands of pages were inadvertently produced. This Court found that insofar as these documents contained

4

protected attorney work product, the production was grossly negligent and as a matter of law could not be deemed to be inadvertent. Cf., Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89 (D. Mass 2002) (the production of fifty-three pages of privileged material was not found to be inadvertent).

A second factor in determining inadvertence is the amount of time that has lapsed since the production of the documents. In VLT, plaintiff's counsel disclosed the documents as part of their obligations under Fed. R. Civ. P. 26(a)(1) on a rolling basis from September 28, 1998 through October 19, 1998. 194 F.R.D at 11. Plaintiff's counsel realized the inadvertent disclosure when the documents were attached to the mediation brief sent by defendant's counsel in mid-December of 1998. Id. After receiving the mediation brief, plaintiff's counsel explained that the documents had been inadvertently produced and requested their return. Id. The court held the production was inadvertent because the request for the return of the privileged documents was made "promptly" after the discovery of the flawed production. Id. at 20. In the present case, LMC's counsel became aware of the inadvertent production of the document in question on August 17, 2004, when it received notice of a subpoena served on the law firm whose privileged and confidential communication and work product the document reflects. After conferring with counsel at Sidley Austin, LMC's counsel made a prompt written request for its return on August 23, 2004.[1]

A third factor in determining inadvertence is the manner in which the documents were reviewed for privilege or work product and how the document production was managed. In Fleet National Bank v. Tonneson, 150 F.R.D. 10 (D. Mass. 1993), plaintiff's counsel reviewed and

---

[1] Sidley Austin, as well as LMC, served the RCAB with written objections to the request for documents included with the subpoena. The RCAB has not moved to compel or otherwise justify its entitlement to the Sidley Austin documents.

5

screened more than 50,000 documents for privilege, but failed to remove one of three volumes of an accounting report. The court found that plaintiff's counsel took sufficient precautions in screening the documents, as the screening was successful in catching Volumes I and II of the report, and allowed only one document out of 50,000 to slip through the screening. Id. at 19. Similar to the precautions taken in Fleet National Bank, in the present case, two experienced attorneys and a litigation paralegal reviewed more than 75,000 documents comprising more than 169,000 pages. Approximately two thousand documents were found to contain privileged communications or work product, and these documents were identified on a privilege log and withheld.[2] One document slipped through this diligent screening process. This diligence may be contrasted with the conduct of counsel in Texaco Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867 (1st Cir. 1995). In Texaco Puerto Rico, opposing counsel was allowed to review all of the producing party's documents and only after opposing counsel requested production of certain documents that had been reviewed did the producing party raise the claim of attorney-client privilege. In light of the insufficient effort made to ascertain the applicability of the privilege prior to the production, the Court held that the disclosure was not inadvertent.

Where LMC engaged in a detailed and thorough effort to review the documents prior to their production, realized the inadvertent disclosure promptly, and immediately requested its return, there is a sound basis to establish that the disclosure was "inadvertent" as a matter of law.

## II. LMC Has Not Waived the Work Product Immunity or Attorney-Client Privilege of this Inadvertently Produced Document.

Because the document in question clearly reflects privileged communications from counsel and reveals counsel's work product (an analysis by Sidley Austin for LMC relating to

---

[2] The vast majority of the withheld documents were generated by the law firm of Tressler, Soderstrom, Maloney & Priess who was retained by LMC in 1998.

6

reinsurance sums paid by LMC to the RCAB), the RCAB's counsel claims that LMC has "waived" privilege with respect to this document. See Affidavit of John E. Tener, ¶16; Ex. 3, August 25, 2004 letter from Paul Galvani, Esq. to Anthony Zelle, Esq. Though his letter provides no explanation as to why the inadvertent disclosure at issue should be construed to constitute a waiver--i.e., the intentional relinquishment of a known right--RCAB's counsel contends that the RCAB is nevertheless entitled to retain the document and to use the privileged information contained therein.

In Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89 (D. Mass. 2002), this Court noted that there have been three different approaches applied to determining whether an inadvertent disclosure constitutes a waiver and observed that in the District of Massachusetts there has been developing judicial support for the "middle ground" approach. The "middle ground" approach requires consideration of the circumstances relating to the inadvertent production. Specifically, the "middle ground" approach considers: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." Id. at 95, quoting Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 290-292 (D. Mass. 2000).[3] These five factors are similar to those considered in determining whether the disclosure was "inadvertent," and in the present case they overwhelmingly support the conclusion that LMC's inadvertent production

---

[3] In Amgen Inc., Judge Young chose not to apply the "strict accountability" approach delineated in Texaco Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867 (1st Cir. 1995). Judge Young stated that the language used by the First Circuit in Texaco provided for discretion in determining whether there was a waiver when a document was produced inadvertently. Amgen, 60 F.3d at 291. Judge Young also noted that if the First Circuit had intended to universally adopt the "strict accountability" approach in Texaco, it would not have described and analyzed the negligent conduct of the disclosing party, since that conduct would have been immaterial in the context of the strict accountability test. Id. at 291.

of the document at issue should not be deemed to constitute a waiver of the attorney-client privilege or the work product protection applicable to the inadvertently produced document.

    A.    **LMC Took Reasonable Precautions in Searching the Documents for Information Protected by the Attorney-Client Privilege and the Work Product Doctrine.**

In <u>VLT Corp. v. Vicor Corp.</u>, 194 F.R.D. 8 (D. Mass. 2000), the court found that reasonable precautions were taken by counsel who gave specific instructions to a paralegal in searching through documents for specific names of people who would be involved in confidential communications. LMC took far greater precautions than those taken in <u>VLT</u>. Two experienced attorneys and one experienced paralegal crafted a series of searches to find and review all documents that would potentially contain privileged information or work product. These searches included basic terms like "privilege" and "confidential" and also included the names of all of the attorneys and law firms who were believed to have had involvement with the claims by the RCAB. As noted above, present counsel for LMC, which was responsible for the review of the documents included in the initial disclosure, was not aware of the Sidley Austin firm's involvement in this case.[4]

    B.    **Counsel for LMC Recognized the Inadvertent Disclosure Immediately After the RCAB Served a Subpoena on Sidley Austin.**

LMC discovered the inadvertently produced document on August 17, 2004, after receiving notice that the RCAB served a subpoena on Sidley Austin, the law firm retained by LMC in connection with its investigation into the availability of reinsurance. Upon reviewing

---

[4] The fact that the Sidley Austin firm's involvement related to reinsurance matters raises a basic question of the relevance of the inadvertently disclosed document, as well as the documents sought by the RCAB subpoena that led LMC's counsel to discover the inadvertent disclosure. Particularly in Phase I of this litigation, which is limited to the existence of policies and their terms and conditions, inquiry into the availability of reinsurance for the LMC's payments to the RCAB is not even remotely likely to lead to the discovery of admissible evidence.

8

the document, counsel for LMC confirmed with counsel at Sidley Austin that the document was privileged and contained confidential information intended only for LMC. Thereafter, on August 23, 2004, counsel for LMC sent a letter to the RCAB's counsel informing the RCAB's counsel that the document had been inadvertently produced. By this letter, LMC requested the RCAB to delete the document from all media on which it was stored electronically and to destroy all hardcopies. By letter dated August 24, 2004, counsel for the RCAB rejected LMC's request. As observed by the court in VLT, supra, the prompt recognition and request for the return of inadvertently disclosed documents supports the conclusion that the inadvertent disclosure does not constitute a waiver of any privilege or protection from disclosure.

### C. The Scope of the Document Production in Question was Extensive and the Extent of the Inadvertent Disclosure was Minimal.

