UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Roman Catholic Archbishop of Boston, a Corporation Sole,<br><br>              Plaintiff,<br><br>    v.<br><br>Lumbermens Mutual Casualty Company,<br><br>              Defendant. | Civil Action No. 04-10461-DPW |

## MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

The Roman Catholic Archbishop of Boston, a Corporation Sole (the "RCAB"), hereby moves for an order compelling Defendant Lumbermens Mutual Casualty Company ("LMC") to produce all documents on its privilege log relating to the subject matter of three coverage opinions issued from the firm of Morrison, Mahoney & Miller to LMC in the mid-1990s. These opinions were voluntarily and intentionally disclosed to the RCAB by LMC, thereby effecting a waiver of privilege with respect to the subject matter of the three opinions. The RCAB also requests an order compelling LMC to produce all documents relating to the subject matter of a memorandum drafted by Mary Kay Reardon, an executive at the Kemper Insurance Companies, as well as a separate opinion issued to LMC by Sidley Austin Brown & Wood which was also produced to the RCAB by LMC. These documents were contained in a supplemental production made by LMC on August 2, 2004, and for reasons set forth below, their production constitutes a waiver of the subject matter contained within, to the extent it was not already waived by the production of the three Morrison, Mahoney & Miller opinions.

## BACKGROUND

The RCAB and LMC exchanged documents relevant to discovery issues with their Initial Disclosures. Both the RCAB and LMC each produced approximately 175,000 documents and withheld

many documents as privileged.  Three coverage opinions written by attorneys at Morrison, Mahoney & Miller  (the "Morrison Coverage Opinions") in 1994 and 1995 were among the documents withheld by LMC as protected by the attorney-client privilege.  However, LMC changed its mind and voluntarily produced the Morrison Coverage Opinions at the deposition of Mary Kay Reardon on July 26, 2004, July 27, 2004, and July 28, 2004, and LMC produced related correspondence shortly thereafter.

LMC produced three separate Morrison Coverage Opinions to the RCAB: one dated July 26, 1994; one dated March 2, 1995; and one dated March 16, 1995.  Morrison, Mahoney & Miller generated these opinions in response to requests from LMC, and they cover the following subjects:

1. Statute of Limitations
2. Calculation of date of loss
3. Definition of bodily injury under policies pursuant to Massachusetts law
4. Insurer's duty to defend a principal for an agent's intentional torts
5. Insurer's duty to defend and indemnify the insured and the insured's employees/agents
6. Single versus Multiple Occurrences
7. Existence and applicability of aggregate limits in the policies issued to the RCAB
8. Coverage for multiple damages pursuant to M.G.L. c.93A
9. Impact of the charitable immunity defense
10. Pertinent policy provisions
11. Limits of liability
12. Existence of an occurrence
13. Applicability of personal injury coverage
14. LMC's issuance of form letter disclaimers
15. General recommendations for future claims handling, including reservations of rights
16. Proving the existence and terms of an insurance policy

Shortly after producing the three Morrison Coverage Opinions, LMC produced several pieces of correspondence between LMC and Morrison, Mahoney & Miller related to the three Coverage Opinions.

On August 26, 2004, the RCAB issued a Subpoena Duces Tecum to Morrison, Mahoney LLP (the "Morrison Subpoena") requesting:

> All documents relating to any opinion or advice given to Lumbermens
> Mutual Casualty Company and/or Kemper Insurance Companies ("LMC")
> regarding insurance coverage afforded to the Roman Catholic Archbishop
> of Boston, a Corporation Sole (the "RCAB"), including, but not limited to,
> any opinion or advice regarding insurance policies issued to the RCAB by
> LMC, the existence or applicability of aggregate limits in any insurance
> policy provided to the RCAB by LMC, and/or the meaning of the term

>'occurrence' in any insurance policy provided to the RCAB by LMC. These documents should include, without limitation, all materials sent to Morrison, Mahoney & Miller ("Morrison") by LMC, as well as notes, memoranda, and correspondence reflecting communications between Morrison and LMC. Such documents should include all communications relating to the opinions issued by Morrison on March 16, 1995, March 2, 1995, and July 26, 1994.

