
Insurance Companies

Copy To: Dennis Brand, Executive, Long Grove

Date: July 23, 2003

To: Jim Meehan, Claim Executive, Long Grove

From: Mary Kay Reardon, Corporate Claim, 12SW0782

Regarding: **Insured: Archdiocese of Boston**

This is an update on the Archdiocese of Boston sexual misconduct claims.

The sexual abuse claims were first reported to Kemper in 1993. Initially, disclaimers were issued based on the fact that there was no bodily injury, property damage or occurrence. In 1995, we secured a legal opinion from the firm of Morrison, Mahoney and Miller in Boston. It was their recommendation that we cover the defense of the claims under a reservation of rights and that we should reimburse the RCAB for any settlements they previously made. They did not mention anything about limits or aggregates. As far back as 1994, there was mention by Kemper staff that each primary policy had a $300,000 aggregate. It appears that this was obtained from the dec page that lists all of the coverage and indicates a $300,000 B. I. aggregate.

There are numerous references in correspondence between Kemper and the RCAB, including Kemper internal memos indicating that each primary policy had an aggregate of $300,000. The original adjuster assigned to the claim kept detailed records of the exhaustion of each policy aggregate. When Paul Meany took over these cases in 1998, he continued to track the aggregate and would advise the RCAB when the aggregate was breached.

We do not know what happened to our copies of the policies. In July 2000 Paul Meany was deposed by Mitch Garibedian, plaintiff attorney in the Goeghan cases regarding the coverage available to the Archdiocese of Boston. According to a chronology of events, Al Hilber of the Tressler New Jersey office reviewed the coverage and attended Paul's deposition. Paul testified regarding the exhaustion of the aggregate on the primary policies. The RCAB never disagreed that aggregates applied to the primary policies. It appears that Mr. Hilber also relied on the dec page.

LM   168382

Because of their pending bankruptcy, the RCAB retained a coverage attorney. The RCAB's attorney secured the policies from the insured and advised that she did not agree with our coverage position about the aggregates. We secured copies of the policies from RCAB and our review confirms that the aggregate only applies to Products and Completed Operations. Obviously, this information adds significant additional exposure under our primary policies. All primary policies from 03/31/64 to 03/31/83 are exposed.

Augie Vega and Pat Maloney met with the RCAB and their attorneys. They raised the issue that all parties agreed with our coverage interpretation and that both parties told the plaintiffs that the primary policies were exhausted. They claim that to date, they have paid $8 million in claims that would have fallen in our primary coverage years.

If the RCAB admits that there is additional coverage because there are no aggregates, they also face additional exposure for the years where there is no insurance coverage. This acknowledgement will only raise the bar on existing claims. Based on the information we have available, there are approximately 313 additional reported claims that would fall in the 1964 to 1983 policy years.

We do have other coverage defenses.

We have previously made the argument that for the later years of abuse and the repeat offenders, the RCAB intentionally moved the offenders from location to location, knowing that they would continue to sexually abuse children. Based on some of the testimony of RCAB employees, there were several requests made that the RCAB address the abuse cases and remove the offenders from parish work.

We also can argue occurrence. The claims against the RCAB are for lack of supervision. We believe that the alleged failure to supervise constitutes the occurrence and that each time a priest abused a child is one occurrence. We feel that both of these arguments are strong.

As far as the aggregates are concerned, the RCAB had the policies at all times and they never disagreed with our analysis. Our attorney feels that we can argue estoppel by representation, since they had the opportunity to review the policies and argue coverage. The attorneys for the RCAB relied on our interpretation and never questioned our analysis.

The RCAB was attempting to schedule mediation and wanted to put together a pot of $25 million to settle all outstanding claims. The RCAB was willing to come up with $15 million; they were looking to Travelers for $4 million and $6 million from us. We agreed to the $6 million contribution.

We felt that if we could settle all pending claims for a contribution of $6 million, we would consider it as long as we were confident that it would settle all pending cases. The demand was in the $75 million to $100 million range. We agreed to fund the $6 million for the mediation. The mediation never took place.

The following chart lists the open reserves, paid and outstanding reserves for the excess policies.

LM 168383

| Policy Year | Loss Reserve | Loss PTD | Legal Reserve | Legal PTD | Remaining Reserves |
|---|---|---|---|---|---|
| 1977 - 1978 | $1,319,350 | $860,300 | $194,230 | $99,829 | $ 553,451 |
| 1978 - 1979 | $1,570,000 | $520,572 | $500,000 | $452,235 | $1,097,193 |
| 1979 - 1980 | $1,460,020 | $152,016 | $300,000 | $70,339 | $1,537,665 |
| 1980 - 1981 | $ 659,890 | $357,094 | $300,000 | $113,555 | $ 489,241 |
| 1981 - 1982 | $1,653,030 | $259,448 | $300,000 | $118,981 | $1,574,601 |
| 1982 - 1983 | $872,630 | $52,570 | $300,000 | $125,042 | $995,018 |
| Total | $7,534,920 | $2,202,000 | $1,894,230 | $979,980 | $6,247,170 |

The above reserves are all posted to the excess policies.

The primary and excess policies from 1973 to 1982 are subject to the global slip. Our retention varies from tear to year. These would be filed as one occurrence per treaty year. According to Ceded Re, we have good policy language to support this position.

```
1973  $1,500,000
1974  $1.500,000
1975  $1,750,000
1976  $2,000,000
1977  $2,000,000
1978  $2,500,000
1979  $2,500,000
1980  $2,500,000
1981  $3,000,000
1982  $3,000,000
```

According to Stat, they have reserved for the total available limits, less the applicable reinsurance for the policy years 1973 to 1982.

We recently authorized Pat Maloney to go to Boston and review the discovery on many of our pending cases. During the meeting, the Kemper downgrade was discussed. The Rogers firm claimed that they were unaware of the recent changes at Kemper and that the company was in a run-off situation. When asked about our ability to pay claims, Pat Maloney indicated that Kemper was currently meeting their obligations under the policies.

The RCAB has indicated a possible buy back arrangement. I think we really need to explore a buy back of all policies.

We really have no argument on the aggregate, but we do have other coverage defenses that we believe are strong When coverage counsel reviewed the claims, many involved only one or two alleged incidents of abuse. These cases are defensible, as the RCAB did not have notice. Also, the later these cases are reported, the better argument we have on the statute of limitation defenses

Attached are two spreadsheets compiled by the Tressler firm. These represent the sexual perpetrators and the victims, including the alleged dates of offense.

LM   168384

It is my recommendation that we explore settlement up to $12 million. If this is not sufficient to settle, then we should pursue a DJ and force the issue with the RCAB. Since the RCAB now is aware of the Kemper downgrade, this may be the time to force the coverage issue. A DJ would not be decided quickly and I believe the RCAB now has concern about Kemper's financial stability.

It is impossible at these times to place a value on the open claims that fall within primary policy periods. Ceded Re has been notified of this coverage issue. There is also facultative reinsurance on some years. We met with Ceded Re and Stacey Schwartz believes that she can properly present the cases to the reinsurers. She is aware that we are considering a buy back.

Once you have had an opportunity to review this material, we should conference on our strategy going forward and the possibility of a buy back arrangement.

LM    168385