UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Roman Catholic Archbishop of Boston, a Corporation Sole, ) ) ) ) Plaintiff, ) ) v. ) ) Lumbermens Mutual Casualty Company, ) ) Defendant. ) ) | Civil Action No. 04-10461-DPW |

**OPPOSITION TO LUMBERMENS MUTUAL CASUALTY COMPANY'S MOTION FOR PROTECTIVE ORDER AND FOR THE RETURN OF AN INADVERTENTLY PRODUCED DOCUMENT**

The Roman Catholic Archbishop of Boston, a Corporation Sole (the "RCAB"), respectfully submits this Opposition to Lumbermens Mutual Casualty Company's ("LMC") Motion for Protective Order. By its motion, LMC seeks the return of a memorandum that clearly addresses the non-existence of applicable aggregate limits in the policies issued by LMC to the RCAB (the "Sidley Memorandum")[1], contrary to LMC's assertions. LMC's motion is predicated upon egregious misstatements of fact coupled with inapplicable statements of law.

As explained in detail in the RCAB's Motion to Compel the Production of Documents, filed September 3, 2004 (the "RCAB's Motion to Compel"), any privilege that may have attached to the Sidley Memorandum was waived by LMC's voluntary production of the Morrison, Mahoney & Miller Coverage Opinions (the "Morrison Coverage Opinions") and the

---

[1] The Sidley Memorandum is attached to the RCAB's Motion to Compel as Exhibit 2.

memorandum prepared by Mary Kay Reardon on July 23, 2003 (the "Reardon Memorandum")[2] which address the same subject matter. LMC's arrant misstatements as to the nature and substance of the Sidley Memorandum notwithstanding, the memorandum's relevance to this instant action is unmistakable. Moreover, its production of the Sidley Memorandum was intentional rather than inadvertent. Contrary to LMC's assertions, the Sidley Memorandum was not invisible in a morass of over 165,000 pages of documents; it was produced to the RCAB over a month after the initial disclosures in a small supplemental production containing only 230 pages of documents. Since this production of a relevant, non-privileged document cannot be deemed inadvertent, LMC's argument premised on inadvertent production is simply beside the point. However, even LMC's wholly disingenuous account fails to establish, as a matter of law, that its production of the Sidley Memorandum did not effect an independent waiver of any privilege that may have attached.

## I. LMC'S PRODUCTION OF THE MORRISON COVERAGE OPINIONS EFFECTED A WAIVER OF ANY PRIVILEGE THAT MAY HAVE ATTACHED TO THE SIDLEY MEMORANDUM

As explained in detail in the RCAB's Motion to Compel, LMC effected a waiver of the attorney-client privilege by its production of the three Morrison Coverage Opinions and the Reardon Memorandum. The waiver encompasses all subject matters addressed in the Morrison Coverage Opinions and the Reardon Memorandum, which include the existence and applicability of aggregate limits, as well as the definition of "occurrence", in the policies issued by LMC to the RCAB. Rather than being "an analysis by Sidley Austin for LMC relating to reinsurance sums paid by LMC to the RCAB", as asserted by LMC (which, aside from being untrue, is totally nonsensical, since no *reinsurance* sums were ever paid to the RCAB), the Sidley

---

[2] The Reardon Memorandum was produced at the same time as the Sidley Memorandum, and is attached to the RCAB's Motion to Compel as Exhibit 3.

Memorandum directly addresses the lack of applicable aggregate limits in the policies issued by LMC to the RCAB.[3] Its relevance to the instant matter is unmistakable. It provides clear insight not only into the actual terms and conditions of the policies, but also into LMC's understanding and misrepresentations concerning the same. It shows that LMC knows full well that the policies it issued to the RCAB do not contain applicable aggregates, contrary to its assertions in these proceedings. The Sidley Memorandum clearly demonstrates that LMC's continued insistence that aggregate limits do apply is nothing more than a charade, and it renders meritless LMC's assertions that "inquiry into the availability of reinsurance for LMC's payments to the RCAB is not even remotely likely to lead to the discovery of admissible evidence."

Since the Sidley Memorandum relates directly to the subject matter of the Morrison Coverage Opinions and the Reardon Memorandum, any privilege that may have attached to it was waived when those admittedly privileged opinions and the memorandum were knowingly produced.[4] It necessarily follows that whether its production was inadvertent is irrelevant, and, accordingly, LMC is not entitled to its return. To the contrary, the RCAB is entitled not only to the Sidley Memorandum itself, but to the opinion letter and related materials.

## II. THE PRODUCTION OF THE SIDLEY MEMORANDUM WAS NOT INADVERTENT

In addition to the foregoing, LMC's production of the Sidley Memorandum was not inadvertent. Instead, it was produced deliberately to the RCAB by counsel for LMC. In express

---

[3] The memorandum on page 1 states "[g]iven the lack of applicable aggregates in the primary and excess policies," and on page 2 states "given the lack of an applicable aggregate in the underlying primary and excess policies as originally written." In fn. 1 of the Memorandum, the author states "[n]otwithstanding the fact that Kemper and the RCAB have been operating under the assumption that the primary and excess policies have an aggregate limit, the Policy information that has been located reflects aggregate limits that apply with respect to (1) all bodily injury included within the completed operations hazard and (2) bodily injury included within the products hazard." The claims at issue in this case – claims relating to sexual abuse – do not relate to either products liability or completed operations and hence the aggregate is not applicable.

