C

8/30/2004 Jeffrey A. Newman

```
1                    MR. GALVANI:  Excuse me.  Can I just
2          see the other two?
3                    MS. CATAUDELLA:  Sure.
4                    MR. GALVANI:  Go ahead.
5     Q.   With regard to Exhibit Number 3, which is the
6          July 3rd, 2002 letter, was this the first
7          written response that you received from
8          Mr. Rogers or the Rogers Law Firm responding to
9          your inquiries regarding coverage?
10    A.   Except from letters saying that he was seeking
11         information, yes.
12    Q.   Okay.  After receiving this letter -- well,
13         strike that.  I note in Paragraph 1 there is
14         a -- and I will quote this.  "RCAB had coverage
15         with Kemper Insurance from at least 1965 through
16         March 31st, 1983.  The primary policies during
17         this time period have now been exhausted."
18                    Did you have any discussions with
19         Attorney Rogers about the fact the primaries had
20         been exhausted?
21                    MR. GALVANI:  Object to the form.
22                    MR. SHERMAN:  Object.
23    A.   Well, I called him after receiving the letter,
24         and I had a discussion with him about the
```

```
 1          information he had imparted.  The discussion
 2          didn't focus solely on that issue, but I wanted
 3          to know the process by which he got the
 4          information.  So the answer to your question is
 5          sort of.
 6    Q.    Well, when you asked him what the process was by
 7          which he obtained this information, what did
 8          say?
 9    A.    He said he may inquiry of the insurance carrier
10          and that is the information they sent to him.
11    Q.    Was there any discussions about aggregate
12          balances -- yearly aggregate balances in that
13          conversation?
14    A.    May I take a look at the letter?
15    Q.    Sure.
16    A.    He informed me -- I'm answering you in response
17          to your question.  He informed me that for a
18          certain period of time the primary policies of
19          Kemper had been exhausted.  I made inquiry as to
20          the details of that, and he informed me that
21          there was a limitation on the aggregate amount
22          for certain periods of time and that based on
23          claims that had been paid out, those limits had
24          been exhausted.  That's my best recollection on
```

**8/30/2004 Jeffrey A. Newman**

```
 1          that issue.

 2     Q.   Did he -- when you said for a certain period of

 3          time, do you recall what that period of time --

 4          did he state what the period of time was?

 5     A.   Well, we were referring to the letter, so I

 6          believe that the period of time we were

 7          referring to was 1965 to 1983.

 8     Q.   Did he tell you what the aggregate limits were,

 9          what that number was?

10               MR. GALVANI:  Objection.

11     A.   I don't remember.  I don't remember if he told

12          me in that conversation.

13     Q.   Did you ever ask him for some sort of an

14          accounting that would have shown how he came to

15          this $26 million figure that he represented was

16          available by way of excess policies?

17               MR. SHERMAN:  Objection.

18               MR. GALVANI:  Objection.  Could I see

19          the document?

20               MS. CATAUDELLA:  Sure.

21               (Document handed to counsel.)

22     A.   An accounting, you mean a proof?

23     Q.   Yes.

24     A.   I don't remember.  I don't believe I did.
```