UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE, <br><br> Plaintiff, <br><br> v. <br><br> LUMBERMENS MUTUAL CASUALTY COMPANY, <br><br> Defendant. | Civil Action No. 04-10461-DPW |

**LUMBERMENS MUTUAL CASUALTY COMPANY'S MOTION
TO COMPEL FURTHER TESTIMONY OF THE ROMAN CATHOLIC
ARCHDIOCESE OF BOSTON, A CORPORATION SOLE, 30(b)(6) DESIGNEE
ON THE SUBJECT OF THE SEARCH FOR EVIDENCE OF POLICIES**

I.  **INTRODUCTION**

After presenting a witness as its 30(b)(6) designee on subjects relating to the search for documentary evidence of insurance policies issued by Lumbermens Mutual Casualty Company ("LMC"), the Roman Catholic Archbishop of Boston, A Corporation Sole ("RCAB"), produced more than 500 pages of materials which demonstrate that from the time the RCAB first made a claim to LMC for insurance coverage, it had copies of the critical policy forms in its possession. These documents were produced to LMC on August 4, 2004 and on September 3, 2004 (the last day of Phase I discovery). By letter dated September 9, 2004, counsel for LMC requested to resume the deposition of the RCAB 30(b)(6) designee on the subjects relating to the search for documentary evidence of insurance policies. In an e-mail dated September 13, 2004, counsel for the RCAB refused this request.

BOST1-838265-1

LMC seeks to resume the deposition to inquire about the RCAB's recent search for policies and/or secondary evidence relating to the existence of the policies and their terms and conditions. Because the question of whether the RCAB conducted a diligent search and inquiry for the policies is a precondition to RCAB's ability to use secondary evidence, LMC should be permitted to question the RCAB about its eleventh-hour production; in particular, why these documents located by the parishes in the summer of 2004 were not located previously. It appears from this recent production that the policy forms and other evidence of policies issued by LMC to the RCAB have always been in the possession of the RCAB. However, throughout the period from 1992 through the present, and as a fundamental predicate to all of its present claims for insurance coverage, the RCAB has steadfastly maintained it did not have any policies or other materials to support its claim that LMC provided liability insurance to the RCAB. How and where these policy forms and other policy related materials were found, and how simple it was for the RCAB to locate them, is not only critical to LMC's defense against the RCAB's claims, but is essential information in the context of the pending motion for summary judgment.

In its for pending motion for summary judgment, the RCAB contends that it is entitled to rely upon secondary evidence to establish the existence and terms and conditions of policies issued by LMC to the RCAB. The recent document production seems to establish that during the twelve years since the RCAB first sought insurance coverage from LMC, the RCAB failed to conduct a diligent search for materials evidencing the existence and terms of the LMC policies and by the present motion, LMC seeks to compel testimony that will further undermine the RCAB's pending motion for summary judgment.

## II. DISCUSSION

### A. LMC is entitled to inquire into the RCAB's recent production of documents, including how and where the RCAB obtained these documents.

Proof of the existence, and terms and conditions of lost or missing insurance policies, is governed by the best evidence rule. Fed. R. Evid. 1001-08. While the production of an original document is generally required to prove the contents of a writing, if the original has been lost or destroyed, secondary evidence is admissible to prove its contents. Fed. R. Evid. 1002, 1004. In this case, the RCAB must show that it conducted a diligent but unsuccessful search and inquiry, and that the search encompassed areas in which policies most likely would have been found. *See* Sylvania Electric Products v. Flanagan, 352 F.2d 1005 (1965) (1st Cir.).

The RCAB produced its 30(b)(6) designee, Joseph McEnness, for deposition on August 2, 2004. During that deposition, McEnnes revealed that he had recently made an inquiry to all parishes and institutions "requesting a search for all documents that they would have in their possession....and requesting that they forward any apparent documents to Ropes & Gray." (Affidavit of John Tener, ¶ 2, hereinafter "Tener Aff. ¶__.") Attorney Galvani then respresented that "[t]hose documents, if I may interject, Mr. Tener, have been dribbling in over the last several days. I'll be making a supplemental production to you today of what has been found so far." Id. Counsel for LMC expressly reserved the right to resume the deposition based on any newly produced documents.

