# A

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 12128    Page 1 of 5

Case 1:04-cv-10461-DPW   Document 48-2   Filed 09/22/2004   Page 2 of 6

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 12128**

*2004 U.S. Dist. LEXIS 12128, ** 

FEDERAL DEPOSIT INSURANCE CORPORATION v. R.W. BECK, INC., et al.

CIVIL ACTION NO. 01-CV-11982-RGS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2004 U.S. Dist. LEXIS 12128

July 1, 2004, Decided

**DISPOSITION:** [*1] Defendant's motion to compel allowed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff Federal Deposit Insurance Corporation (FDIC) brought a legal malpractice action against defendant law firm. The law firm moved to compel the FDIC to produce various documents that had been withheld on claims of attorney client privilege and work product doctrine protection. Defendant engineering firm joined in the motion.

**OVERVIEW:** The law firm argued that the FDIC waived any asserted privilege by placing allegations of malpractice "at issue." According to the complaint, the law firm's substandard advice precipitated a ruling that a plant had failed to achieve a certain operating status. As a result, the plant was ordered to refund a substantial sum to a customer, which in turn forced the FDIC into a global settlement of the plant's bankruptcy obligations. The law firm sought the opinions, and the underlying work product on which they were based, that were given to the FDIC by outside and in-house counsel regarding the relevant regulations, the bankruptcy, and the related adversary proceedings. The court found that the law firm's defense was built on the premise that its advice was qualitatively no worse, and was perhaps better than any other that the FDIC received, and that in any event, it was being unfairly singled out as the proximate cause of the unfavorable bankruptcy result. The legal opinions and advice given by others that may have contributed to the bankruptcy debacle was not only enmeshed with, but central to any defense of the law firm's defense of the FDIC's claims.

**OUTCOME:** The law firm's motion to compel was allowed, but was limited to certain opinions (and related work product) of counsel. The engineering firm's motion was denied.

**CORE TERMS:** advice, plant, work product, attorney-client, discovery, in-house, motion to compel, malpractice, settlement, waived, privileged communications, confidentiality, admonition, disclosure, enmeshed, waive, work product doctrine, legal malpractice, regulations, joined

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Disclosure & Discovery > Privileged Matters
Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege
  The attorney-client privilege must be narrowly construed because it comes with

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 12128
Case 1:04-cv-10461-DPW   Document 48-2   Filed 09/22/2004   Page 3 of 6
Page 2 of 5

**HN1** substantial costs and stands as an obstacle of sorts to the search for truth. As with any privilege, attorney-client privilege can be waived, even implicitly (although implied waivers are hen's teeth rare). This is especially true in a civil proceeding where, because the privilege lacks a constitutional dimension, the liberal federal policy favoring discovery is of substantially greater relative weight. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Work Product
Civil Procedure > Disclosure & Discovery > Privileged Matters
Evidence > Privileges > Waiver of Privilege

**HN2** It is settled law that by placing privileged communications or attorney work product "at issue" in civil litigation, a party waives any applicable claim of privilege where nondisclosure would cause manifest unfairness to the opposing party. A waiver is not automatic, but like most things judicial, is subject to a balancing test. The test requires an arbitrating court to consider whether a defendant has demonstrated the relevancy of the materials sought, whether there is any reasonable alternative source for the information the materials contain, and whether the plaintiff's presumptively valid interest in preserving the confidentiality of its privileged communications outweighs any need for disclosure. The privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails. More Like This Headnote

Civil Procedure > Trials > Subpoenas

**HN3** The purpose of Fed. R. Civ. P. 45(d)(2) is to give an adversary sufficient notice of the documents for which a privilege is asserted. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
Evidence > Privileges > Waiver of Privilege

**HN4** In a civil damages action, fairness requires that a privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege

**HN5** In appropriate circumstances, a litigant may implicitly waive the attorney-client privilege, at least in part, by injecting certain types of claims or defenses into a case. That said, given the sanctity of the privileges involved, a court is obligated to craft its order in such a way so as to limit the permissible discovery to what is truly "at issue." More Like This Headnote

**COUNSEL:** For Federal Deposit Insurance Corporation, Plaintiff: Floyd Robinson, LEAD ATTORNEY, F.D.I.C., Washington, DC.

