# B

Get a Document by Citation - 11 Mass. L. Rep. 214    Page 1 of 11

Case 1:04-cv-10461-DPW    Document 48-3    Filed 09/22/2004    Page 2 of 12

Service: **Get by LEXSEE®**
Citation: **2000 Mass. Super LEXIS 31**

*11 Mass. L. Rep. 214; 2000 Mass. Super. LEXIS 31, ***

Dedham-Westwood Water District v. National Union Fire Insurance of Pittsburgh et al. n1

n1 The Travelers Indemnity Company, Commerce and Industry Insurance Company, Northbrook Insurance Company, Northbrook Excess and Surplus Insurance Company, North Star Reinsurance Corporation, First State Insurance Company, Western Employers Insurance Company, Employers Commercial Union Insurance Company of America, Aetna Insurance Company, United States Casualty and Holyoke Mutual Insurance Company of Salem.

96-00044

SUPERIOR COURT OF MASSACHUSETTS, AT NORFOLK

11 Mass. L. Rep. 214; 2000 Mass. Super. LEXIS 31

February 15, 2000, Filed

**DISPOSITION:** [*1] Commercial Union's motion to compel discovery production DENIED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant insurer moved to compel a non-party witness to produce for inspection and copy all documents responsive to defendant's deposition subpoenas duces tecum, arguing that non-party witness had waived any claims of attorney-client or work product privilege.

**OVERVIEW:** Defendant insurer refused to indemnify or defend non-party witness in environmental litigation. Non-party settled with plaintiff, assigning plaintiff its insurance claims. Plaintiff brought declaratory judgment action against defendant. Defendant sought to compel non-party witness to produce evidence and unredacted copies of documents, asserting that non-party witness waived its attorney-client privilege and work product immunity via the "at issue" and "common interest" doctrines and the cooperation clause of its policy. Non-party's entitlement to withhold documents was not compromised by the "at issue" doctrine since it had not brought counsel's advice into question. Defendant failed to show that the information could not be secured from a less intrusive source. The "common interest" doctrine was not applicable; defendant and non-party never had common representation in a common claim. Defendant's motion to compel was premature. Defendant did not exhaust other sources of information or show a substantial need for the documents.

**OUTCOME:** Defendant's motion to compel discovery production was denied. Non-party witness had not waived its attorney-client privilege and work product immunity by assigning insurance claims to plaintiff after defendant refused to defend or indemnify non-party witness. Attorney-client communications were not "at issue" and non-party witness had no "common interest" with defendant.

**CORE TERMS:** shield, attorney-client, common interest, insurer, work product doctrine, work product, insured, settlement, environmental, cooperation, withheld, discovery, subpoenas, immunity, duces tecum, contamination, deposition, privileged, waived, vital, discoverable, privileged information, identity of interest, opposing party, legal advice, consulted, override, worded, motion to compel discovery, obligated to indemnify

Get a Document - by Citation - 17 Mass. L. Rep. 214

Case 1:04-cv-10461-DPW   Document 48-3   Filed 09/22/2004   Page 3 of 12   Page 2 of 11

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Evidence > Privileges > Attorney-Client Privilege
**HN1** A document is considered work product if it is prepared in anticipation of litigation by or for another representative. Mass. R. Civ. P. 26(b)(3). More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
**HN2** The attorney-client privilege attaches to any communication between an attorney and client in confidentiality for the purpose of seeking, obtaining or providing legal advice or assistance. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege
**HN3** The "at issue" doctrine is an exception to the attorney-client privilege and the work product doctrine which requires the production of otherwise protected material. Courts applying the "at issue" doctrine in the context of insurance coverage actions have held that insureds seeking coverage may not invoke the attorney-client privilege as a shield for discovery as to issues regarding the conduct of the insured or the insured's counsel where the conduct has been placed in issue via the insured's claims. More Like This Headnote

Evidence > Privileges > Waiver of Privilege
**HN4** In considering a motion to compel discovery based on waiver of privilege, a court should begin its analysis with the presumption in favor of preserving the privilege. A court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant. More Like This Headnote

