# D

Service: **Get by LEXSEE®**
Citation: **623 A.2d 1118**

623 A.2d 1118, *; 1992 Del. Super. LEXIS 541, **

HOECHST CELANESE CORPORATION and CELANESE ENGINEERING RESINS, INC.,
corporations of the State of Delaware, Plaintiffs, v. NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Defendants. NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Third-Party Plaintiffs, v.
CENTAUR INSURANCE COMPANY, et al., Third-Party Defendants.

C.A. No. 89C-SE-35

SUPERIOR COURT OF DELAWARE, NEW CASTLE

623 A.2d 1118; 1992 Del. Super. LEXIS 541

December 6, 1991, Submitted
February 21, 1992, Decided

**SUBSEQUENT HISTORY:** [**1]

Released for Publication April 15, 1993 in accordance with Supreme Court Rule 93.

**DISPOSITION:** Upon plaintiffs' motion for a protective order. DENIED IN PART. GRANTED IN
PART.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff manufacturers filed a motion for a protective order to
protect certain documents from discovery by defendant insurers under the attorney-
client privilege and work product doctrines.

**OVERVIEW:** The manufacturers brought a declaratory judgment action against the
insurers to determine the obligations of the insurers for liability and defense costs
associated with litigation concerning a product. The manufacturers sought a protective
order regarding documents generated in the product litigation. The court noted that
when an attorney was retained to represent both insured and insurer in a third-party
action, communications by either party would not be privileged as to the other, even if
their interests later diverged. However, the court also found that a party did not waive
the attorney-client privilege merely by bringing a suit in which communications were
relevant. Unlike the attorney-client privilege, the work product doctrine was intended to
protect the privacy of lawyers in their work and encourage freedom from interference for
lawyers that were in the task of preparing their clients' cases for trial. The court held that
communications pertaining solely to the coverage action were protected by the attorney-
client privilege, as well as opinion work product in the product litigation. However,
certain documents in the product litigation were relevant and had to be produced.

**OUTCOME:** The court denied the manufacturers' motion for a protective order in part
and granted the motion in part.

**CORE TERMS:** insurer, coverage, plumbing, attorney-client, common interest, underlying
litigation, privileged, insured, duty, work product, defense counsel, work product doctrine,
coverage dispute, joint client, misrepresentation, confidential, preparation, disclosure,
declaratory judgment action, insurance policies, legal theories, undue hardship, anticipation,

impressions, settlement, consulted, discovery, prevail, paying, allegations of fraud

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
Evidence > Privileges > Attorney-Client Privilege 🔍
*HN1*⊥The attorney-client privilege has long existed in Delaware as part of the common law. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
Evidence > Privileges > Attorney-Client Privilege 🔍
*HN2*⊥See Del. R. Evid. 502(b).

Civil Procedure > Disclosure & Discovery > Relevance 🔍
Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
*HN3*⊥The party asserting a privilege has the burden of proving each of the necessary elements. The privilege only protects the communications themselves and does not prevent disclosure of the underlying facts which are the substance of the communications. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Relevance 🔍
Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
*HN4*⊥A party may always be compelled to disclose relevant information even when the information was received through a communication which is itself privileged. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
*HN5*⊥In order for a communication to be privileged, it is essential that the client expressly make the communication confidential or make it under circumstances such that he could reasonably assume it would be kept confidential. When the client makes a communication with the intention or expectation that it will be revealed to another person, who is not necessary for the rendition of the legal services or communication, this element of confidentiality is lacking. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
Evidence > Privileges > Attorney-Client Privilege 🔍
*HN6*⊥In Delaware, although the attorney-client privilege is highly regarded, it is not absolute, and must yield to the interests of justice. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
*HN7*⊥When an attorney has been retained to represent both insured and insurer in a third-party action, communications by either party will not be privileged as to the other, even if their interests later diverge. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters 🔍
Evidence > Privileges > Attorney-Client Privilege 🔍
Evidence > Relevance
*HN8*⊥In Delaware, the "common interest" or "joint client" exception is defined in Del. R. Evid. 502(d)(5), which provides that there is no privilege as to a communication relevant to a matter of common interest between or among two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the

