**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THE ROMAN CATHOLIC ARCHBISHOP
OF BOSTON, A CORPORATION SOLE,

                Plaintiff,

v.

LUMBERMENS MUTUAL CASUALTY
COMPANY,

                Defendant.

Civil Action No. 04-10461-DPW

**LUMBERMENS MUTUAL CASUALTY COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE**
**ROMAN CATHOLIC ARCHDIOCESE OF BOSTON, A CORPORATION SOLE,**
**TO PRODUCE DOCUMENTS AND PROVIDE TESTIMONY REGARDING**
**SUBJECT MATTERS PLACED "AT ISSUE"**

**Introduction**

Lumbermens Mutual Casualty Company ("LMC") respectfully moves this Court to

compel the Roman Catholic Archbishop of Boston, A Corporation Sole ("RCAB"), to produce

documents and provide testimony on subjects that the RCAB has put "at issue" and which have

been withheld from disclosure pursuant to assertions of privilege and/or work product protection.

Specifically, the RCAB has refused to produce documents or testimony relating to the following

subjects:

1.      The RCAB's evolving knowledge and understanding(s) regarding the existence
and location of any insurance policies issued by LMC, and the purported
"diligence" of its searches for same;

2.      The RCAB's evolving knowledge and understanding(s) regarding the terms and
conditions of any insurance policies issued by LMC;

3.      The RCAB's evolving knowledge and understanding(s) emanating from any
alleged representation by LMC, including;

        a.       Its knowledge of facts at odds with the substance of any such representation;

        b.       Its harboring of interpretations at odds with the substance of any such representations; and

        c.       Facts relevant to assessing its alleged reliance upon any such representation, or the reasonableness of any such reliance;

4.      The RCAB's evolving knowledge and understanding(s) regarding the existence and/or application of aggregate limits to any coverage purportedly available from LMC;

5.      The RCAB's evolving knowledge and understanding(s) regarding LMC's coverage positions, including its reservations of rights;

6.      The RCAB's evolving knowledge and understanding(s) emanating from investigation of claims, and the level of its cooperation with LMC in communicating same;

7.      The RCAB's evolving knowledge and understanding(s) regarding the validity of the parties' "buy-back" agreement; and

8.      The RCAB's evolving knowledge and understanding(s) regarding LMC's purported obligations with regard to the global settlement.

Attached as Exhibit C to the Transmittal Affidavit of Brian P. McDonough ("McDonough Affidavit"), filed herewith, are true and accurate copies of certain pages from the deposition transcript of the 30(b)(6) designee of the RCAB's General Counsel, which evidence the RCAB's failure and refusal to produce documents relating to these subjects. As previously detailed in LMC's September 9, 2004 Motion to Compel, which challenges the adequacy of the RCAB's Privilege Log, LMC cannot ascertain which of the thousands of withheld documents pertain to these subjects.

Through its complaint, and more recently through its motion for summary judgment, the RCAB, for its own benefit, has placed relevant information relating to these subjects (which might otherwise be protected from disclosure) squarely "at issue." Such information is so

2

enmeshed with LMC's defenses to this lawsuit, that non-disclosure would cause manifest

unfairness to LMC.  As such, and regardless of any arguably available privilege or protection

against disclosure, this Court should compel the RCAB to provide testimony and to produce any

and all documents which relate to those subject matters.

### Argument

**The RCAB Has Improperly Withheld Documents and Testimony Relating to Claims and Issues That It Has Affirmatively Placed "At Issue" in This Litigation.**

It is well settled that a litigant may implicitly waive the protections of the attorney-client

privilege or the work product doctrine by injecting certain claims or defenses into a case.  Darius

v. City of Boston, 433 Mass. 274, 277 (2001).  This is the basic premise underlying the concept

of the "at issue" waiver, which is grounded in the bedrock principle that privileges are intended

to be utilized as shields, not swords.  An "at issue" waiver begins - and privileges end – "'at the

point where the defendant can show that the plaintiff's civil claim, and the probable defenses

thereto, are enmeshed in important evidence that will be unavailable to the defendant if the

privilege(s) prevail.'"  Federal Deposit Insurance Corp. v. R.W. Beck, Inc., 2004 U.S. Dist.

LEXIS 12128, *4 (D. Mass. 2004),[1] quoting Greater Newburyport Clamshell Alliance v. Public

Service Co. of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988).

Most courts have determined that an implicit "at issue" waiver occurs when:

> Assertion of the privilege was a result of some affirmative act, *such as filing suit*, by the asserting party; (2) through this affirmative act, the asserting party put the information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

---

[1] A copy of this LEXIS-published decision is attached as Exhibit A to the McDonough Affidavit.

