UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE, <br><br> Plaintiff, <br><br> v. <br><br> LUMBERMENS MUTUAL CASUALTY COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 04-10461-DPW |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
AFFIDAVIT OF DENNIS CONNOLLY**

The Roman Catholic Archbishop of Boston, a Corporation Sole (the "RCAB") opposes the Motion of Defendant, Lumbermens Mutual Casualty Company ("LMC"), to Strike the Affidavit of Dennis Connolly (the "Connolly Affidavit"). LMC's Motion to Strike does not contest in any material way the factual assertions contained in the Connolly Affidavit, which is not surprising, given Mr. Connolly's nearly 40 years of experience in the insurance industry. Instead, LMC interposes a number of technical objections to the Connolly Affidavit, all of which can be answered by the fact that Mr. Connolly is being offered *as an expert* to testify that LMC used standard form liability policies, which contained no aggregate limits on annual coverage, for the policies it issued to the RCAB.

LMC first complains of the fact that Mr. Connolly was not included as part of the RCAB's initial disclosures to LMC. The RCAB was not required to disclose Mr. Connolly to LMC along with its initial disclosures, however, because, as LMC itself

acknowledges, the rule governing required initial disclosures, Fed. R. Civ. P. 26(a)(1), does not apply to expert testimony. Instead, disclosure of expert testimony is governed by Fed. R. Civ. P. 26(a)(2), which requires that, "in the absence of other directions from the court or stipulation by the parties," disclosure of experts be made 90 days before the trial date. *Id.* R. 26(a)(2)(C); *see also, e.g.*, *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004) (recognizing the distinction between disclosure of fact witnesses, governed by Rule 26(a)(1)(A), and disclosure of expert witnesses, governed by Rule 26(a)(2)); *Strougo v. BEA Assocs.*, 188 F. Supp. 2d 373, 379-80 (S.D.N.Y. 2002) ("[T]here is no requirement that a party disclose its experts prior to filing a motion for summary judgment."). Because there is no Court order or stipulation between the parties requiring disclosure of experts, and because no trial date has yet been set, the RCAB has not missed any deadline to disclose Mr. Connolly to LMC.

Apparently recognizing that its non-disclosure argument is without merit, LMC goes on to argue that the Connolly affidavit should be stricken because it is not based on personal, first-hand knowledge of LMC's practices prior to 1974. Once again, however, LMC misses the critical point that Mr. Connolly is being offered as an expert with respect to how insurance companies drafted general liability policies during the time period relevant to this dispute. His testimony is based on his nearly 40 years of experience in the insurance industry, during which he developed familiarity with underwriting general liability policies. (Connolly Aff. ¶ 1.) As the Supreme Court observed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. Presumably, this relaxation of the usual

requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.* at 592 (citations omitted). The assertions contained in the Connolly Affidavit fit well within this wide latitude.

To the extent Mr. Connolly's conclusions are based on anything other than his extensive experience in the insurance industry, they are based on documents provided to the RCAB by LMC itself. For example, Mr. Connolly bases his opinions, in part, on the policies issued by LMC to the RCAB from 1974 to 1983, which he concludes are all standard form ISO policies. (Connolly Aff. ¶¶ 15-17.) Mr. Connolly also bases his conclusions on a note from Christine Zinoman to outside counsel, Morrison, Mahoney & Miller, acknowledging that the "1966 Policy Jacket would be applicable if we concede cov[erage] for 9/23/71 – 9/23/74 and 3/31/71 – 3/31/74." (Connolly Aff. Ex. E.) Therefore, LMC's suggestion that it has not had an opportunity to challenge the foundation of Mr. Connolly's testimony is patently untrue—the documents that form the basis of Mr. Connolly's assertions are LMC's very own documents. Moreover, LMC is in the very industry that is the subject of the expert testimony. If there in fact were a substantive issue with the affidavit, LMC certainly has the ability to respond.

Not one sentence of LMC's Motion to Strike is devoted to contesting materially the substance of the Connolly Affidavit. The closest LMC comes to doing so is a half-hearted suggestion that LMC policies issued prior to 1971 may have been "Owner, Landlord, and Tenant" policies, rather than ISO standard form general liability policies. (Def.'s Mot. to Strike Aff. of Dennis Connolly at 2.) Even if such a suggestion were true, which would run counter to the overwhelming documentary evidence, including the

Zinoman note to Morrison, Mahoney & Miller, the fact is that Owner, Landlord, and Tenant policies, no less than standard form general liability policies, provide coverage for these types of claims, and do not contain an aggregate limit on coverage.  *See, e.g.*, 1966 Standard form Owners', Landlords' and Tenants' Liability Insurance Coverage Part (attached to the Affidavit of Kate Cimini as Exhibit 1); *see also Servants of the Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 836-37 (D.N.M. 1994) (holding that OL&T policy covered claims of negligent supervision and failure to warn brought against facility that treated pedophile priest).  Accordingly, LMC has not established a genuine issue of *material* fact.  *E.g.*, *United States v. President & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 163 (D. Mass. 2004) (Woodlock, J.) ("A fact is 'material' if it has the 'potential to affect the outcome of the suit under the applicable law.' " (quoting *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000)).

       Furthermore, the Connolly Affidavit consists entirely of assertions that are capable of objective verification, which counsels in favor of its admissibility.  *See Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001) (stating that affidavits "must concern facts as opposed to conclusions, assumptions, or surmise," and distinguishing facts as " 'susceptible to objective verification,' whereas conclusions 'are empirically unverifiable in the usual case.' " (citing *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989)).  For example, Mr. Connolly's opinion that "any general liability policy issued by LMC to the RCAB from 1955 – 1966 would have been on the 1955 standard form, and form [sic – from] 1966 until 1973, the 1966 standard form would have been used," (Connolly Aff. ¶ 18), is either true or it is not.  LMC should be able to verify this assertion based on evidence available to it.  The fact that LMC has not produced *any*

evidence that would refute such an assertion does not mean that Mr. Connolly's assertion is empirically unverifiable—in stark contrast, for example, to Mary Kay Reardon's conjecture about what LMC would have done had the RCAB contested the existence of aggregates. (Aff. of Mary Kay Reardon ¶¶ 4-6.) To the contrary, LMC's deficiency only bolsters the credibility of Mr. Connolly's claim.

Finally, the Court also should reject LMC's request to depose Mr. Connolly. LMC makes no proffer concerning what it expects to accomplish by such a deposition. This request is nothing but a delaying tactic on the part of LMC, which obviously has known from the outset that the RCAB would undertake to demonstrate that LMC used standard form liability policies when it issued coverage to the RCAB prior to 1974. (*E.g.*, Compl. ¶ 8.) Had LMC been in possession of evidence that undermines the RCAB's position on this issue, it surely would have produced it. Deposing Mr. Connolly at this juncture would do nothing other than confirm the substance of the Connolly Affidavit.

For the foregoing reasons, the Court should deny LMC's Motion to Strike the Connolly Affidavit.

-6-

        Respectfully submitted,

        THE ROMAN CATHOLIC ARCHBISHOP
        OF BOSTON, A Corporation Sole
        By its attorneys,

        _/s/ Paul B. Galvani_____
        Paul B. Galvani (BBO # 183800)
        Thomas H. Hannigan, Jr.
          (BBO # 220420)
        Bryan R. Diederich (BBO # 647632)
        Kate Cimini (BBO # 654336)
        Ropes & Gray LLP
        One International Place
        Boston, MA 02110
        (617) 951-7000

Dated:  October 13, 2004