UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE ROMAN CATHOLIC ARCHBISHOP
OF BOSTON, A CORPORATION SOLE,

        Plaintiff,

v.

LUMBERMENS MUTUAL CASUALTY
COMPANY,

        Defendant.

Civil Action No. 04-10461-DPW

### AFFIDAVIT OF MARY KAY REARDON

I, Mary Kay Reardon, affirm as follows:

1. I am Director of Corporate Claims for Lumbermens Mutual Casualty Company ("LMC").

2. I provide the information contained herein upon my personal knowledge.

3. LMC has paid an approximate total of $19,197,181 to the Roman Catholic Archdiocese of Boston, A Corporation Sole ("RCAB") to indemnify for loss and expenses ($17,698,263 for loss, and $1,498,918) resulting from clergy sexual abuse claims.

4. In its Complaint, the RCAB states that in June of 1995 representatives of LMC informed the RCAB that it would apply indemnity payments made in connection with the sexual abuse claims against the LMC policies' stated $300,000 aggregate limits. If the RCAB had challenged LMC's statement that the indemnity payments made in connection with the sexual abuse claims would be applied against the policies' stated $300,000 aggregate limits, essentially asserting a claim for <u>unlimited</u> coverage, subject only to the $300,000 per occurrence limit, LMC



EXHIBIT A

would have filed a declaratory action raising, at a minimum, the coverage issues expressly identified in its reservation of rights letters.

5. Over the next three years, LMC applied the indemnity payments it made to the RCAB against the policies' stated $300,000 aggregates, and for each indemnity payment made, LMC informed the RCAB which policy's aggregate limit it would be applied to. The RCAB never objected to the application of the payments against the policies' stated aggregate limits, though it occasionally challenged the manner in which LMC allocated the payments among the policies. Had the RCAB ever raised an objection, LMC would have filed a declaratory judgment action raising all of the available coverage and other defenses then known. As indicated in its counterclaim in this action, LMC came to learn of many issues which, for any given claim, might abrogate coverage, in whole or part, including, without limitation: whether negligent supervision of a particular pedophile priest constituted a cognizable "occurrence"; whether resulting harm constituted cognizable "bodily injury"; whether lack of prior notice of improper conduct by a particular perpetrator priest precluded a finding of negligence; whether prior notice of improper conduct by a particular perpetrator priest precluded a finding of negligence; whether recoverable damages were subject to an asserted charitable immunity defense; and/or whether recovery was time barred.

6. Similarly, had the RCAB ever intimated that annual aggregate limits should not apply to clergy sexual abuse claims, LMC would have insisted upon unfettered access to the RCAB's personnel records for accused priests. Based on the statements made by the RCAB's General Counsel, Wilson D. Rogers, LMC did not require the RCAB to provide information concerning the accused priests because the RCAB claimed that the information was highly sensitive and confidential. If the RCAB refused to provide all of the information requested

concerning the underlying claims, LMC would have sought a court order compelling the RCAB to provide the information that LMC was entitled to under the terms and conditions of the policies.

7. On or about July 23, 2003, I sent a memo to Jim Meehan and Dennis Brand of LMC. The memo contains the phrase, "[w]e really have no argument on the aggregate . . . ." My sole intention for including that phrase was to convey the fact that, in and of themselves, the terms and conditions of Coverage Part 7, do not extend the application of annual aggregate limits to clergy sexual abuse claims. In no way should this be construed as a belief on my part, then or now, that aggregate limits should not have been applied to clergy sexual abuse claims. To the contrary, it is my belief that as evidenced by the deliberate conduct of LMC and the RCAB, the parties understood that aggregate limits would apply, and in keeping with that understanding, they were. Further acknowledgement of my understanding as to the propriety of applying aggregate limits can be found in the memo, itself, wherein I opined that the RCAB would be estopped from attempting to enforce any interpretation at variance with its actual conduct.

Signed under the pains and penalties of perjury this 30th day of September, 2004.

*Mary Kay Reardon*
Mary Kay Reardon

3