1

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MASSACHUSETTS
 2

 3    THE ROMAN CATHOLIC ARCHBISHOP
      OF BOSTON, A Corporation Sole,

 4              Plaintiff,

 5       -vs-                    C.A. No. 04-10461-DPW

 6    LUMBERMENS MUTUAL CASUALTY
      COMPANY,
 7                               ORIGINAL
                Defendant.
 8    _____

 9          VOLUME I - Pages 1 - 314

10

11          The deposition of MARY KAY REARDON,

12    called by the Plaintiff for examination,

13    pursuant to notice and pursuant to the

14    Federal Rules of Civil Procedure for the

15    United States District Courts pertaining to

16    the taking of depositions, taken before

17    DIANE L. STODULSKI, Certified Shorthand

18    Reporter, Registered Professional Reporter,

19    and Notary Public within and for the County

20    of Cook and State of Illinois at 200 South

21    Wacker Drive, Suite 3000, Chicago, Illinois,

22    commencing at the hour of 9:00 o'clock AM on

23    the 26th day of July, A.D. 2004.

24
```

EXHIBIT C

CAROL RABER & ASSOCIATES
(312) 446-6926

263

```
 1   negligent hiring, then Kemper would make a          15:19:35
 2   determination as to whether they owed the           15:19:38
 3   insured defense and indemnity, but as far as        15:19:40
 4   any investigation, there was no                     15:19:47
 5   investigation done early on.  There was some        15:19:50
 6   investigation done with the assistance of           15:19:53
 7   our attorney in 2001.                               15:19:57
 8        Q.   Move to strike.  The question was:        15:20:04
 9   Did the Archdiocese of Boston ask Lumbermens        15:20:07
10   not to investigate any claims?  Try yes or          15:20:09
11   no, and then if you have to explain, then           15:20:19
12   you can explain.                                    15:20:19
13        A.   I don't believe it was the                15:20:19
14   Archdiocese but the Rogers law firm.                15:20:19
15        Q.   Specifically asked Lumbermens not         15:20:27
16   to investigate any claims?                          15:20:30
17        A.   Yes.                                      15:20:33
18        Q.   Was that request in writing?              15:20:33
19        A.   I don't believe so.                       15:20:33
20        Q.   Who made the request?                     15:20:36
21        A.   I believe it was Mr. Rogers, Sr.          15:20:37
22        Q.   Meaning Mr. Rogers, Jr?                   15:20:44
23        A.   I'm sorry, Jr.                            15:20:47
24        Q.   To whom was the request made?             15:20:47
```

264

| | | |
|---|---|---|
| 1 | A. The request was made -- I know | 15:20:48 |
| 2 | Mr. Bennett and Ms. Zinoman and I believe | 15:20:58 |
| 3 | there was another party, and the name | 15:20:58 |
| 4 | escapes me right now, but it is probably in | 15:20:59 |
| 5 | one of these documents that they wanted to | 15:21:03 |
| 6 | go to the Archdiocese of Boston and discuss | 15:21:04 |
| 7 | issues with the risk department; and the | 15:21:07 |
| 8 | meeting never did take place, but there was | 15:21:13 |
| 9 | an understanding that these were very, very | 15:21:16 |
| 10 | sensitive, and Mr. Rogers had indicated that | 15:21:20 |
| 11 | they did not want this information being | 15:21:21 |
| 12 | transferred to the claim office. | 15:21:26 |
| 13 | Q. Let me try it one more time. Whom | 15:21:33 |
| 14 | did Mr. Rogers, Jr. -- whom at Lumbermens | 15:21:37 |
| 15 | did Mr. Rogers, Jr. ask not to conduct any | 15:21:40 |
| 16 | investigation? | 15:21:44 |
| 17 | A. I believe it was Chris Zinoman, but | 15:21:47 |
| 18 | I'm not positive. | 15:21:50 |
| 19 | Q. And when was that request made? | 15:21:51 |
| 20 | A. That probably would have been made | 15:21:54 |
| 21 | in 1995 or 1996, about the time that we had | 15:21:55 |
| 22 | accepted the fact that we would provide some | 15:22:02 |
| 23 | coverage. | 15:22:05 |
