

# KEMPER.

**Copy To:**

**Date:** October 20, 1997

**To:** M. K. Reardon, Liability Claim, Long Grove, B-7

**From:** P. D. Meany, Liability Claim, Summit

**Prev. Comm:**

**Regarding: Archdiocese of Boston
Sexual Abuse Claims**

## COVERAGE

The Archbishop of Boston carried general liability coverage with us for a period of 1964 through 1983 under various policy numbers. The primary policies had occurrence limits of $300,000. There were two sets of policies. One covered the schools, hospitals and other non-parish ministries. The other covered the parishes. Both policies named the Arcdiocese as additional insureds.

The Archbishop of Boston, a Corporation Sole, also had a Commercial Cat policy from 1980 to 1983 with limits of $10 million per year. The insured is also claiming they had a Cat policy from 1975 to 1980 with $5 million limits for each policy year. They have been unable to provide a copy of this policy and we have not been able to locate the policy in our record center, however, they do have a receipt from the JSK Agency indicating payment for an excess policy.

All the claims presented are for sexual abuse. We have had the matter researched and have determined that our policy would respond for any claims made against the named insured for negligent hiring and supervision. We are not providing coverage for the perpetrators.

## FACTS

All of the claims presented against the insured are for sexual abuse and/or molestation. The insures has retained the firm of Dunn and Rogers to defend them in these claims. They have settled a number of these claims for $20,000 to $50,000 each. They are responsible for determining the validity of each claim. We have not been directly involved in any of the negotiations as we do not want the plaintiffs to know there is any insurance that may cover these claims.



LM 0010904

Page - 2 -

Recently we have learned of one priest, Father Goeghan who was a priest in the Boston Archdiocese who has been accused of sexually molesting young children from the mid-sixties to the early eighties. Father Goeghan is currently up on criminal charges.

## LIABILITY

Liability agaist the insured is not favorable, particularly with the claims against Father Geoghan. The Church records indicate that this priest had numerous complaints made against him over a period of several years. The Archdiocese placed him in a treatment center for a period of twelve months, but upon his release placed him back in parish ministry. Each time a complaint was made against Father Geoghan the Archdiocese relocated him to another ministry.

It appears that the knowledge the Church had about the behavior of its priest and the failure to appropriately act will be considered negligence. Back in the sixties and seventies, it was general practice to remove and relocate the offender. At the time pedophilia was a relatively unknown disease. The Catholic Church will most likely be found negligent in their treatment of the offenders and negligent in continuing to place them in situations where the behavior was allowed to continue.

In 1971 the Massachusetts legislature abolished the doctrine of charitable immunity, but established a limitation of a charity's liability in the amount of $20,000. Although this statute provides the insured with a viable defense, the insurance policies provide an "immunity" endorsement which states that we will not use these defenses without the consent of the insured. Based on prior settlements entered into by the insured in excess of $20,000, it is apparent they chose not to use this as a defense.

## DAMAGES

Although we have had several relatively minor claims from the insured, we are now faced with very serious claims being made against Father Geoghan. Two families make up the majority of the claims. Father Geoghan has admitted to sexually abusing the members of the Dussuord and Gilliss families. The Gilliss children were living with the Dussourd family when these acts took place. Although Father Geoghan has not admitted to molesting members of the Sacco family, there is strong evidence that this family was also a victim of Father Geoghan.

All claimants allege mental anguish, emotional and physical injuries. Mental anguish can fall within the definition of "bodily injury" if it is accompanied by physical injury which includes headaches, insomnia, loss of appetite, etc. The courts have also taken a more liberal view of

mental anguish falling within the definition of "bodily injury" in cases of sexual abuse where there was physical contact.

At the present time the demand from plaintiff's counsel who represents 13 of the claims against Father Geoghan is in excess of $6 million.

**Comments**

We currently have eighty five open claims. The total reserves for the entire coverage period is totals $4.1 million. We are exploring with the insured the possibility of a policy by back which would end the exposure. We are assuming that most of the claims covering our policy period have been filed, but we have no way of knowing that for sure. We are recommending that we place a minimum of $5 million to cover our exposure.

These claims are all venued in Boston. Boston is known to be a predominately Catholic city. We do not know what a jury might do in cases of this nature. We do know that a jury returned a verdict in Dallas, TX in the amount of $124 million against the Archdiocese of Dallas for similar conduct.

JWH:hcl

LM 0010906