In Fleet National Bank v. Tonneson, 150 F.R.D. 10 (D. Mass. 1993), the court held that there was no waiver of privilege when a small number of documents were inadvertently produced out of a production of over 50,000 documents. As noted above, in the present case, more than 75,000 documents totaling more than 168,000 pages were reviewed under a tight deadline and only one document appears to have slipped through. Since the scope of this production was far larger than that in Fleet National Bank, and the inadvertent disclosure far more limited, this factor weighs against a finding of waiver. See also, Milford Power Limited Partnership v. New England Power Co., 896 F.Supp. 53 (D. Mass. 1995) (the production of eight inadvertently produced documents was insufficient to support a waiver of privilege)

### D. The Overriding Interests of Fairness and Justice Require a Finding that the Attorney Client Privilege and Work Product Immunity are Not Waived.

The Court's broad interests in fairness and justice support the conclusion that LMC's inadvertent disclosure does not constitute a waiver of any privilege or protection from disclosure.

9

In balancing the equities in <u>Fleet National Bank</u>, the court considered whether the opposing party was misled by the disclosure, whether the opposing party relied upon the inadvertently produced document, and whether it would be unjust, at this point, not to compel production. The court stated, "the appropriate question to ask when inadvertent disclosure . . . is involved is not whether it remains essential to continue to recognize the privilege; the question, rather, is whether there is cause not do so . . . ." 150 F.R.D. at 15.

Where the document in question does not provide any information relative to the existence of policies issued by LMC to the RCAB, or the terms or conditions of any policies issued by LMC to the RCAB, the RCAB cannot credibly contend that it was misled by, or relied upon the material to its detriment. Moreover, LMC is seeking to protect opinion work product, which is granted greater protection. <u>See</u>, <u>In re Grand Jury Subpoena</u>, 220 F.R.D. 130, 144 (D. Mass. 2004). Where reinsurance is not an issue in this case, and LMC's retention of Sidley Austin reflects its belief and concern that it may be involved in a dispute regarding reinsurance that may be applicable to the payments made to the RCAB, it remains essential to continue to recognize the privilege. The RCAB's efforts to avail itself of the benefit of LMC's inadvertent production may not be wholly inappropriate; however, "while lawyers have an obligation to vigorously advocate the positions of their clients, this does not include the obligation to take advantage of a clerical mistake in opposing counsel's office where something so important as the [work product] privilege is involved." <u>Milford Power</u>, <u>supra</u>, at 59 (insert in original), <u>quoting</u> <u>Resolution Trust Corp. v. First of America Bank</u>, 868 F.Supp. 217, 219-220 (W.D. Mich. 1994).

## CONCLUSION

For the foregoing reasons, LMC respectfully requests this Court to:

1. ALLOW defendant's **Motion for Protective Order and Return of An Inadvertently Produced Document** and specifically order:

   a. That plaintiff return the document bates numbered LM 168380 – LM168381 and all copies thereof to the defendant, as well as all notes or other work product reflecting the contents of such materials, and purge all references of these privileged materials from plaintiff's files, including electronic databases;

   b. That plaintiff refrain from showing the document to anyone who has not yet seen it; and

   c. That no use shall be made of defendant's inadvertently produced document by plaintiff in this case.

Respectfully submitted,

LUMBERMENS MUTUAL CASUALTY COMPANY

By its attorneys,

*/s/ Anthony R Zelle*

September 3, 2004

John E. Tener, BBO No. 563791
Mary L. Cataudella, BBO No. 553350
Anthony R. Zelle, BBO No. 548141
Brian P. McDonough, BBO No. 637999
Nancy M. Cremins, BBO No. 658932
Robinson & Cole LLP
One Boston Place
Boston, Massachusetts 02108
(617) 557-5900

## Local Rule 7.1(A)(2) Certificate

I, Anthony R. Zelle, attorney for defendant Lumbermens Mutual Casualty Company in the above captioned matter, hereby certify that on September 2, 2004, I conferred with counsel for the plaintiff regarding the subject of the within motion and that we attempted in good faith to resolve or narrow the issues raised by the instant motion.

*Anthony R Zelle*

_____
Anthony R. Zelle