Morrison, Mahoney LLP is not required to respond to the Subpoena until September 8, 2004. We anticipate receiving the documents requested in the Subpoena on that date; we are not yet asking this Court for any order enforcing the Morrison Subpoena. However, since the production of the three Morrison Coverage Opinions, as well as the related correspondence, has waived any privilege that may have attached to other documents withheld by LMC as privileged that address the same subject matter, the RCAB respectfully requests that this Court issue an order compelling the production by LMC of all such documents.

On August 2, 2004, LMC made a supplemental production to the RCAB consisting of approximately 230 pages of documents. These documents were produced in hard copy rather than electronically. In later correspondence, in response to a request by counsel for the RCAB, LMC represented that approximately the first 200 pages of documents came from the files of Augustin Vega, an LMC employee, and the remaining 30 documents came from the files of Paul Meany, a former LMC employee. The first document in the stack of documents appears to be a file folder label, and it is comprised of a single page. (Attached as Exhibit 1) The second document in the stack is a two-page memorandum which refers to advice LMC received from Sidley Austin Brown & Wood LLP ("Sidley") in a coverage opinion issued on October 9, 2003. (Attached as Exhibit 2) According to the Sidley Memorandum, the fact that Sidley was retained to opine on reinsurance issues is directly related to the lack of applicable aggregates in the policies issued to the RCAB.[1] It specifically states that there are no

---

[1] Specifically, it states: "Given the lack of applicable aggregates in the primary and excess policies, we retained the firm of Sidley & Austin to assist us in evaluating the cession of this loss to the Global Slip and Facultative Reinsurers."

aggregates applicable to the claims brought against the RCAB and further discusses the advice LMC was given in the October 9, 2003 opinion.

The subjects directly addressed in this memorandum include:

1. Reinsurance of the RCAB account, including Global Slip reinsurance and Facultative reinsurance
2. The meaning of occurrence in the underlying policies and the reinsurance certificates
3. Existence and applicability of aggregate limits to claims alleging negligent supervision in the policies issued to the RCAB

On August 17, 2004, the RCAB issues a Subpoena Duces Tecum for Sidley calling for the production of:

> All documents relating to any opinion or advice given to Lumbermens Mutual Casualty Company and/or Kemper Insurance Companies ("LMC") regarding insurance or reinsurance relating to the Roman Catholic Archbishop of Boston, A Corporation Sole ("RCAB"), including, but not limited to, any opinion or advice regarding reinsurance of any insurance policy provided to the RCAB by LMC, the existence or applicability of aggregate limits in any insurance policy provided to the RCAB by LMC, and/or the meaning of the term "occurrence" in any insurance policy provided to the RCAB by LMC.

When counsel for the RCAB informed Sidley that the attorney-client privilege had been waived in relation to the documents requested in the Subpoena, and faxed a copy of the Sidley Memorandum as evidence of that waiver, Sidley refused to produce the documents. Sidley objected to the Subpoena on the grounds of attorney-client privilege and relevance, among other objections.[2] Shortly thereafter, we received a letter from LMC requesting the return of the Sidley Memorandum on the ground that it had been inadvertently produced.[3]

The material addressed in the Sidley Memorandum is particularly relevant at this stage of the proceedings, since it indicates that LMC presented the terms and conditions of the RCAB policies to the

---

[2] Sidley also objected on the grounds that the request was duplicative of requests that have already been served on LMC, that the subpoena called for the production of documents in a different jurisdiction, and that the subpoena imposes undue burden and expense on Sidley under Fed. R. Civ. P. 45.

[3] This week, counsel for LMC informed us that LMC was planning to file a Motion to Compel the return of the Sidley Memorandum.

reinsurers quite differently than it did to the RCAB. It further indicates that LMC is arguing inconsistent positions on the occurrence issue to its reinsurers and to the RCAB. To the extent the subject matter addressed in the Sidley Memorandum was not waived by LMC's disclosure of the Morrison Coverage Opinions, it has been waived by LMC's voluntary and intentional production of the document. Accordingly, the RCAB respectfully requests that this Court issue an order compelling the production of all documents withheld by, or otherwise within the custody or control of, LMC related to the subject matter of the Sidley Memorandum.