[4] The Morrison Coverage Opinions were handed to counsel for the RCAB by counsel for LMC at the latter's 30(b)(6) deposition in Chicago on July 27, 2004. The Reardon Memorandum was produced on August 4, 2004.

contradiction to LMC's assertions regarding the scope of its production, and as stated in the RCAB's Motion to Compel, the Sidley Memorandum was not hidden among 165,000 other documents in an electronic production. Instead, it was near the top of a small stack of documents produced in hard copy on August 4, 2004, over a month after LMC's large production. It also was produced after the 30(b)(6) deposition of LMC, and after counsel for the RCAB had informed LMC that it had effected a waiver of all privileged documents concerning the subject matter of the Morrison Coverage Opinions. The small stack of approximately 230 pages was accompanied by a cover letter from counsel for LMC, and was followed up with an email in response to a query by counsel for the RCAB concerning the source of the documents produced.[5]

It was not until August 23, 2004, over three weeks after its production, and after counsel for the RCAB had faxed the Sidley Memorandum to Sidley Austin, who in turn faxed it to counsel for LMC, that LMC asked for its return. This was in spite of the fact that LMC knew of its existence in the production, by its own admission, at *least* a week prior to its request.[6] Its production cannot be considered inadvertent; the fact that LMC now regrets that it was produced does not render its production inadvertent as a matter of law.

### III. EVEN IF THE PRODUCTION HAD BEEN INADVERTENT LMC'S PRODUCTION OF THE SIDLEY MEMORANDUM WOULD HAVE EFFECTED A SEPARATE WAIVER OF THE PRIVILEGE

The cases relied on by LMC as support for its argument that the production of the document was inadvertent and did not effect a waiver of any privileges are inapposite. Even if

---

[5] Counsel for the RCAB requested that LMC provide it with information about the source of the documents produced. In the reply, counsel for LMC stated that their only set of hard copies was currently at the vendor for coding, but that he would send the information as soon as the hard copies were returned. (Attached as Exhibit A) Shortly thereafter, counsel for LMC sent an email explaining that the first 207 pages (LM168379-168586) came from the files of Augustin Vega, and the final 25 pages (LM168588-168613) came from the files of Paul Meany. (Attached as Exhibit B) The Sidley Memorandum was among the Vega files, and must have been the focus of attention of LMC's counsel.

[6] In its motion, LMC asserts that it "discovered" that the Sidley Memorandum was in the production on August 17, 2004, although it did not request its return until August 23, 2004.

LMC could make the requisite showings that the document was privileged and that the privilege had not been waived, and that its production was not in fact intentional, it completely fails to establish that its production did not effect a wholly separate waiver. LMC fails to recognize the distinction between those cases interpreting "inadvertence" within the meaning of a stipulated protective order, to which the RCAB and LMC are not parties,[7] and those addressing the separate question of when a disclosure constitutes a waiver of any applicable privilege or protection.[8]

      The situation in the present case is more closely analogous to the situation present in *Amgen, Inc.*, where the Court held that an inadvertent disclosure constituted a waiver largely on the basis of "the ease with which the disclosure could have been prevented." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 190 F.R.D. 287, 292 (D.Mass. 2000). If the production of this document was not in fact intentional, which the RCAB contends it was, then it easily could have been prevented by a cursory look through the small stack of documents before they were produced to the RCAB. Moreover, LMC's contention that counsel did not know Sidley Austin had been retained is wholly irrelevant. Again, a cursory review of the Memorandum would have informed the reader that Sidley Austin was counsel to LMC. Accordingly, even if the privilege had not been waived previously and its production were deemed inadvertent, LMC's production of the Sidley Memorandum under the circumstances would effect a waiver of any privilege that may have attached.

---

[7] LMC and the RCAB never agreed on a stipulated protective order on inadvertent disclosure. When counsel for LMC finally sent a draft to the RCAB, it was not akin to what was expected and it was a complete non-starter.

[8] In *VLT Corp. v. Unitrode Corp.*, a case repeatedly relied on by LMC, the Court was charged with interpreting a stipulated protective order, which specified that an inadvertent disclosure would not constitute a waiver if certain requirements were met. The Court interpreted "inadvertent" to mean unintended, but not purposeful or grossly negligent. *See VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8 (D.Mass. 2000). However, in a situation without such an

## CONCLUSION

For the reasons stated above, LMC's Motion for Protective Order should be denied in its entirety.

        ROMAN CATHOLIC ARCHBISHOP OF
        BOSTON, A CORPORATION SOLE
        By its attorneys,

        /s/ Paul B. Galvani
        Paul B. Galvani (BBO No. 183800)
        Thomas H. Hannigan, Jr. (BBO No. 220420)
        Bryan R. Diederich (BBO No. 647632)
        Kate Cimini (BBO No. 654336)
        Ropes & Gray LLP
        One International Place
        Boston, Massachusetts 02110-2624
        (617) 951-7000

Dated: September 10, 2004

---

agreement between the parties, "[i]t is apodictic that inadvertent disclosures may work a waiver of the attorney-client privilege." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 291 (D.Mass. 2000).