On August 4, the RCAB produced 392 pages of documents to LMC, the majority of which LMC had never seen before. (Tener Aff. ¶ 3.) The documents included invoices and statements to a variety of parishes and institutions allegedly seeking reimbursement for insurance premiums. (Tener Aff. ¶ 4.) The production also contained copies of LMC policy forms apparently located in this last minute search, policy forms which the RCAB claims it could never

3

locate. (Tener Aff. ¶ 4.) Nearly a month later, on September 3, 2004, the RCAB produced an additional 225 pages of documents that included policy related documents included standard coverage forms used by LMC, invoices and statements to parishes and institutions. (Tener Aff. ¶ 6,7.) After receiving those documents, counsel for LMC promptly advised counsel for the RCAB that he wished to resume the deposition of the RCAB 30(b)(6) designee on the subjects relating to the RCAB's search for policies and evidence of the policies issued by LMC. (Tener Aff. ¶ 8.) The RCAB's counsel refused this request. (Tener Aff. ¶ 9.)

The fact that RCAB has now located materials that evidence the existence, terms and conditions of policies issued by LMC, which for the past decade it has claimed it did not have, is critical to the issue of the RCAB's diligence in searching for policy related materials at the time it initially presented claims to LMC. The RCAB contends that it did not have any policy related materials, and particularly that it did not have any information relating to the applicable aggregate limits of any LMC policies. The documents that the RCAB has recently produced establish that the RCAB not only had policy materials relating to the applicable aggregate limits, but it also had the very documents that the RCAB relies upon for its claim that LMC's representations concerning the applicability of aggregate limits were false.

Through the further examination of the RCAB 30(b)(6) designee on the subjects relating to the RCAB's search for policies and evidence of the policies, LMC will be able to establish that the RCAB had copies of these policy forms and other materials during the many years that the RCAB and LMC were dealing with the underlying sexual molestation claims. This goes to the heart of LMC's opposition to the pending motion for summary judgment, and more generally, its defense against the RCAB's claims of misrepresentation. The RCAB cannot credibly argue that it *reasonably* relied on any alleged misrepresentation by LMC relating to the

4

applicability of aggregate limits, or any other terms and conditions of the policies, when it had the forms containing those policy terms in its possession and failed to raise the very arguments that it is now raising. Accordingly, inquiry into how these policies were obtained, and from where they were obtained, should be permitted through the resumption of the 30(b)(6) deposition.

**Wherefore**, for all of the foregoing reasons, LMC request that this Court order the RCAB to produce for further testimony the RCAB's 30(b)(6) designee who can testify as to the search for and location of documents the RCAB produced on August 4, 2004 and September 3, 2004 and the failure of the RCAB to search for and locate them previously.

## REQUEST FOR ORAL ARGUMENT

LMC requests that the Court permit oral argument on this Motion.

Respectfully submitted,

LUMBERMENS MUTUAL CASUALTY COMPANY

By its attorneys,
ROBINSON & COLE LLP

*/s/ John E. Tener*

John E. Tener, BBO No. 563791
Mary L. Cataudella, BBO No. 553350
Anthony R. Zelle, BBO No. 548141
Brian P. McDonough, BBO No. 637999
Robinson & Cole LLP
One Boston Place
Boston, Massachusetts 02108
(617) 557-5900

September 22, 2004

## Local Rule 7.1(A)(2) Certificate

I, John E. Tener, attorney for defendant Lumbermens Mutual Casualty Company in the above captioned matter, hereby certify that on September 9 and 13, 2004, I conferred with counsel for the plaintiff regarding the subject of the within motion and that we attempted in good faith to resolve or narrow the issues raised by the instant motion.

*/s/ John E. Tener*

_____
John E. Tener