For Federal Deposit Insurance Corporation, Plaintiff: Paul A. Winick, LEAD ATTORNEY, Thelen Reid & Priest LLP, New York, NY.

For R.W. Beck, Inc., R.W. Beck Group, Defendants: David J. Hatem, LEAD ATTORNEY, Donovan & Hatem, LLP, Boston, MA.

For Bingham, Dana & Gould, Defendant: David S. Blatt, Vidya Atre, LEAD ATTORNEYS, Williams & Connolly, Washington, DC.

Get a Document by Citation - 2004 U.S. Dist. LEXIS 12128 Page 3 of 5

Case 1:04-cv-10461-DPW Document 48-2 Filed 09/22/2004 Page 4 of 6

For Bingham, Dana & Gould, Carlos J. Bianchi, Kenneth Chin, Stephen E. Merrill, Defendants: John K. Villa, Margaret Keeley, LEAD ATTORNEYS, Williams & Connolly, Washington, DC.

For Bingham, Dana & Gould, Defendant: Neal A. Rosen, LEAD ATTORNEY, Bingham McCutchen LLP, Boston, MA.

**JUDGES:** Richard G. Stearns, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Richard G. Stearns

**OPINION:** MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO COMPEL

STEARNS, D.J.

On May 3, 2004, the law firm of Bingham Dana LLP (Bingham), the defendant in a legal malpractice action brought by the Federal Deposit Insurance Corp. (FDIC), filed a motion to compel the FDIC to produce various documents that **[*2]** had been withheld on claims of attorney client privilege and work product doctrine protection. On May 21, 2004, a co-defendant engineering firm, R.W. Beck, Inc. (Beck), joined in the motion. Bingham argues that the FDIC, as the Receiver for the failed Bank of New England, N.A. (BNE) n1, waived any asserted privilege by placing allegations of malpractice "at issue."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 BNE had provided the financing for Megan Racine Associates, Inc. (MRA), to construct a co-generation electric power plant in Canton, New York. When MRA went bankrupt, the FDIC, through the RECOLL Management Corporation (RECOLL), became the operator of the plant. According to the FDIC, it engaged Bingham and Beck to develop a plan to assure the plant's "QF status" under Federal Energy Regulatory Commission (FERC) regulations. While Bingham disputes the FDIC's description of its responsibility for overseeing the operating status of the plant, for purposes of deciding what is "at issue" in this litigation, I will adopt the characterization of Bingham's role, as it is set out in the FDIC's Complaint.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*3]**

HN1 The attorney-client privilege "must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." In re XYZ Corp., 348 F.3d 16, 22 (1st Cir. 2003). As with any privilege, attorney-client privilege can be waived, even implicitly (although implied waivers are hen's teeth rare). Greater Newburyport Clamshell Alliance v. Public Serv. Co. of N.H., 838 F.2d 13, 17 (1st Cir. 1988). This is especially true in a civil proceeding where, because the privilege lacks a constitutional dimension, the "liberal federal policy favoring discovery is of substantially greater relative weight." Id. at 19.

HN2 It is settled law that by placing privileged communications or attorney work product "at issue" in civil litigation, a party waives any applicable claim of privilege where nondisclosure would cause manifest unfairness to the opposing party. n2 Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975). A waiver, as the First Circuit made clear in Clamshell Alliance, is not automatic, but like most things judicial, is subject to a balancing test. The test requires an arbitrating **[*4]** court to consider whether a defendant has demonstrated the relevancy of the materials sought, whether there is any reasonable alternative source for the information the materials contain, and whether the plaintiff's presumptively valid interest in preserving the confidentiality of its privileged communications outweighs any need for disclosure. "The

Get a Document by Citation - 2004 U.S. Dist. LEXIS 12128 Page 4 of 5

Case 1:04-cv-10461-DPW Document 48-2 Filed 09/22/2004 Page 5 of 6

privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." Clamshell Alliance, 838 F.2d at 20.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 While Bingham complains that the FDIC's privilege log is deficient, in the court's judgment it is complete enough to comply with HN3 the purpose of Rule 45(d)(2), which is to give an adversary sufficient notice of the documents for which a privilege is asserted. See In re Grand Jury Subpoena (Newparent, Inc.), 274 F.3d 563, 575-576 (1st Cir. 2001).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

That Bingham has met [*5] the threshold showing of relevance is established by a precis of the core allegations asserted against it in the FDIC's Amended Complaint. According to the Complaint, Bingham's substandard advice to RECOLL on matters of regulatory compliance precipitated a 1995 FERC ruling that MRA's plant had failed to achieve QF status during 1993 and 1994. As a result, MRA was ordered to refund a substantial sum to Niagra Mohawk, its major customer, which in turn forced the FDIC into a global settlement of MRA's bankruptcy obligations. While the FDIC recovered $ 29.5 million from the liquidation of MRA, the funding of the settlement resulted in a net loss to the FDIC of some $ 30 million.