Evidence > Privileges > Waiver of Privilege
**HN5** The "at issue" doctrine applies and a party waives its privileges when (1) by some affirmative act, (2) the party makes the protected information relevant to the case, and (3) the opposing party is thereby denied access to information vital to its defense. This information is "vital" only if the information is not available from any other source. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege
**HN6** Courts acknowledge the importance of the attorney-client privilege and the work product immunity and conclude that privileged information is "vital" only when a litigant directly places the attorney's advice at issue in the litigation. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege
**HN7** When an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the parties. Under this doctrine when an attorney has been retained to represent both insured and insurer in a third-party action, communications by either party will not be privileged even if their interests later diverge. More Like This Headnote

Evidence > Privileges > Waiver of Privilege

Get a Document - by Citation - 11 Mass. L. Rep. 214
Case 1:04-cv-10461-DPW    Document 48-3    Filed 09/22/2004    Page 4 of 12
Page 3 of 11

**HN8** The "common interest" doctrine has not been addressed by the Massachusetts appellate courts. Additionally, some courts have opted not to apply the "common interest" exception to the work product doctrine. The common interest exception does not apply to the work product doctrine. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege

**HN9** The "common interest" doctrine preempts the attorney-client privilege only when it is evident from the nature of the representation that the client and attorney did not intend and could not expect that information imparted between them would remain confidential. This commonly occurs when an insurance company provides an attorney to its insured for some common undertaking. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege

**HN10** A growing majority of courts appear to reject the applicability of the "common interest" doctrine unless the current adversaries were actually represented by the same attorney in the prior litigation. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege

**HN11** The rationale which supports the "common interest" exception doesn't apply if the attorney never represented the party seeking the allegedly privileged material. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege

**HN12** Particularly in the environmental liability context, the insured often enters and acts in the underlying litigation alone, with an apprehension of not only the outcome of that litigation, but also of the foreboding litigation with its insurers. Under these circumstances, the argument that there was no reasonable expectation of privacy due to an identity of interest is fiction, and the "common interest" exception cannot apply. More Like This Headnote

Evidence > Privileges > Attorney-Client Privilege
Evidence > Privileges > Waiver of Privilege

**HN13** A broadly worded cooperation clause is insufficient to override the attorney-client privilege or work product immunity since such a clause does not provide a clear intent to override these privileges. More Like This Headnote

**JUDGES:** Thomas E. Connolly Justice of the Superior Court.

**OPINIONBY:** Thomas E. Connolly

**OPINION:** MEMORANDUM OF DECISION AND ORDER ON COMMERCIAL UNION INSURANCE COMPANY'S MOTION TO COMPEL PRODUCTION FROM NON-PARTY WITNESS, SHIELD PACKAGING COMPANY, INC.

Defendant, Commercial Union Insurance Company ("Commercial Union"), moves this Court to enter an Order compelling non-party witness, Shield Packaging Company, Inc. ("Shield"), to produce for inspection and copying all documents responsive to Commercial Union's deposition subpoenas *duces tecum*.

Specifically, Commercial Union moves this Court to enter an Order compelling Shield to

Get a Document - by Citation - 71 Mass. L. Rep. 214
Case 1:04-cv-10461-DPW   Document 48-3   Filed 09/22/2004   Page 5 of 12
Page 4 of 11

produce for inspection and copying approximately 10,000 pages of documentary evidence, which were withheld from production, and unredacted copies of various documents, which were produced in redacted form. Shield asserts that the documents at issue are not discoverable because they are subject to the attorney-client privilege and the work product doctrine. For the reasons stated below, Commercial Union's motion is DENIED.

BACKGROUND

Dedham-Westwood Water District (the "District"), [*2] as assignee of Shield's n2 insurers has brought an environmental insurance coverage declaratory judgment action against defendants, including Commercial Union, for damages related to the contamination of the White Lodge Well Field ("Well Field") located in Westwood, Massachusetts. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Shield is a closely held corporation which conducted manufacturing operations in Canton, Massachusetts from 1963 to 1982.