clients.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
**HN9** For the joint client exception to apply, the parties must truly be, or have been joint clients of the same counsel, retained or consulted in common. The common interest standing alone is insufficient. Del. R. Evid. 502.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
**HN10** The "at issue" exception to the attorney-client privilege applies when the party holding the privilege waives the privilege, traditionally in one of two basic ways: (1) the party injects the communications themselves into the litigation, or (2) the party injects an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications. The "at issue" exception is based on the principles of waiver and of fairness, so that the party holding the privilege cannot use it as a sword as well as a shield.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Privileged Matters
**HN11** A party does not waive the attorney-client privilege merely by bringing a suit in which communications are relevant.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Work Product
Civil Procedure > Disclosure & Discovery > Privileged Matters
**HN12** Unlike the attorney-client privilege, the work product doctrine is intended to protect the privacy of lawyers in their work and encourage the freedom of lawyers from interference in the task of preparing their clients' cases for trial.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Work Product
**HN13** The Delaware work product doctrine is set forth in Del. Sup. Ct. R. 26(b)(3), which provides in pertinent part: a party may obtain discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or its representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.  More Like This Headnote

Civil Procedure > Disclosure & Discovery > Work Product
**HN14** In determining whether material was prepared in anticipation of litigation, the court should consider the following factors: First, courts should consider the nature of the event that prompted the preparation of the materials and whether the event is one which is likely to lead to litigation. Second, courts should determine whether the requested materials contain legal analysis and opinions or purely factual contents in order to make inferences about why the document was prepared. Third, courts should ascertain whether the material was requested or prepared by the party or their representative. When litigation is anticipated it is expected that an attorney or party will have become involved. Fourth, courts should consider whether the materials were routinely prepared and, if so, the purposes that were served by that routine preparation. Last, courts should examine the timing of the preparation and ascertain whether specific claims were present or whether discussions or negotiations had occurred at the time the

materials were prepared. More Like This Headnote

**COUNSEL:** Richard E. Poole, Esq. and David J. Baldwin, Esq. of Potter, Anderson & Corroon, Wilmington, Delaware for the plaintiffs.

Howard M. Berg, Esq., Paul Cottrell, Esq. and Diane J. Bartels, Esq. of Berg, Tighe & Cottrell, Wilmington, Delaware, coordinating counsel for defendants.

**JUDGES:** GEBELEIN

**OPINIONBY:** GEBELEIN

**OPINION: [*1120]** OPINION

GEBELEIN, Judge

Plaintiffs Hoechst Celanese Corporation and Celanese Engineering Resins, Inc. (hereinafter "HCC" or "plaintiffs") filed a declaratory judgment action to determine the obligations of defendant insurers for liability and defense costs associated with judicial and administrative actions filed against HCC arising from the manufacture and sale of Celcon(R), an acetyl polymer resin. Plaintiffs have filed this motion for a protective order to oppose the production of documents generated in the underlying plumbing cases litigated by HCC based upon attorney-client privilege and the work-product doctrine. n1 For the reasons set forth herein, plaintiffs' motion is DENIED.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Plaintiffs' motion also requested a determination that defendants are estopped from contesting the reasonableness of plaintiffs' defense and settlement costs because they have breached their obligations to defend plaintiffs in the underlying litigation. The motion for simplification of pretrial issues was denied by this Court in an order entered January 3, 1992. Plaintiffs withdrew an earlier motion for leave to file a general, rather than document-specific, privilege log.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[**2]**

FACTUAL BACKGROUND

A. The Litigation

Beginning in the late 1970s, HCC's product Celcon(R) was used to make insert plumbing fittings for certain plumbing systems. As a result of the alleged failure of plumbing systems containing Celcon(R), plaintiffs HCC have been named as defendants in numerous judicial and administrative products liability actions (the plumbing litigation). Prior to the spring of 1989, HCC's primary insurance companies, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) and Northwestern National Insurance Company (Northwestern), paid HCC's defense costs in the plumbing litigation. The insurance companies retained a third-party claims adjuster, Crawford & Company, to handle the plumbing claims filed against HCC. HCC provided Crawford & Company, and therefore the insurers, with some materials generated during the defense of the plumbing claims, including certain materials which HCC now claims to be privileged.