Darius, 433 Mass. at 279, quoting Hern v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)

(emphasis supplied); see also, Dedham-Westwood Water District v. National Union Fire

Insurance of Pittsburgh, 2000 Mass. Super. LEXIS 31, *12 (Mass.Sup.Ct. 2000) (the "at issue"

doctrine applies and a party waives its privileges when (1) by some affirmative act, (2) the party

makes the protected information relevant to the case, and (3) the opposing party is thereby

denied access to information vital to its defense).[2]   The information is vital if it is not available

from any other source.  Id., citing Hearn, 68 F.R.D. at 581; Frontier Refining, Inc. v. Gorman-

Rupp Co., Inc., 136 F.3d 695, 701 (10th Cir. 1998).  Moreover, "the analysis of an 'at issue'

waiver is essentially the same with respect to both [attorney-client privilege and the work

product doctrine]."  R.W. Beck, 2004 U.S. Dist. LEXIS 12128 at *4.

In this litigation, the RCAB contends that from the time it first sought insurance coverage

from LMC for sexual abuse claims, it has been unable to locate any policies issued by LMC or

virtually any other evidence that LMC issued policies to the RCAB.[3]  In addition, it contends that

LMC is precluded from asserting certain defenses because LMC misled the RCAB about the

availability and extent of coverage.  For example, the RCAB contends that it was misled about

the applicability of aggregate limits to the sexual abuse claims.  Similarly the RCAB contends

---

[2] It is well settled that a Federal District Court sitting in diversity jurisdiction should look to Superior Court cases for guidance when the highest court of a state has not addressed an issue.  Remington Arms Co. v. Liberty Mutual Ins. Co., 142 F.R.D. 408, 411 (D.Del. 1992), quoting Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273-74 (3d Cir. 1985) ("Although lower state courts are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest court would rule otherwise.").  Thus far, the Massachusetts Supreme Judicial Court has declined to specifically circumscribe the "at issue" doctrine.  See Darius, 433 Mass. at 279 ("We need not attempt, in this case, to formulate an exact definition of the "at issue" waiver doctrine under Massachusetts law…").  As such, Dedham-Westwood Water District , a Superior Court decision, may be attributed significant weight by this Court.  A true and accurate copy of this decision is attached as Exhibit B to the McDonough Affidavit.

[3] This contention is severely undermined by the fact that in the past two months (August and September of 2004), the RCAB has produced to LMC scores of documents that have been in its possession for decades that reflect the existence and terms of policies issued by LMC to the RCAB.  The RCAB's duplicitous and dishonest conduct that permitted the serial molestation of children by its priests appears to be a practice that it has extended to it efforts to obtain insurance coverage for this unlawful and immoral conduct.

that LMC's conduct in connection with the RCAB's settlement of approximately 540 sexual abuse claims in 2003 (the "global settlement") constitutes a wrongful denial of coverage which precludes LMC from litigating any coverage issues. Yet documents pertaining to these issues have been withheld from the RCAB's production.[4]

Indisputably, the documents withheld by the RCAB are subsumed within those topics of discovery identified as necessary by the RCAB, itself, in its Rule 26(f) statement, and which this Court adopted as Phase I discovery. More pointedly, they are all matters specifically addressed in the RCAB's recently filed motion for partial summary judgment. Since this satisfies the first two prongs of the "at issue" analysis, a showing that application of privilege or work product protection would deny LMC access to information "vital' to its defenses will entitle LMC to the RCAB's testimony and documents relating to these subjects.

Generally speaking, information is "vital" if it is not available from another source. Dedham-Westwood Water District, 2000 Mass. Super. LEXIS at *12, citing Hern, 68 F.R.D. at 581. However, in the specific context of insurance coverage actions, such is presumed:

---

[4] The RCAB has essentially conceded that relevant documents pertaining to these subjects have been withheld from production. The RCAB's General Counsel, The Rogers Firm, through its 30(b)(6) designee, Wilson D. Rogers, III, testified that his firm forwarded to Ropes & Gray all documents in its possession that were responsive to the Court's Automatic Disclosure rules. See, Rogers Firm Deposition Transcript (cited portions of which are attached as Exhibit C to the McDonough Affidavit) at p. 5, line 20 through p. 6 line 3 (Exhibit C hereto). Furthermore, Attorney Rogers testified that these documents included, *inter alia*:

1. Documents pertaining to the issue of aggregate limits in the policies allegedly issued by LMC. Id. at p. 25, lines 4-11;

2. Documents pertaining to the RCAB's understanding of the "working terms" of the policies. Id. at p. 31, lines 5-17;

3. Documents pertaining to the RCAB's understanding(s) subsequent to communications with LMC personnel. Id. at p. 32, lines 17 through p. 33 line 18; and

4. Documents pertaining to analysis of LMC's position on coverage issues. Id. at p. 38, line 18 through p. 39, line 8.

As LMC has been provided no such documents, the inescapable conclusion is that they have been withheld pursuant to privilege and/or work-product designations. Unfortunately, as explained in LMC's previously filed Motion to Compel Production of Documents, the RCAB's privilege log provides insufficient information, and thus impermissibly precludes assessment as to the propriety of its withholding of any particular document.