| 24 | Q. Are you guessing? | 15:22:07 |

265

| | | |
|---|---|---|
| 1 | A.   I shouldn't say guess.  I believe | 15:22:10 |
| 2 | it was 1995 or early 1996. | 15:22:11 |
| 3 | Q.   Did Ms. Zinoman tell you that he | 15:22:15 |
| 4 | had made that request? | 15:22:17 |
| 5 | A.   There is documentation in the files | 15:22:18 |
| 6 | that -- | 15:22:19 |
| 7 | Q.   Saying the Rogers firm has asked us | 15:22:20 |
| 8 | not to investigate any cases? | 15:22:22 |
| 9 | A.   Yes, and indications and even | 15:22:25 |
| 10 | talking to Chris Zinoman that it was in | 15:22:28 |
| 11 | agreement that we would not conduct an | 15:22:33 |
| 12 | independent investigation of any of these | 15:22:37 |
| 13 | claims. | 15:22:38 |
| 14 | Q.   Did Lumbermens ever object to the | 15:22:40 |
| 15 | scope of the investigation conducted by the | 15:22:41 |
| 16 | Rogers firm on any of these claims? | 15:22:44 |
| 17 | A.   At any time? | 15:22:46 |
| 18 | Q.   Yes. | 15:22:47 |
| 19 | A.   Yes, there were questions.  I don't | 15:22:53 |
| 20 | know if object is the right term.  When I | 15:23:04 |
| 21 | became involved in the cases there, I had | 15:23:04 |
| 22 | concerns about how they were investigating | 15:23:04 |
| 23 | linking the individual to the alleged abuse. | 15:23:11 |
| 24 | Q.   Did you relay that concern to | 15:23:15 |

280

| | | |
|---|---|---|
| 1 | MR. ZELLE: Objection. | 15:46:22 |
| 2 | THE WITNESS: We operated under a | 15:46:23 |
| 3 | reservation of rights and paid the claims | 15:46:29 |
| 4 | under a full reservation of rights. | 15:46:29 |
| 5 | BY MR. GALVANI: | 15:46:30 |
| 6 | Q. You paid the claims? | 15:46:31 |
| 7 | A. Under a reservation of rights which | 15:46:34 |
| 8 | was appropriate with limited information in | 15:46:40 |
| 9 | the files. | 15:46:40 |
| 10 | Q. You keep saying under reservation | 15:46:40 |
| 11 | of rights. What was the rights that you say | 15:46:40 |
| 12 | were reserved? | 15:46:45 |
| 13 | A. We were reserving our rights under | 15:46:45 |
| 14 | the policies at the time. | 15:46:47 |
| 15 | Q. What rights under the policies? | 15:46:50 |
| 16 | A. The rights to disclaim coverage at | 15:46:51 |
| 17 | a later date if information or investigation | 15:46:53 |
| 18 | came to light that would cause us to | 15:46:56 |
| 19 | determine that no coverage applied under the | 15:47:01 |
| 20 | policies. | 15:47:01 |
| 21 | Q. You issued a reservation of rights | 15:47:02 |
| 22 | that said that? | 15:47:03 |
| 23 | A. We issued a reservation of rights | 15:47:04 |
| 24 | on I believe every claim that came in until | 15:47:10 |

281

| | | |
|---|---|---|
| 1 | later years when I believe there was an | 15:47:13 |
| 2 | agreement that specifically said we did not | 15:47:13 |
| 3 | have to issue a new reservation of rights | 15:47:20 |
| 4 | letter.  I think it was a signed document. | 15:47:22 |
| 5 | Q.   What did the reservation of rights | 15:47:25 |
| 6 | letter provide? | 15:47:28 |
| 7 | A.   It basically provided a reservation | 15:47:28 |
| 8 | that we were paying these claims and that we | 15:47:31 |
| 9 | were providing a defense under a full | 15:47:36 |
| 10 | reservation so should such information come | 15:47:37 |
| 11 | to light at a later date that would indicate | 15:47:40 |
| 12 | that coverage would not apply under the | 15:47:44 |
| 13 | policy we reserved our rights to assert | 15:47:46 |
| 14 | those policy defenses at a later date. | 15:47:48 |
| 15 | Now, I can't tell you exactly | 15:47:51 |
| 16 | how it was worded, but that is in essence of | 15:47:52 |
| 17 | what a reservation of rights letter would | 15:47:56 |
| 18 | say. | 15:47:57 |
| 19 | Q.   That's your understanding of what a | 15:48:02 |
| 20 | reservation of rights letter says? | 15:48:02 |
| 21 | A.   Yes, basically. | 15:48:05 |
| 22 | Q.   What do you mean, it doesn't say | 15:48:11 |
| 23 | that or it does say that? | 15:48:12 |
| 24 | A.   Yes, it says that. | 15:48:16 |

CAROL RABER & ASSOCIATES
(312) 446-6926

315