The third document in the stack of approximately 230 pages produced to the RCAB is a memorandum dated July 23, 2003 from Mary Kay Reardon to Jim Meehan and Dennis Brand, both executives at LMC or Kemper. (Attached as Exhibit 3). It is both a review of the historical handling of the RCAB account and a discussion of the existence and applicability of aggregate limits in the policies issued to the RCAB. It clearly states, on multiple occasions, that there are no aggregate limits contained in the policies that apply to the claims brought against the RCAB.[4] It also discusses the substance of advice given by LMC's attorney, Pat Maloney. It states "[o]ur attorney feels that we can argue estoppel by representation, since they had the opportunity to review the policies and argue coverage. The attorneys for the RCAB *relied on our interpretation* and never questioned our analysis." (emphasis added). This is particularly relevant to the dispute at issue here, since it indicates that the purported "agreement" between the RCAB and LMC to impose aggregates was the product of discussions with LMC's attorney rather than with the RCAB. Specifically, the subject matter addressed in the Reardon Memorandum is:

1. Existence and applicability of aggregate limits in the policies issued to the RCAB
2. The existence of a purported "agreement" between the RCAB and LMC to impose aggregate limits on the policies issued by LMC

3. The definition of occurrence under the policies

4. Reinsurance of the policies issued to the RCAB

To the extent any privilege that may have attached to documents relating to the subject matter of this memorandum was not waived by LMC's earlier disclosures, it was waived by LMC's production of the Reardon Memorandum.[5] Accordingly, the RCAB respectfully requests that this Court issue an order compelling the production of all documents withheld as privileged, or otherwise within LMC's custody or control, concerning, or relating to, the subject matter of the Reardon Memorandum.

## ARGUMENT

### A. LMC's Advertent Disclosure of the Three Morrison Coverage Opinions has Effected a Waiver of the Subject Matter of those Coverage Opinions

The three Morrison Opinions were voluntarily and intentionally produced to the RCAB. However, even inadvertent disclosures may constitute a waiver of the privilege, and, "as a general statement, a waiver premised on inadvertent disclosure will be deemed to encompass all other communications on the same subject." *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 97 (D.Mass. 2002), *citing Texaco P.R. Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 883-4 (1st Cir. 1995). Since the disclosure of the Morrison Opinions was not even inadvertent, the privilege clearly has been waived as to the subject matter of the three coverage opinions. *See Ken's Foods, Inc.*, 213 F.R.D. at 97 (holding that, since disclosure was not even inadvertent, the privilege was clearly waived and communications on the same subject as those previously disclosed must be produced).[6]

---

[4] It states: "We really have no argument on the aggregate." It also states that "[LMC's] review confirms the aggregate only applies to Products and Completed Operations."
[5] LMC has never asked for the return of the Reardon Memorandum, or asserted that its production was inadvertent.

[6] When a party argues that a party withholding documents on the basis of privilege has put them 'at-issue' in the litigation, Massachusetts courts have adopted a balancing test to determine the scope of the waiver. *See AMCA International Corporation v. Phipard*, 107 F.R.D. 39 (D.Mass. 1985). In cases where a withholding party relies on an advice of counsel defense, courts in the First Circuit and Massachusetts have held that the fundamental principle is fairness, and "it would be fundamentally unfair to allow a party to disclose opinions which support its position, and simultaneously conceal those that are adverse." *Sain-Gobain/Norton Industial Ceramics Corp. v. General Electric Company*, 884 F.Supp. 31 (D.Mass. 1995). In contrast to waiver premised on the 'at-issue' or 'advice of counsel' doctrines, the waiver in the present case was express and voluntary.

### B. The Reardon Memorandum

The Reardon Memorandum was also produced voluntarily and intentionally to the RCAB. Moreover, there has been no assertion by LMC that its production was, in any way, inadvertent. Accordingly, production of this document waives any privilege related the subject matter addressed in the Reardon Memorandum.

### C. LMC's Claim that the Sidley Memorandum was Produced Inadvertently is Spurious

There are three wholly distinct predicates for the waiver of any privilege that may have attached to the Sidley Memorandum, or documents related to the subject matter of Sidley Memorandum. First, LMC's disclosure of the Morrison Coverage Opinions has effected a waiver of all documents related to the subject matter addressed in those coverage opinions, which encompasses the topics addressed in the Sidley Memorandum. Second, LMC's disclosure of the Reardon Memorandum further waives any privilege that may have attached to the Sidley Memorandum. Finally, LMC's advertent disclosure of the Sidley Memorandum itself effects a waiver not only of the memorandum itself, but all documents regarding the same subject matter.