Bingham and Beck seek the opinions, and the underlying work product on which they were based, that were given to the FDIC and RECOLL by outside and in-house counsel regarding the relevant FERC regulations, the MRA bankruptcy, and the related adversary proceedings. Bingham's defense is built on the premise that its advice was qualitatively no worse, and was perhaps better than any other that the FDIC received, and that in any event, it is being unfairly singled out as the proximate cause of the unfavorable bankruptcy [*6] result. n3 The legal opinions and advice given by others that may have contributed to the bankruptcy debacle is not only enmeshed with, but central to any defense of Bingham's defense of the FDIC's claims. n4 HN4 "In a civil damages action ... fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend." Clamshell Alliance, 838 F.3d at 20.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 While the FDIC characterizes the thrust of its causation theory differently, paragraph 109 of the Amended Complaint blames its loss squarely on Bingham's alleged malpractice. "As a direct and proximate result of Bingham's negligent performance of its common law duties to the FDIC, the FDIC ... suffered ... substantial losses in a principal amount exceeding $ 30 million."

n4 By definition, given the confidentiality of the advice given to the FDIC by the outside firms of Dickstein, Shapiro, Morin & Oshinsky, Hodgson Russ, Dewey Ballantine, and in-house counsel, there is no legitimate alternative through which Bingham can obtain access to this advice, other than by invoking the court's power to compel disclosure. (Deposition of the FDIC's attorneys is obviously not a feasible alternative as the same privilege issues would arise). While work product doctrine protection "is not as easily waived," United States v. Massachusetts Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997), the reasonableness of the opinions sought depends on the accuracy of the work product upon which they were based. For that reason, I agree with Bingham that the analysis of an "at issue" waiver is essentially the same with respect to both privileges.

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 12128  Page 5 of 5

Case 1:04-cv-10461-DPW   Document 48-2   Filed 09/22/2004   Page 6 of 6

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*7]**

The FDIC argues that Bingham's arguments ignore the Supreme Judicial Court's admonition in Darius v. City of Boston, 433 Mass. 274, 283, 741 N.E.2d 52 (2001), that "an 'at issue' waiver, in circumstances where it is recognized, should not be tantamount to a blanket waiver of the entire attorney-client privilege in the case." The admonition, however, which is sandwiched between the Court's criticism of the City of Boston's sweeping and unfocused subpoena and its failure to make "even the most minimal showing of necessity" does not undermine its ultimate holding that *HN5* in appropriate circumstances, "a litigant may implicitly waive the privilege, at least in part, by injecting certain types of claims or defenses into a case." Id. at 284. That said, given the sanctity of the privileges involved, a court is obligated to craft its order in such a way "so as to limit the permissible discovery to what is truly 'at issue.'" Id. at 283. Consequently, Bingham's motion to compel will be ALLOWED, but limited to the opinions (and related work product) of counsel n5 that involve advice relating to: (1) FERC's application of the QF standard; (2) the MRA bankruptcy **[\*8]** litigation; and (3) the related FERC proceeding initiated by Niagra Mohawk; (4) and all of which predate the consummation of the MRA bankruptcy settlement. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The term "counsel" is used in a deliberately undifferentiated way. As Bingham correctly observes, the law of waiver does not draw a distinction between in-house and outside counsel. Moreover, I agree with Bingham that the FDIC has failed to show the existence of a valid joint defense agreement between itself and MRA.

n6 Beck in a perfunctory manner joined in the motion to compel, claiming that Bingham's "persuasive, valid arguments" entitle it to the same extent of discovery, but without any explanation as to how its defense to a claim of engineering malpractice is related to the defense of a legal malpractice claim. Consequently, Beck's motion is DENIED.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 12128**
View: **Full**
Date/Time: Tuesday, September 21, 2004 - 3:09 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.