n3 The District is seeking $ 9,000,000 in damages for breach of contract, a declaration that the defendants were obligated to indemnify Shield against the District's claims and are obligated to pay the District the amounts for which they were obligated to indemnify Shield, and damages under Chapters 93A and 176D.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In 1979, the District discovered that two of its wells were contaminated with volatile organic compounds. The District sued Cumberland Farms, Inc. ("Cumberland") in 1982 as the party responsible for the groundwater contamination seeking costs and damages. This litigation lasted for approximately [*3] ten years; however, the District was ultimately unable to establish its claims against Cumberland. n4 In 1988 a federal district court judge, Judge Tauro, found that Shield and the Massachusetts Water Resource Authority ("MWRA") were the likely culpable parties rather than Cumberland.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 See Dedham Water Co. v. Cumberland Farms, Inc., 689 F. Supp. 1223 (D.Mass. 1988); Dedham Water Co. v. Cumberland Farms Dairy, 889 F.2d 1146 (1st Cir. 1989); Dedham Water Co. v. Cumberland Farms Dairy, 770 F. Supp. 41 (D. Mass. 1991); and Dedham Water Co. v. Cumberland Farms Dairy, 972 F.2d 453 (1st Cir. 1992).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In 1990 the District instituted a lawsuit against Shield and the MWRA (the "Underlying Cases") alleging that they contaminated the Well Field. Simultaneously, the Massachusetts Department of Environmental Protection ("DEP") issued a Notice of Responsibility ("NOR") n5 to Shield requiring it to conduct various environmental site assessments and remedial actions. This process, [*4] conducted under the Massachusetts Contingency Plan ("MCP"), continues to this day. Shield hired outside counsel, Nutter, McClennen & Fish, LLP ("Nutter"), and environmental consultants, Rizzo Associates Inc. ("Rizzo"), to defend the litigation and

Get a Document - by Citation - 11 Mass. L. Rep. 214
Case 1:04-cv-10461-DPW   Document 48-3   Filed 09/22/2004   Page 6 of 12
Page 5 of 11

undertake the MCP. Additionally, it turned to its insurers to seek defense and indemnification; however, none of its primary carriers n6 was willing to assume the full defense of Shield in the environmental claims against it by the District. Commercial Union expressly denied any defense or indemnity obligation.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The NOR advised Shield that information available to the DEP indicated that there was a release of hazardous materials at the Shield facility in Canton, Massachusetts for which Shield was the responsible party.

n6 The National Union Fire Insurance Company of Pittsburgh, PA, Travelers, and Commerce & Industry Insurance Company.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In late 1991 Shield and the District began settlement discussions which consummated in a settlement. The parties entered into **[\*5]** a Memorandum of Agreement (the "Memorandum") and filed an Agreement for Consent Judgment on January 15, 1992 . The Memorandum provided that:

> 1. For purposes of the Agreement, Shield's share of the District's actual damages resulting from the contamination of the Well Field would be $ 9,000,000;

> 2. Shield and the District would file with the Federal District Court an Agreement for Consent Judgment in the amount of $ 9,000,000;

> 3. Shield would pay the District the total sum of $ 750,000 over a seven-year period;

> 4. With the exception of the amount specifically agreed to be paid by Shield to the District ($ 750,000), the District agreed not to execute against or enforce the Judgment entered pursuant to the Agreement for Consent Judgment;

> 5. The agreed upon $ 9,000,000 Judgment was not intended to determine, adjudicate or operate as an admission of Shield's liability, or any fact relevant thereto, with respect to any other proceedings with the District or with respect to any other party; and

> 6. Shield would assign to the District its entire right, title and interest in various policies of insurance, insofar as said **[\*6]** policies may provide coverage for the claims asserted by the District in the Underlying Cases.

Get a Document - by Citation - 11 Mass. L. Rep. 214
Case 1:04-cv-10461-DPW    Document 48-3    Filed 09/22/2004    Page 7 of 12
Page 6 of 11

A Final Decree was entered on March 18, 1993, which resulted in a complete dismissal of the Underlying Cases. n7

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Shield was the only party that contributed to the settlement which resolved the case.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The District filed this case on January 10, 1996, against certain insurance companies in connection with the clean-up of the alleged environmental contamination at Well Field. On April 7, 1998, counsel for Commercial Union served on the Keepers of Records of Shield and Nutter deposition subpoenas *duces tecum.* Commercial Union's subpoenas seek documents in the care, custody and control of Shield and its attorneys relating to the following categories: operations and waste disposal at or around the Shield facility; contamination of the Well Field and the causes thereof, settlement of the Underlying cases and the negotiations leading thereto; and communications with insurers and other parties, including the [*7] District.