In the spring of 1989, a Texas trial court held HCC to be liable to a number of plumbing

claimants for negligence, fraud, breach of warranty, strict products liability, and violations of the Texas Deceptive Trade Practices [**3] Act. *Diehl v. General Homes Corp.,* Tex. Super., C.A. 87-21479 (Mar. 3, 1989). Allegedly because of doubts about coverage which arose from this decision, National Union stopped paying HCC's defense costs as a matter of course and on August 30, 1989, initiated a coverage action in United States District Court for the Southern District of New York. n2 On September 8, 1989, HCC, a Delaware corporation with its principal place of business in New Jersey, filed this action against its primary and excess comprehensive general liability (CGL) insurers. The New York action has been stayed pending the resolution of this action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 *National Union Fire Ins. Co. v. Hoechst Celanese Corp.,* No. 89 Civ. 5824 (S.D.N.Y.).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The parties vehemently disagree about the extent and circumstances under which [*1121] National Union and Northwestern National have continued to pay some costs associated with the plumbing claims. Northwestern National alleges that it has continued to pay defense and indemnification costs for the plumbing claims [**4] and has stated a coverage position. National Union alleges that it has continued to pay defense costs in 65 consolidated litigations, which represent thousands of claims. A more precise examination of the payments which have been made and which parties are paying is unnecessary since the Court's reasoning which follows is not dependent on such distinctions.

HCC seeks a declaration of its rights and defendants' obligations under the CGL policies and a money judgment against National Union for breaches of contract, the duty of good faith, and fair dealing. In its complaint, HCC alleges that it has complied with all conditions precedent to the insurers' obligations under the policies and that the insurers have nevertheless failed to meet their coverage obligations. The insurers contend that HCC violated the terms of the respective policies because HCC was aware of the alleged problems with Celcon(R) prior to obtaining the insurance. The insurers deny their obligations to HCC on a number of grounds, alleging, inter alia, fraud and misrepresentation on the part of HCC in that HCC knew of the alleged problems with Celcon(R) when it obtained insurance from them. The insurers contend that [**5] HCC has failed to satisfy several of its duties under the insurance contracts on which the insurers' liabilities are conditioned. The excess insurers contend that they have no obligation to defend or indemnify HCC because HCC has yet to allege exhaustion of its underlying policies. Several insurers contend as well that the policies issued to HCC do not include a defense obligation.

B. The Material Sought by Defendants

Defendants have requested that plaintiffs produce a number of documents regarding the plaintiffs' investigation, defense, and settlement of the underlying plumbing claims. The documents have not been submitted to the Court for review. The documents requested allegedly fall into the following general categories of documents: n3

> 1. Communications between HCC and its defense counsel in the underlying litigation regarding the investigation, defense or settlement of the underlying plumbing claims, including reports by counsel on the status of the underlying plumbing claims.

> 2. Documents containing HCC defense counsel's legal or strategic analysis in the underlying actions.

3. Documents containing compilations, summaries, or analyses of facts, prepared by or **[\*\*6]** at the direction of HCC defense counsel.

4. Notes or reports regarding HCC defense counsel's meetings with or interviews of fact witnesses.

5. Notes or reports regarding HCC defense counsel's meetings with or interviews of expert witnesses.

6. Notes, memoranda, or reports prepared by expert witnesses retained by HCC or HCC defense counsel.

7. Notes, memoranda, or reports prepared by investigators retained by HCC or HCC defense counsel. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Since the materials generally requested are in the possession of plaintiffs, and plaintiffs have yet to complete a document-specific privilege log, it is difficult to determine whether these categories represent all of the documents which might be produced in response to defendants' requests. The list is therefore inclusive but not exhaustive.