290a1c0653ba3ab9

> Courts applying the 'at issue' doctrine in the context of insurance coverage actions have held that insureds seeking coverage may not invoke the attorney-client privilege as a shield for discovery as to issues regarding the conduct of the insured or the insured's counsel where the conduct has been placed at issue via the insured's claims.

Id., citing Hoechst Celanese Corp. v. National Union Fire Ins. Co. of Pittsburgh, 623 A.2d 1118, 1125 (Del. Super. 1992). Indisputably, the conduct of RCAB and its counsel are part and parcel of each of the subject matters that the RCAB has placed at issue. Such conduct includes, *inter alia*:

1. Conduct confirming or denying the "diligence" of the RCAB and its counsel regarding efforts to locate polices;[5]

2. Conduct confirming or denying any attempt by the RCAB and its counsel to ascertain the accuracy or propriety of any representation made, or position taken, by LMC;

3. Conduct confirming or denying reliance by the RCAB and its counsel upon any representation made, or position taken, by LMC; and

4. Conduct confirming or denying the reasonableness of any reliance by the RCAB and its counsel upon any representation made, or position taken, by LMC.

Indeed, whether reality comports with the positions espoused by the RCAB as to each of the foregoing,

> [C]an only be truthfully and fairly determined by an examination of the conduct of [the insured] and its counsel . . . . This task necessarily involves the review of otherwise privileged communications which under the circumstances of this case, go directly to the heart of the coverage dispute between [the insured] and defendant insurer[].
>
> \* \* \*
>
> An equitable, complete, and truthful resolution of the issues raised by [the insured] in this litigation would be <u>impossible</u> without examination

---

[5] In its motion for partial summary judgment the RCAB concedes that in the absence of diligent search, secondary evidence is not admissible to prove a policy. LMC contends that not only was there a lack of diligence, but that the discovery requested herein may ascertain that once LMC agreed to participate in the defense and resolution of clergy sexual abuse claims (pursuant to a full reservation of rights), the RCAB's General Counsel concluded, and instructed the RCAB's insurance department (and specifically its claim department), that it was better off <u>not</u> finding the policies.

of the communications between [the insured] and its counsel in handling
the underlying claims.

Hoechst Celanese Corp., 623 A.2d at 1125 (emphasis supplied),[6] as relied upon by Dedham-Westwood Water District, 2000 Mass. Super. LEXIS 31 at *11.  As an equitable, complete, and truthful resolution of the issues raised by the RCAB would be impossible without an examination of the communications between it and its counsel, clearly the "vitality" prong of the "at issue" doctrine is also satisfied.

In sum, by filing this lawsuit the RCAB has placed protected information at issue through an affirmative act for its own benefit.  Such information is so enmeshed with LMC's defenses thereto, that non-disclosure would cause manifest unfairness to LMC.  R.W. Beck, Inc., 2004 U.S. Dist. LEXIS 12128, * 4 ("The privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in the important evidence that will be unavailable to the defendant if the privilege prevails." (internal cite omitted.)).

Therefore, regardless of any arguably available protection against disclosure, this Court should compel the RCAB to produce any and all documents which relate to those subject matters identified by this Court as Phase I discovery.  Furthermore, as the RCAB's withholding of such documents has deprived LMC of a fair opportunity to conduct discovery on such subject matters, this Court should also compel the RCAB to make its 30(b)(6) designees available for further questioning as to same.

---

[6] A copy of this decision is attached as Exhibit D to the McDonough Affidavit.

**Wherefore**, for all of the foregoing reasons, LMC requests that this Court order that:

1.     The RCAB must produce all documents previously withheld on the basis of privilege or work-product that contain information relating to those subject matters previously identified by this Court for Phase I discovery; and

2.     The RCAB must make its 30(b)(6) designees available for further questioning as to such subject matters.

Respectfully submitted,

LUMBERMENS MUTUAL CASUALTY COMPANY,

By its attorneys,
ROBINSON & COLE LLP


_____/s/_____ Brian P. McDonough
John E. Tener, BBO No. 563791
Mary L. Cataudella, BBO No. 553350
Anthony R. Zelle, BBO No. 548141
Brian P. McDonough, BBO No. 637999
Robinson & Cole LLP
One Boston Place
Boston, Massachusetts 02108
(617) 557-5900

September 22, 2004

8