```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS

THE ROMAN CATHOLIC ARCHBISHOP
OF BOSTON, A Corporation Sole,

        Plaintiff,

   -vs-                        C.A. No. 04-10461-DPW

LUMBERMENS MUTUAL CASUALTY
COMPANY,                           ORIGINAL

        Defendant.
```

VOLUME II - Pages 315 - 591

The deposition of MARY KAY REARDON, called by the Plaintiff for examination, pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before DIANE L. STODULSKI, Certified Shorthand Reporter, Registered Professional Reporter, and Notary Public within and for the County of Cook and State of Illinois at 200 South Wacker Drive, Suite 3000, Chicago, Illinois, commencing at the hour of 9:00 o'clock AM on the 27th day of July, A.D. 2004.

362

| | | |
|---|---|---|
| 1 | at some point in time? | 09:45:18 |
| 2 |     A.   Yes, I believe it was in 2001. | 09:45:19 |
| 3 |     Q.   Did you see copies of any of the | 09:45:22 |
| 4 | documents that he found? | 09:45:23 |
| 5 |     A.   I don't recall seeing any of the | 09:45:26 |
| 6 | documents. | 09:45:27 |
| 7 |     Q.   Did he prepare a memorandum | 09:45:31 |
| 8 | summarizing what he had seen to your | 09:45:32 |
| 9 | knowledge? | 09:45:35 |
| 10 |     A.   I'm not positive whether he did or | 09:45:38 |
| 11 | didn't. | 09:45:41 |
| 12 |     Q.   How did you learn that he had seen | 09:45:41 |
| 13 | documents? | 09:45:42 |
| 14 |     A.   He came back from reviewing those | 09:45:43 |
| 15 | documents and did discuss the content of | 09:45:49 |
| 16 | some of the investigation that was contained | 09:45:51 |
| 17 | in the Rogers office. | 09:45:53 |
| 18 |     Q.   So you had a discussion with | 09:45:54 |
| 19 | Mr. Maloney in 2001 with respect to this | 09:45:55 |
| 20 | case or not this lawsuit, but the claims | 09:46:01 |
| 21 | against the Archdiocese? | 09:46:04 |
| 22 |     A.   In 2001 I was directly involved in | 09:46:06 |
| 23 | this case. | 09:46:08 |
| 24 |     Q.   And tell me again when did you | 09:46:10 |

363

| | | |
|---|---|---|
| 1 | first become directly involved? | 09:46:11 |
| 2 | A.   I believe it was in 1997 where a | 09:46:21 |
| 3 | direct report was actually handling the | 09:46:22 |
| 4 | claims, Mr. Meany. | 09:46:24 |
| 5 | Q.   You had a direct report from | 09:46:25 |
| 6 | Mr. Meany, but other than supervising | 09:46:28 |
| 7 | Mr. Meany, were you personally involved in | 09:46:30 |
| 8 | any communications with the Archdiocese | 09:46:31 |
| 9 | or -- | 09:46:39 |
| 10 | A.   Yes, I was.  When Mr. Meany was out | 09:46:39 |
| 11 | on disability, and the Rogers firm was | 09:46:42 |
| 12 | talking about a mediation on the | 09:46:45 |
| 13 | Geoghan/Garabedian cases. | 09:46:53 |
| 14 | Q.   You became personally involved at | 09:46:53 |
| 15 | that point? | 09:46:54 |
| 16 | A.   Yes, I did. | 09:46:54 |
| 17 | Q.   Did you attend any of the | 09:46:55 |
| 18 | mediations? | 09:46:58 |
| 19 | A.   No, I did not. | 09:46:58 |
| 20 | Q.   Before Mr. Meany went out on leave | 09:47:02 |
| 21 | in 2001, there was that period from 1997 to | 09:47:02 |
| 22 | 2001 when he was reporting to you, correct? | 09:47:06 |
| 23 | A.   Yes. | 09:47:10 |
| 24 | Q.   Did you have any discussions with | 09:47:10 |

364

1  Mr. Meany at any time during those four
2  years whether there were aggregates