LMC's assertion that the production of the Sidley Memorandum was inadvertent is spurious. Even if it *were* produced inadvertently, an assertion the RCAB rejects, "[i]t is apodictic that inadvertent disclosures may work a waiver of the attorney-client privilege." *Texaco P.R. Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 883 (1st Cir. 1995). "[I]t also must be recognized that inadvertent disclosures can have a significance that transcends the documents actually disclosed." *Id.* at 883. In general, a "waiver premised on inadvertent disclosure will be deemed to encompass all other such communications on the same subject." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 293 (D.Mass. 2000).

LMC asserts that the Sidley Memorandum was produced inadvertently, but there is little basis for that assertion. Simply because something unfavorable to the producing party was produced does not render its production inadvertent. Massachusetts courts consider five factors to determine whether a

document has been produced inadvertently or not.  Those factors are: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error; (3) the scope of the production; (4) the extent of the inadvertent disclosure; and (5) the overriding interest of fairness and justice.  *Amgen, Inc.* 190 F.R.D. at 291.

The Sidley Memorandum was the first substantive document in a production of approximately 230 documents.  The only document that was on top of it in the stack was a one page document that stated "vol I part 1 180014775".  (Attached as Exhibit 3)  It was produced to the RCAB in hard copy form, in a stack of documents approximately two inches thick, approximately one month after LMC produced approximately 165,000 pages of documents to the RCAB in electronic format.  Even a cursory review of the documents by counsel for the LMC would have revealed the existence of this document in that production.

LMC did not request the return of the Sidley Memorandum until almost a month after *its* production, after counsel for the RCAB sent a copy to Sidley Austin who then sent it to LMC.  The production of this document was not inadvertent, even though the document is quite unfavorable to LMC.  It implies that LMC represented the terms and conditions of the policies quite differently to its reinsurers than to the RCAB, as well as indicates that LMC was and is well aware that there are no aggregates in the policies issued to the RCAB that are applicable to claims for negligent supervision.  As stated earlier, the fact that a document is unfavorable does not imply that its production was inadvertent. LMC should be compelled to produce all documents in its possession, custody or control that relate to the subject matter of the Sidley Memorandum.

## **CONCLUSION**

LMC has waived any protection that would have been provided to any documents related to the subject matter contained in the Morrison Coverage Opinions as a result of its voluntary disclosure of the

Morrison opinions.[7]  Similarly, LMC's voluntary production of the Reardon Memorandum has waived any privilege that may have attached to documents concerning the subject matter addressed in that memorandum, to the extent that privilege was not already waived.  There are three predicates for the waiver of any privilege that may have attached to the Sidley Memorandum: the disclosure of the Morrison Coverage Opinions; the disclosure of the Reardon Memorandum; and the advertent disclosure of the Sidley Memorandum itself.  LMC's claim that production of that document is clearly spurious, as LMC cannot qualify under the standards set by the courts of this jurisdiction.

Accordingly, the RCAB respectfully requests that this Court issue an order compelling the production of all documents, whether withheld as privileged or otherwise within the custody or control of LMC, related to the subject matter of the Morrison Coverage Opinions, the Sidley Memorandum, and the Reardon Memorandum.

Roman Catholic Archbishop of Boston, a
Corporation Sole
By their attorneys,

/s/ Paul B. Galvani
Paul B. Galvani (BBO No. 183800)
Thomas H. Hannigan, Jr. (BBO No. 220420)
Bryan R. Diederich (BBO No. 647632)
Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

---

[7] The waiver is not limited to documents, but also includes redactions.  Portions of 'Focus File Notes' were redacted before being produced to the RCAB.  These redactions seem to relate to discussions of the Morrison Coverage Opinions, among other things.  Any privilege that may have attached to these redacted portions of the File Notes has been waived.

Dated: September 3, 2004

## Local Rule 7.1(A)(2) Certification

I, Paul Galvani, attorney for the Roman Catholic Archbishop of Boston, a Corporation Sole, hereby certify that I have conferred with counsel for LMC regarding the subject of the instant motion and we attempted in good faith to resolve or narrow the issues raised by the instant motion.

                                                                             /s/ Paul B. Galvani

                                                                             Paul B. Galvani