On June 5, 1998, Shield and Nutter, served responses to Commercial Union's deposition subpoenas *duces tecum.* Subsequently, Shield produced various documents, some of which were in redacted form. Approximately 33,000 numbered pages of documents were produced, along with unnumbered documents consisting of at least 30 boxes. However, Shield withheld from its production approximately 10,000 pages of documents, claiming that they are subject to the attorney-client privilege and/or the work product immunity.

DISCUSSION

Shield does not dispute that the materials requested and withheld are relevant. However, it objects to their discovery because they are not discoverable pursuant to the attorney-client privilege and the work product doctrine. *HN1* A document is considered work product if it is prepared "in anticipation of litigation . . . by or for another representative." Mass.R.Civ.P. 26 (b)(3). *HN2* The attorney-client privilege attaches to any communication between an attorney and client in confidentiality for the purpose of seeking, obtaining or providing legal advice or assistance. See *In Re Reorganization of Electric Mut. Liability Ins. Co., Ltd. (Bermuda), 425 Mass. 419, 421, 681 N.E.2d 838 (1997).* [*8]

This Court finds that the withheld documents are protected by the attorney-client privilege and/or the work produce doctrine. The withheld documents consists of direct communications between attorney and client; attorneys' notes of client communications; attorneys' notes and correspondence with other counsel retained to provide legal advice to the client; legal research conducted by Nutter; attorneys' notes and attorney work product regarding the settlement negotiations with the District; materials prepared at the request of counsel by experts retained by counsel to assist in the defense of anticipated litigation; and communication between Nutter and various experts. Accordingly, the withheld documents are protected from discovery pursuant to the attorney-client privilege and the work product doctrine.

However, Commercial Union argues that it is nonetheless entitled to these documents because Shield waived these privileges via the "at issue" and "common interest" doctrines and the cooperation clause.

I. The "At Issue" Doctrine

Commercial Union contends that even if the documents are privileged under the attorney-client privilege and/or work product doctrine, Shield **[*9]** waived these privileges pursuant to the "at issue" doctrine. n8 Commercial Union argues that by placing the Underlying Cases and its insurance claims at issue, by virtue of its settlement and assignment of indemnity rights, Shield has waived any protection from discovery afforded by the attorney-client privilege or work product doctrine as against its insurers.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 The "at issue" doctrine has not been addressed by the Massachusetts appellate courts. However, it has been adopted by the United States District Court for the District of Massachusetts. See Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269 (D.Mass. 1991); Sax v. Sax, 136 F.R.D. 541 (D. Mass. 1991).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Therefore, Commercial Union claims, they are entitled to review the contemporaneous information which documents the discussions, legal analysis, thought processes and events which culminated in the settlement of the Underlying Cases. Commercial Union reasons that the insurers are entitled to test Shield's and the District's **[*10]** assertions that the settlement was in good faith, fair and reasonable.

Commercial Union heavily relies on *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 579 N.E.2d 322, 161 Ill. Dec. 774 (1991), in asserting that Shield waived its privileges via the "at issue" doctrine. However, *Waste Management* has been rejected or criticized on numerous occasions. n9 Shield's entitlement to withhold documents based on the attorney-client privilege and work product immunity is not in any way compromised by the "at issue" doctrine. Neither Shield, by settling the Underlying Cases, nor the District, by bringing this suit for indemnity, has done anything to place the requested documents "at issue."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 See, e.g., Eastern Air Lines, Inc. v. U.S. Aviation Underwriters, Inc., 716 So. 2d 340 (Fla.App.Ct. 1998); State Department of Transportation v. Steinman Boynton Gronquist & Birdsall, Inc., 1998 Conn. Super. LEXIS 1651, 22 Conn. L. Rptr. 233, 1998 WL 323251 (Conn.Super. 1998); Vermont Gas Systems, Inc. v. United States Fidelity Guar. Co., 151 F.R.D. 268 (D.Vt. 1993); In re Environmental Ins. Declaratory Judgment Actions, 259 N.J. Super. 308, 612 A.2d 1338 (N.J.Super.Ct.App. 1993); Owens-Corning Fiberglas Corp. v. Allstate Ins. Co., 74 Ohio Misc. 2d 174, 660 N.E.2d 765 (Ohio Ct.App. 1993).