n4 These general categories are derived from a list provided by letter from defense counsel to plaintiffs' counsel. Letter of August 27, 1991 from Diane J. Bartels to Lorelei S. Masters.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## THE ATTORNEY-CLIENT PRIVILEGE *HN1* [\*\*7]

The attorney-client privilege has long existed in Delaware as part of the common law. _Texaco, Inc. v. Phoenix Steel Corp.,_ Del. Ch., 264 A.2d 523 (1970). *HN2* The current scope and requisites of the privilege are defined in Delaware Uniform Rule of Evidence 502 (b), which provides:

**[\*1122]** A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of a lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of a client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

See also _United States v. United Shoe Machinery Corp.,_ 89 F.Supp. 357 (D.Mass. 1950); _In_

_re Grand Jury Proceedings,_ 899 F.2d 1039, 1042 (11th Cir. 1990). **[**8]** _HN3_ The party asserting the privilege has the burden of proving each of the necessary elements. _Toledo Edison Co. v. G.A. Technologies, Inc.,_ 847 F.2d 335, 339 (6th Cir. 1988). The privilege only protects the communications themselves and does not prevent disclosure of the underlying facts which are the substance of the communications:

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

_Upjohn Co. v. United States,_ 449 U.S. 383, 395-96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), quoting _Philadelphia v. Westinghouse Elec. Corp.,_ 205 F.Supp. 830, 831 (E.D. Pa. 1962). Thus _HN4_ a party may always be compelled to disclose relevant information even when the information was received through a communication which is itself privileged.

A. Pre-March 3, 1989 Communications **[**9]**

_HN5_ In order for a communication to be privileged, it is essential that the client expressly make the communication confidential or make it under circumstances such that he could reasonably assume it Would be kept confidential. n5 When the client makes a communication with the intention or expectation that it will be revealed to another person, who is not necessary for the rendition of the legal services or communication, this element of confidentiality is lacking. _See, e.g., United States v. Tellier,_ 255 F.2d 441 (2d Cir. 1958), cert. denied 358 U.S. 821, 3 L. Ed. 2d 62, 79 S. Ct. 33 (client expected attorney to prepare letter to third party setting forth objections); _Himmelfarb v. United States,_ 175 F.2d 924 (9th Cir. 1949), cert. denied 338 U.S. 860, 94 L. Ed. 527, 70 S. Ct. 103 (attorney disclosed to accountant employee information provided by client on tax matter); see also D.R.E. 502(a) (5).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Under Rule 502(a)(5):

> A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[**10]**

In this case, before the March 3, 1989 Diehl judgment against HCC on fraud and other grounds, Northwestern and National Union were allegedly paying defense and indemnification costs as a matter of course. HCC had not yet filed any claims with excess insurers as a result of the plumbing claims and at least several of the excess insurers had not been notified in any way of the claims against HCC. HCC was admittedly providing on a routine basis, through

Crawford & Company, materials now claimed to be privileged. It is clear, therefore, that until this coverage dispute arose as a result of the Diehl decision, HCC expected its insurers to continue paying defense costs and indemnification. As an insured seeking payments from its insurers, HCC could not reasonably expect the insurers to provide a defense and indemnify HCC for its claims without having access to information about the claims through the communications and documents in the underlying litigation. HCC **[*1123]** produced such documents to its insurers before the coverage dispute arose, demonstrating that HCC did not in fact have such an expectation. HCC contends that despite these early disclosures of communications now claimed to be privileged, **[**11]** HCC should not be compelled to produce similar communications because the positions of the parties are now adverse. The existence of the attorney-client privilege, however, is determined as of the time the communication is made, not at the time when discovery of the communication is sought.