3  applicable to these claims?
4     A.   Yes, because he would relay to me
5  when the aggregates were exhausted.
6     Q.   And you had discussions with him
7  about that?
8     A.   I basically looked at the documents
9  that he prepared and confirmed that he was
10 tracking the aggregates.
11    Q.   Did you ever at that time or during
12 that four-year period ever say to him, gee,
13 where did these aggregates come from?
14    A.   No.
15    Q.   And he never volunteered it to you?
16    A.   No.  The coverage position had been
17 taken many years earlier by prior staff
18 members and it was not reviewed again.
19    Q.   Did you know that Mr. Meany went to
20 Boston from time to time to meet with
21 lawyers from Dunn & Rogers?
22    A.   Yes.
23    Q.   And did you receive reports of
24 those meetings?

                                                                365

| | | |
|---|---|---|
| 1 | A.  I would receive verbal reports.  I | 09:48:16 |
| 2 | don't know that there were any written | 09:48:22 |
| 3 | reports, but there may have been. | 09:48:22 |
| 4 | Q.  Verbal includes both oral and | 09:48:25 |
| 5 | written? | 09:48:28 |
| 6 | A.  I'm sorry, oral. | 09:48:29 |
| 7 | Q.  Verbal means words? | 09:48:34 |
| 8 | A.  That's fine. | 09:48:34 |
| 9 | Q.  You received oral reports not | 09:48:34 |
| 10 | written reports? | 09:48:36 |
| 11 | A.  I received oral reports for | 09:48:37 |
| 12 | certain, and I may have received written | 09:48:40 |
| 13 | reports.  I can't recall specifically. | 09:48:41 |
| 14 | Q.  How often did Mr. Meany go to | 09:48:44 |
| 15 | Boston; do you know? | 09:48:45 |
| 16 | A.  I don't know. | 09:48:47 |
| 17 | Q.  Do you know why he went to Boston? | 09:48:53 |
| 18 | A.  He went to Boston to discuss the | 09:48:53 |
| 19 | cases, the pending cases. | 09:48:53 |
| 20 | Q.  To ask Dunn & Rogers for | 09:48:55 |
| 21 | information? | 09:49:03 |
| 22 | A.  Yes. | 09:49:03 |
| 23 | Q.  Did he authorize settlement of any | 09:49:03 |
| 24 | of the cases? | 09:49:03 |

460

| | | |
|---|---|---|
| 1 | Q.   Would it have not handled the | 13:15:33 |
| 2 | claims were there no aggregates? | 13:15:36 |
| 3 | MR. ZELLE:   Objection. | 13:15:37 |
| 4 | THE WITNESS:   Lumbermens still | 13:15:39 |
| 5 | would have participated under a reservation | 13:15:40 |
| 6 | of rights on the claims. | 13:15:44 |
| 7 | BY MR. GALVANI: | 13:15:44 |
| 8 | Q.   So what did Lumbermens do to its | 13:15:44 |
| 9 | own detriment that it would not otherwise | 13:15:47 |
| 10 | have done if the Archdiocese had pushed back | 13:15:51 |
| 11 | and said no, we disagree there are no | 13:15:54 |
| 12 | aggregates? | 13:15:57 |
| 13 | MR. ZELLE:   Objection. | 13:15:59 |
| 14 | THE WITNESS:   If the Archdiocese | 13:16:00 |
| 15 | had raised the issue of aggregates, it would | 13:16:02 |
| 16 | have been reviewed. | 13:16:06 |
| 17 | BY MR. GALVANI: | 13:16:06 |
| 18 | Q.   If the Archdiocese had said we | 13:16:06 |
| 19 | disagree, we don't have the policies, we | 13:16:09 |
| 20 | don't know whether there are aggregates or | 13:16:10 |
| 21 | not; if they had affirmatively said that or | 13:16:14 |
| 22 | had gone further and said there are no | 13:16:15 |
| 23 | aggregates, what would Lumbermens have done | 13:16:18 |
| 24 | differently from what it did do? | 13:16:19 |

461