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -  *HN3* **[*11]**

The "at issue" doctrine is an exception to the attorney-client privilege and the work product doctrine which requires the production of otherwise protected material. Courts applying the "at issue" doctrine in the context of insurance coverage actions have held that insureds seeking coverage may not invoke the attorney-client privilege as a shield for discovery as to issues regarding the conduct of the insured or the insured's counsel where the conduct has been placed in issue via the insured's claims. *Hoechst Celanese Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 623 A.2d 1118, 1125 (Del.Super. 1992).

Get a Document - by Citation - 11 Mass. L. Rep. 214
Case 1:04-cv-10461-DPW   Document 48-3   Filed 09/22/2004   Page 9 of 12
Page 8 of 11

"[HN4⇮A] court should begin its analysis with the presumption in favor of preserving the privilege." _Greater Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988)._ A court "cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant." _Remington Arms Co. v. Lib. Mutual Ins. Co., 142 F.R.D. 408, 415-16 (D.Del. 1992)._

HN5⇮The "at issue" doctrine applies and a party waives **[*12]** its privileges when (1) by some affirmative act, (2) the party makes the protected information relevant to the case, and (3) the opposing party is thereby denied access to information vital n10 to its defense. _Sax v. Sax, 136 F.R.D. 541, 542 (D.Mass. 1991); Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash. 1975)._ This information is "vital" only if the information is not available from any other source. See _Hearn, 68 F.R.D. at 581; Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 701 (10th Cir. 1998)._ Since, Commercial Union has failed to show that the information cannot be secured from a less intrusive source, its motion must fail. See _Pittston Co. v. Allianz Ins. Co., 143 F.R.D. 66, 71 (D.N.J. 1992),_ quoting _In re Kozlov, 79 N.J. 232, 398 A.2d 882 (1979)._

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 HN6⇮A number of courts acknowledge the importance of the attorney-client privilege and the work product immunity and conclude that privileged information is "vital" only when a litigant directly places the attorney's advice at issue in the litigation. See, e.g., _North River Ins. Co. v. Philadelphia Reinsurance, 797 F. Supp. 363, 370 (D.N.J. 1992); State v. Hydrite Chem. Co., 220 Wis. 2d 51, 582 N.W.2d 411, 418-19 (Wis.Ct.App. 1998); Aranson v. Schroeder, 140 N.H. 359, 671 A.2d 1023, 1030 (N.H. 1995)._

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*13]**

Accordingly, this Court finds that Commercial Union is not entitled to inspect and copy all documents responsive to its deposition subpoenas _duces tecum_ until they have exhausted all other discovery means of obtaining such information. Commercial Union has failed to show that it has attempted all other avenues available to it in attempting to gather the information contained in the documents at issue.

II. The "Common Interest" Doctrine

Commercial claims that the "common interest" doctrine defeats Shield's claims of privilege. n11 HN7⇮When an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the parties. Under this doctrine "when an attorney has been retained to represent both insured and insurer in a third-party action, communications by either party will not be privileged . . . even if their interests later diverge." _Hoechst Celanese Corp., 623 A.2d at 1123-24._

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 HN8⇮The "common interest" doctrine has not been addressed by the Massachusetts appellate courts. Additionally, some courts have opted not to apply the "common interest"

Get a Document - by Citation - 11 Mass. L. Rep. 214

Case 1:04-cv-10461-DPW   Document 48-3   Filed 09/22/2004   Page 10 of 12

Page 9 of 11

exception to the work product doctrine. See Remington Arms Co., 142 F.R.D. at 419 (the common interest exception does not apply to the work product doctrine). Therefore, this Court will not discuss the "common interest" doctrine exception in the realm of the work product doctrine.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*14]**

Commercial Union argues that Shield and its insurers had a common interest in minimizing Shield's liability to the District. Although Shield and Commercial Union were adverse as to certain coverage issues, Shield's counsel worked for their mutual benefit in the Underlying Cases. To the extent that Shield's liability to the District was reduced, Commercial Union's potential exposure was also reduced.