The Court finds that communications between HCC and its counsel in the underlying litigation prior to March 3, 1989 were made before any uncertainty as to coverage arose on HCC's part and that HCC had no reasonable expectation that communications with its counsel would be confidential as to its insurers. Therefore pre-March 3, 1989 communications are not protected by the attorney-client privilege and must be produced. The Court recognizes that the positions of the parties as to coverage did not instantly become adverse on that date and that the atmosphere of uncertainty arose gradually between March 3, 1989 and August 30, 1989, when National Union filed the New York action. After National Union filed the New York action on August 30, 1989, the relationship between HCC and National Union became clearly adverse as to coverage and the status of its coverage with its other insurers became sufficiently **[**12]** uncertain that later communications could reasonably have been made with a expectation of confidentiality. The Court finds the appropriate demarcation in these circumstances to be the earlier date, when HCC could reasonably have suspected that coverage issues might arise, rather than the later date, upon which the coverage dispute matured. The line of demarcation is not critical in this instance since this Court will compel discovery of the remaining communications on other grounds.

B. Post-March 3, 1989 Communications

Although communications made after March 3, 1989 between HCC and its counsel in the underlying actions are protected by the attorney-client privilege, defendants contend (1) that the communications fail within the "common interest" or "joint client" exception, and (2) that HCC has placed the communications in issue and therefore waived the privilege.

*HN6*In Delaware, although the attorney-client privilege is highly regarded, it is not absolute, and must yield to the interests of justice. n6 *See Hollingsworth v. Essence Communications, Inc. et al.,* Del. Ch., C.A. 5312, Hartnett, V.C. (July 15, 1977); *see also In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3d Cir. 1979) **[**13]** (quoting 8 J. Wigmore, Wigmore on Evidence § 2291 at 545)(privilege obstructs the search for truth and must be strictly construed consistent with the logic of its principle).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 The degree of violability of the privilege appears to vary from state to state, and the general trend appears to be in favor of liberalization of waiver and other exceptions. The privilege is a matter within the power of the legislature to alter or even abrogate. See S. Gard, Jones on Evidence § 21:8 at 764 (Supp. 1990).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

1. Joint Client or Common Interest Exception

Defendants contend that HCC cannot assert the attorney-client privilege because defendants and HCC share a "common interest" in minimizing defense and settlement costs in the underlying plumbing actions. They argue that this common interest between insured and insurers negates any expectation that communications between insured and defense counsel will be kept confidential as to the insurer and precludes the use of the privilege by the insured against the insurer in a subsequent **[\*\*14]** coverage action. Plaintiffs argue that this doctrine is not applicable because in this case the insurers have not retained an attorney jointly with plaintiffs but instead are not participating in the defense of the underlying actions.

The weight of authority appears to support the proposition that *HN7* when an attorney has been retained to represent both insured and insurer in a third-party action, communications **[\*1124]** by either party will not be privileged as to the other, even if their interests later diverge. *HN8* In Delaware, the "common interest" or "joint client" exception is defined in Delaware Uniform Rule of Evidence 502(d)(5), which provides that there is no privilege

> As to a communication relevant to a matter of common interest between or among 2 or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients. (Emphasis added.)

Plaintiffs argue first that this exception should not apply because they share no common interest with defendants in the underlying actions because defendants have made allegations of fraud and misrepresentation, just as the underlying plumbing claimants **[\*\*15]** have made fraud allegations. Plaintiffs argue that defendants have therefore aligned themselves with the underlying plumbing defendants.

The Court finds this argument wholly unconvincing. Defendants' allegations of fraud and misrepresentation involve HCC's conduct in the procurement of the insurance policies and whether HCC has violated any of its obligations to its insurers. The allegations of fraud and misrepresentation by the plumbing claimants in the products liability actions involve entirely different issues and methods of proof. Moreover, the Court finds that HCC and defendants clearly share a common interest in reducing or eliminating HCC's underlying liability. If HCC prevails in this coverage action, the defendants will benefit from lower costs; if defendants prevail, HCC will benefit. The Court rejects the Suggestion that this common interest between HCC and its insurers is completely vitiated by the insurers' denials of coverage. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 This is especially true when, as is the case here, excess insurers are forced to defend a declaratory judgment action although (1) they have in many cases never received a claim and therefore have had no meaningful prior opportunity to examine the claims for which coverage is sought, and (2) there has been no allegation that the underlying policy limits have been exhausted and that their level of coverage has been implicated. In such cases these insurers have little recourse but to "deny" coverage in answering the plaintiff's complaint, and their common interest with the insured in the underlying litigation is not altered by this blanket denial of coverage.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*\*16]** *HN9*