```
 1          MR. ZELLE:  Objection, that's a          13:16:22
 2   compound question.                               13:16:22
 3          THE WITNESS:  Any time an insured         13:16:29
 4   takes an exception with a coverage position,     13:16:32
 5   that issue is re-reviewed and relooked at by     13:16:35
 6   staff.                                           13:16:41
 7   BY MR. GALVANI:                                  13:16:41
 8      Q.   Well, that issue was re-reviewed by      13:16:44
 9   staff and Lumbermens continued nonetheless       13:16:45
10   to assert that there were aggregates; is         13:16:50
11   that correct?                                    13:16:53
12          MR. ZELLE:  Objection.                    13:16:53
13          THE WITNESS:  There were never any        13:16:53
14   objections or issues taken by the                13:16:56
15   Archdiocese regarding aggregates.  Regarding    13:17:02
16   other conditions of the policy, yes.             13:17:02
17   BY MR. GALVANI:                                  13:17:02
18      Q.   In the year 2003 the Archdiocese         13:17:02
19   said wait a minute, we have the policies,        13:17:06
20   and we don't see any aggregates here,            13:17:06
21   correct?                                         13:17:10
22      A.   Yes.                                     13:17:10
23      Q.   Did Lumbermens change its position       13:17:11
24   at that time and say no, you are right,          13:17:14
```

                                                                462

| | | |
|---|---|---|
| 1 | there are no aggregates? | 13:17:15 |
| 2 | A.   I don't believe that Lumbermens | 13:17:16 |
| 3 | stated that. | 13:17:19 |
| 4 | Q.   You don't believe Lumbermens did | 13:17:20 |
| 5 | that? | 13:17:23 |
| 6 | A.   No. | 13:17:23 |
| 7 | Q.   So my question is:  Did Lumbermens | 13:17:23 |
| 8 | between 1995 and today do anything with | 13:17:24 |
| 9 | respect to payment of claims that it would | 13:17:30 |
| 10 | not have done had there been no applicable | 13:17:40 |
| 11 | aggregates? | 13:17:40 |
| 12 | A.   No, I don't believe so. | 13:17:40 |
| 13 |           (Said document was marked for | 13:17:40 |
| 14 |            identification as Deposition | 13:18:34 |
| 15 |            Exhibit No. 18.) | 13:18:34 |
| 16 | BY MR. GALVANI: | 13:18:34 |
| 17 | Q.   I show you what has been marked as | 13:18:34 |
| 18 | Exhibit 18 bearing Bates numbers LM 001441 | 13:18:35 |
| 19 | to 2.  It is a memorandum from Paul Meany to | 13:18:41 |
| 20 | you dated August 21, 1997.  Have you seen | 13:18:45 |
| 21 | this memorandum before? | 13:18:47 |
| 22 | A.   Yes. | 13:18:50 |
| 23 | Q.   When did you see it for the first | 13:18:50 |
| 24 | time? | 13:18:53 |