However, the "common interest" doctrine is not applicable here and cannot be used to overcome Shield's attorney-client privilege. HN9 The "common interest" doctrine preempts the attorney-client privilege only when it is evident from the nature of the representation that the client and attorney did not intend and could not expect that information imparted between them would remain confidential. See McCormick on Evidence 91 (1984). This commonly occurs when an insurance company provides an attorney to its insured for some common undertaking. "A HN10 growing majority of courts appear to reject the applicability of the ['common interest'] doctrine unless the current adversaries were actually represented by the same attorney in the prior litigation." Frontier Refining Inc., 136 F.3d at 705; **[*15]** Hoechst Celanese Corp., 623 A.2d at 1124 (the parties must truly be or have been joint clients of the same counsel, retained or consulted in common). Bituminous Casualty Corp. v. Tonka Corp., 140 F.R.D. 381, 387 (D.Minn. 1992) (the HN11 rationale which supports the "common interest" exception . . . doesn't apply if the attorney never represented the party seeking the allegedly privileged material). Therefore, since Commercial Union never participated in any fashion in the defense of the Underlying Cases, it thus never retained or consulted an attorney in common with Shield.

Additionally, the "common interest" doctrine is less appropriate when the documents at issue were prepared in an atmosphere of uncertainty as to the scope of identity of interest shared by insurer and insured. See Remington Arms, 142 F.R.D. at 418. "Particularly HN12 in the environmental liability context, the insured often enters and acts in the underlying litigation alone, with an apprehension of not only the outcome of that litigation, but also of the foreboding litigation with its insurers." Pittston Co., 143 F.R.D. at 70-1. Under these circumstances, **[*16]** the argument that there was no reasonable expectation of privacy due to an identity of interest is "fiction," and the "common interest" exception cannot apply. See Pittston Co., 143 F.R.D. at 70.

"To permit insurers unrestrained access to attorney-client communications and work product where those insurers refused to take part in litigation despite notice and an opportunity to participate would distort the 'common interest' doctrine . . . Even assuming a common interest in limiting the amount of damage, the parties do not have a common interest in characterizing how that damage occurred, what type of damage occurred, or how the plaintiff responded." Pittston Co., 143 F.R.D. at 69-70.

Accordingly, the "common interest" doctrine does not render the privileged documents discoverable.

III. The Cooperation Clause

Commercial Union refers to the cooperation clause in its discussion of *Waste Management, 144 Ill. 2d 178, 579 N.E.2d 322, 161 Ill. Dec. 774.* Commercial Union does not directly state that the cooperation clause of the case at hand dictates an independent basis compelling production. Rather, it states that *Waste* **[*17]** *Management* relied on such a clause to compel production. However, HN13 a broadly worded cooperation clause is insufficient to override the attorney-client privilege or work product immunity since such a clause does not provide a clear intent to override these privileges.

See *Pittston, 143 F.R.D. at 72; Bituminous Casualty, 140 F.R.D. at 386* (absent showing that the parties intended the language of the insurance policy's cooperation clause to work as a waiver of the attorney-client privilege, the court declines to find a contractual waiver of the privilege); *State of Wisconsin v. Hydrite Chemical Co., 220 Wis. 2d 51, 582 N.W.2d 411, 421 (Wis.App. 1998)* (the broadly worded cooperation clause does not supersede the attorney-client privilege or work product doctrine).

IV. Conclusion

This Court agrees with Shield's contention that allowing Commercial Union access to all of these documents, which are subject to the attorney-client privilege and work product immunity, will unfairly give it an opportunity to exploit any internal discussions engaged in between Shield and its counsel and give it advantages in future litigation. n12 Also, **[*18]** Shield's future rights vis-a-vis its insurers, and perhaps others, will be substantially prejudiced if the insurers are given unfettered access to ten years worth of attorney-client communications and work product.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Most particularly future litigation concerning their liability for the defense and indemnification of the DEP administrative proceeding.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This Court also finds that Commercial Union's motion to compel discovery was filed prematurely. Commercial Union has not exhausted all of their avenues in attempting to obtain this information. Commercial Union has not even attempted to show that it has a substantial need for the documents and that the information is unavailable without undue hardship from other sources.

ORDER

For the foregoing reasons, Commercial Union's motion to compel discovery production is hereby DENIED.

Thomas E. Connolly

Justice of the Superior Court

Dated: February 2000

Service: **Get by LEXSEE®**

Get a Document - by Citation - 17 Mass. L. Rep. 214
Case 1:04-cv-10461-DPW   Document 48-3   Filed 09/22/2004   Page 12 of 12
Page 11 of 11

Citation: **2000 Mass. Super LEXIS 31**
View: Full
Date/Time: Tuesday, September 21, 2004 - 3:08 PM EDT

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- Ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.