For the joint client exception to apply, however, the parties must truly be, or have been joint clients of the same counsel, retained or consulted in common. The common interest standing alone is insufficient. D.R.E. 502; See *Valente v. Pepsico, Inc.,* 68 F.R.D. 361, 168 (D.Del. 1975).* In this case, HCC's defense counsel was retained and paid for, at least in part, by HCC's primary insurers, Northwestern National and National Union, which has since ceased to pay to a degree (the extent of the denial is hotly contested by the parties). The remaining defendants never participated in any fashion in the defense of the underlying actions and thus never retained or consulted an attorney in common with HCC. n8 The cases cited by the parties in which the common interest exception was relied upon to order production of attorney-client communications in coverage disputes are factually dissimilar in this respect. Defendants cite *Waste Management, Inc. v. International Surplus Lines Ins. Co.,* Ill. Supr., 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991) for the proposition that the common interest exception applies when the attorney works for the benefit of both **[\*\*17]** parties even when the insurers have not provided a defense in the underlying suits. *Id.* at 329 ("It is the commonality of interests which creates the exception, not the conduct of the litigation"). Regardless of the wisdom of that rationale, the Court is satisfied by the language chosen for the codification of the exception in D.R.E. 502 that Delaware law requires the element of joint consultation as well. The Court finds that the joint client exception does not apply to the communication in this case because the counsel was not retained nor consulted by defendants in common with HCC, despite the **[\*1125]** existence of a common interest between them.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 In the case of excess insurers, most assert that under the policies they have no obligation to defend in any event and therefore could not be joint clients with HCC.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

2. At Issue Exception

Defendants contend that post-March 3, 1989 communications also fall within *HN10* the "at issue" exception to the attorney-client privilege, which applies when **[\*\*18]** the party holding the privilege waives the privilege, traditionally in one of two basic ways: (1) the party injects the communications themselves into the litigation, or (2) the party injects an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications. *See, e.g., Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 156 (D.Del. 1977); *Tackett v. State Farm Fire & Cas.,* Del. Super., 558 A.2d 1098, 1104 (1988); *Jules Jurgenson/Rhapsody Inc. v. Rolex Watch U.S.A., Inc.,* E.D. Pa., C.A. No. 85-5605, Van Antwerpen, J. (Jan. 19, 1989); *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir. 1987); Note, *Development in the law of Privileged Communication,* 98 Harv. L. Rev. 1450, 1638 (1985); 8 Wigmore, *Wigmore on Evidence* § 2327 (McNaughton rev. 1961)(conduct which makes it unfair for party to continue to assert the privilege). The "at issue" exception is based on the principles of waiver and of fairness, so that the party holding the privilege cannot use it as a sword as well as a shield.

HCC asserts, **[\*\*19]** and the Court agrees, that *HN11* a party does not waive the attorney-client privilege merely by bringing a suit in which the communications are relevant. *See, Barr Marine Products Co. v. Borg-Warner Corp.,* 84 F.R.D. 631, 635 (E.D.Pa. 1979). In this case, however, HCC has brought a declaratory judgment action seeking a determination of the obligations of its insurers. The insurers contend that any duties they have under the insurance policies are conditional and dependent on HCC's compliance with its duties under the policy, such as the duties of cooperation, good faith and fair dealing. HCC specifically raised the issue of its own compliance with these duties and alleged in its complaint that it

has complied with all of its obligations under the contracts. The insurers have denied that HCC has done so.

In seeking a determination that defendant insurers are obligated to provide coverage for the plumbing claims and alleging that it has fully complied with all conditions precedent, HCC has injected the issue of its compliance with Policy terms into this litigation. Whether HCC has so complied can only be truthfully and fairly determined by an examination of **[**20]** the conduct of HCC and its counsel in the underlying litigation. This task necessarily involves the review of their otherwise privileged communications which under the circumstances of this case, go directly to the heart of the coverage dispute between HCC and defendant insurers. To hold otherwise would permit an insured to seek coverage for claims while denying the insurer access to information about the underlying claims which is contained substantially, if not exclusively, within the communications claimed to be privileged. Without access to these communications, the insurers would have no meaningful ability to contest the issue of HCC's fulfillment of its duties under the insurance policies which are alleged to be conditions precedent to the insurers' duties. See _Potomac Elec. Power Co. v. California Union Ins. Co.,_ 136 F.R.D. 1 (D.D.C. 1990) ([insured] brought own conduct and conduct of counsel in underlying proceedings in issue by instituting action for coverage); _Charlotte Motor Speedway, Inc. v. International Ins. Co.,_ 125 F.R.D. 127, 129-131 (M.D.N.C. 1989) (information about counsel's activities and assessments **[**21]** necessary to determine whether insured met its policy obligations).

An equitable, complete, and truthful resolution of the issues raised by HCC in this litigation would be impossible without examination of the communications between HCC and its counsel in handling the underlying claims. The Court finds that HCC has therefore waived the attorney-client privilege as to these communications made after March 3, 1989 and must produce them. Attorney-client communications between HCC and its counsel in this coverage litigation, or any attorney-client communication made for the purpose of obtaining **[*1126]** legal advice pertaining to this coverage dispute, is still protected by the attorney-client privilege.

## THE WORK PRODUCT DOCTRINE

_HN12_ Unlike the attorney-client privilege, the work product doctrine is intended "to protect the privacy of lawyers in their work and encourage the freedom of lawyers from interference in the task of preparing their clients' cases for trial." _Riggs Nat. Bank of Washington, D.C. v. Zimmer,_ Del. Ch., 355 A.2d 709, 715 (1976). _HN13_ The Delaware work product doctrine is set forth in Superior Court Civil Rule 26(b)(3), which provides in pertinent **[**22]** part:

> a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party . . . [or its representative] . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. (Emphasis added.)

_HN14_ In determining whether material was prepared in anticipation of litigation, the Court should consider the factors enunciated in Brown v. Superior Court, Ariz. Supr., 670 P.2d 725, 732 (1983), and adopted by this Court in Mullins v. Vakili, Del. Super., 506 A.2d 192 (1986):

First, courts should consider the nature of the event that prompted the preparation of the materials and whether the event is one [**23] which is likely to lead to litigation. . . . Second, courts should determine whether the requested materials contain legal analysis and opinions or purely factual contents in order to make inferences about why the document was prepared. Third, courts should ascertain whether the material was requested or prepared by the party or their representative . . . When litigation is anticipated it is expected that an attorney or party will [have] become involved. Fourth, courts should consider whether the materials were routinely prepared and, if so, the purposes that were served by that routine preparation . . . Last, courts should examine the timing of the preparation and ascertain whether specific claims were present or whether discussions or negotiations had occurred at the time the materials were prepared.

*Brown, supra* at 733, quoting Note, Work Product Discovery: A Multifactor Approach to the Anticipation of Litigation Requirement in Federal Civil Procedure 26(b)(3), 66 Iowa L.Rev. 1277, 1287 (1981).

A. Pre-March 3, 1989 Material

In the context of an insurance coverage action, the court must distinguish between the [**24] anticipation of the underlying litigation and anticipation of the coverage litigation in order to evaluate work product claims in the coverage litigation. In this case, the Court has found that communications prior to March 3, 1989 were made when HCC's primary insurers were providing a defense and no dispute as to coverage was evident. No atmosphere of uncertainty as to coverage existed prior to that date which might have led the plaintiffs to anticipate coverage litigation. Therefore documents generated by HCC or its counsel in the underlying litigation prior to March 3, 1989 were not produced in anticipation of this coverage litigation and are not protected by the work product doctrine as to this litigation in light of the commonality of interest of the parties. See pp. 5-8, *supra.* Those documents must be produced in their entirety, including any "opinion work product" consisting of mental impressions, conclusions, opinions or legal theories.

B. Post-March 3, 1989 Materials

Documents produced after March 3, 1989, were produced in an atmosphere of [*1127] adversity as to several of the defendant insurers and uncertainty as to the rest. The Court finds that post-March 3, 1989 documents [**25] were generated in preparation for or anticipation of coverage litigation and are, therefore, subject to the protection of the work product doctrine. That protection is qualified by the substantial need exception, which provides that when a party demonstrates substantial need of the materials and cannot obtain a substantial equivalent without undue hardship, the materials must be produced.

In this case, defendant insurers must attempt to prove that HCC knew about the propensities of Celcon(R) and the emerging claims and withheld this information from defendants in procuring insurance policies, thereby enhancing the risk assumed by defendants and violating the terms of the policies. It would be extremely difficult if not impossible for defendants to prove their allegations Without access to materials representing, *inter alia,* HCC's investigations of Celcon(R) and its conduct of the plumbing claims and litigation. Information about HCC's knowledge of the alleged problems associated with Celcon(R), when HCC became aware of Celcon(R) claims, and how HCC handled those claims is largely, if not exclusively, within the possession of HCC. HCC contends that the defendant insurers are free [**26] to conduct their own investigations into Celcon(R) and to HCC's treatment of the Celcon(R) claims. While this is technically correct, a more realistic assessment is that the insurers will find it nearly impossible to prove "what HCC knew and when" without access to

the documents in HCC's Possession. This is especially true since many of the defendant insurers never received a Celcon(R)-related claim from HCC apart from this declaratory judgment action and have never had an opportunity to make even the most cursory investigation of the underlying claims.

In addition, while substantial expense may not by itself constitute undue hardship, it is not irrelevant that should HCC prevail in this coverage action, some of the defendant insurers will eventually bear the cost of the work product generated by HCC in the underlying actions. Should the defendant insurers prevail because of fraud and/or misrepresentation on HCC's part, HCC will bear no additional cost for the work product it and its counsel have generated in defending the underlying actions. Defendants would merely be spared the work product costs associated with evaluating underlying claims for which they may bear no liability. [**27] Again, the Court notes that many of the defendants have never received an actual claim by HCC and thus have had no opportunity to investigate the underlying claims. In light of the necessity of the materials for a viable defense of this action, the duties of cooperation imposed on both parties to the insurance contract and the fact that both HCC and the insurers share an interest in the underlying litigation, at least until the coverage issues are resolved, the Court will order production.

The Court finds that the insurers have a substantial need for the post-March 3, 1989 work product materials generated by HCC and its counsel in the underlying actions and are unable to obtain the materials or their substantial equivalent without undue hardship. Work product materials generated after March 3, 1989 must therefore be produced to defendants. Such production shall not include the production of "opinion" work product, containing the mental impressions, conclusions, opinions or legal theories of HCC's counsel, pertinent solely to the defense of the underlying actions. The Court will permit redaction from post-March 3, 1989 materials of those portions which contain counsel's mental impressions, [**28] conclusions, opinions, or legal theories. The redacted portions of the materials shall be produced for in camera review by the Court unless the parties agree that they need not be produced.

CONCLUSION

Plaintiffs shall produce materials generated in the underlying litigation which the Court has found not to be privileged or protected above. Communications between plaintiffs and counsel Pertaining solely to this coverage action continue to be protected by the attorney-client privilege. Plaintiffs [*1128] shall commence production of these materials immediately and complete production by March 11, 1992. Plaintiffs shall produce a document-specific privilege log listing those documents still claimed to be privileged by March 4, 1992. Plaintiffs shall provide any portions of materials redacted and claimed to be protected opinion work product for in camera review by March 11, 1992, unless the parties agree that they need not be produced.

The documents and materials which are ordered produced by this decision remain protected by the attorney-client privilege and work product doctrine from discovery by any non-parties to this litigation under the terms of the protective order previously negotiated [**29] by the parties and entered by this Court. These documents shall not be removed from the jurisdiction of this Court without prior order of this Court.

Service:    **Get by LEXSEE®**
Citation:   **623 A.2d 1118**
View:   Full
Date/Time:  Tuesday, September 21, 2004 - 3:08 PM EDT

* Signal Legend:

- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.