UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Roman Catholic Archbishop of Boston, a Corporation Sole,<br><br>            Plaintiff,<br><br>   v.<br><br>Lumbermens Mutual Casualty Company,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 04-10461<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPPOSITION TO LUMBERMENS MUTUAL CASUALTY COMPANY'S MOTION FOR LEAVE TO OBTAIN FURTHER DISCOVERY PURSUANT TO FED. R. CIV. P. 56(f)**

The Roman Catholic Archbishop of Boston, a Corporation Sole (the "RCAB"), respectfully submits this Opposition to Lumbermens Mutual Casualty Company's ("LMC") Motion for Leave to Obtain Further Discovery Pursuant to Fed. R. Civ. P. 56(f). In support of its motion, LMC states (and the RCAB agrees) that it cannot present certain facts essential to justify its opposition to the RCAB's Motion for Partial Summary Judgment. If that contention alone sufficed to delay the resolution of a pending summary judgment motion, LMC, and every other litigant opposing a meritorious motion for summary judgment, would be able to use Rule 56(f) as a basis to postpone the day of reckoning. Rule 56(f), however, does not allow litigants to delay judicial resolution unnecessarily; to the contrary, the moving party must explain why it has not acted sooner and must demonstrate that extra time for discovery will bear fruit. *Resolution Trust Corp. v. North Bridge Associates, Inc.*, 22 F.3d 1198 (1st Cir. 1994) (emphasis added). Neither the rank speculation contained in LMC's Memorandum of Law in Support of its Motion for Leave to Obtain Further Discovery Pursuant to Fed. R. Civ. P. 56(f) ("LMC's Memorandum"),

nor the assertions contained in the Affidavit of Anthony R. Zelle (the "Zelle Affidavit") satisfies the prerequisites of the Rule.  LMC does not even purport to identify "specified facts", let alone show that they "probably exist" and would influence the outcome of the motion.  Accordingly, LMC's Motion should be denied in its entirety.

**ARGUMENT**

LMC seeks further discovery with respect to four issues: the existence of coverage from 1961-1964; the terms and conditions of policies issued prior to 1974; the fictitious "agreement" between the RCAB and LMC to apply non-existent aggregate limits to the claims at issue; and the Affidavit of Dennis R. Connolly (the "Connolly Affidavit"), which was submitted with the RCAB's Motion for Partial Summary Judgment.  LMC seeks to depose again one of the RCAB's Rule 30(b)(6) designees (although it did not request the recall until a week after the close of discovery), to depose Mr. Connolly (for unstated reasons), and to gain access to documents on the RCAB's privilege log (on the basis of a wholly specious argument that the RCAB has waived the privilege by placing the question of aggregates "at issue" by bringing this lawsuit).[1]

Although LMC identifies these issues, it fails to identify any facts it wishes to discover. It also makes no showing that any of these facts "probably exist."  Instead, contrary to the requirements of Rule 56(f), it relies on rank speculation.  "Use of this rule requires meeting several benchmarks … but also requires due diligence … in pursuing discovery before the summary judgment initiative surfaces …. Rule 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights."  *See Resolution Trust Corp. v. North Bridge Associates, Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994), *citing Paterson-Leitch Co. v. Massachusetts*

---

[1] LMC filed separate motions to strike the Connolly Affidavit, to reopen the 30(b)(6) deposition, and to compel production of the RCAB's privileged documents.  Those motions, which have been opposed by the RCAB, are essentially the same as this Rule 56(f) motion.  As a consequence, the arguments here are largely repetitive of those made elsewhere.

*Mun. Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir. 1988). A litigant who desires to invoke Rule 56(f) must make a sufficient proffer, which shows: "good cause for the failure to have discovered the facts sooner; it should set forth a plausible basis for believing specified facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *See id.* Neither the memorandum nor the affidavit submitted by LMC's counsel satisfies a single one of these criteria.

### I. UNDISPUTED FACTS ESTABLISH THAT LMC ISSUED PRIMARY POLICIES TO THE RCAB FROM 1961-1964

LMC contends that it is entitled to further discovery related to the existence of primary policies between 1961 and 1964. LMC, however, does not ever deny that it sold general liability insurance to the RCAB for the years 1961-1964; rather, it argues that the RCAB has failed to prove such coverage. Ironically, counsel for LMC now has produced a "line card" from LMC's files on September 22, 2004, which confirms that the primary policy incepting in 1964 was a renewal of a policy issued in 1961. (Attached as Exhibit A to the concurrent Motion of the RCAB to Supplement the Record) LMC, however, plunges onward and bases its request for further discovery upon its assertion that the RCAB's production of certain policy forms and invoices during the course of this litigation necessarily implies that the RCAB did not perform a reasonably diligent search, and, accordingly, cannot use secondary evidence to prove the existence of those policies. As explained in greater detail in the RCAB's Opposition to LMC's Motion to Compel Further Testimony from the RCAB's 30(b)(6) Designee ("Motion to Compel Further Testimony"), this argument is without merit.

In its Motion to Compel Further Testimony, LMC treats the diligence requirement as if it were an "element to be proved by [the party seeking to use secondary evidence] … rather than a

threshold evidentiary question." *Burt Rigid Box, Inc. v. Travelers Property Casualty Corp.*, 302 F.3d 83, 92 (2nd Cir. 2002). The requirement that an insured demonstrate that it made a diligent search is an evidentiary matter; it arises only when documents or testimony are offered into evidence. *See Sylvania Electric Products, Inc. v. Flanagan*, 352 F.2d 1005, 1008 (1st Cir. 1965). The fact that the RCAB undertook an additional search for documents since the outset of this litigation does not imply that the RCAB has not made a diligent search; to the contrary, it only demonstrates further the RCAB's diligence.

LMC's argument fails to satisfy any of the requirements of Rule 56(f). The RCAB made its initial disclosures – some 165,000 pages of documents – in July. Thereafter, it supplemented that production as additional documents were located. The bulk of the RCAB's supplemental production occurred on August 4, 2004, immediately after the deposition of Joseph F. McEnness, the first of two RCAB Rule 30(b)(6) designees (who testified about the existence and course of the search during his deposition). The documents thereafter were actually *used* during the deposition of the RCAB's other 30(b)(6) designee (contrary to ¶6 of the Zelle Affidavit), as well as in the depositions of Paul Fallon[2] and several witnesses for LMC. Counsel for LMC also questioned Wilson D. Rogers, III about the documents at his deposition. All of these witnesses were questioned about the RCAB's search for policies.

LMC did not request the recall of the RCAB's Rule 30(b)(6) designee until September 9, 2004, by letter received by the RCAB on Monday, September 12, 2004, one week after the close of discovery and over one month after the documents were first produced. LMC cannot demonstrate that it was diligent in pursuing this discovery prior to the RCAB's Motion for

---

[2] Contrary to the assertions contained in LMC's Opposition to the RCAB's Motion for Partial Summary Judgment, both Messrs. Fallon and Powers testified that they asked at least certain parishes and institutions for insurance materials when these claims first arose in the early 1990s. (Fallon dep. 47:18-20; Powers dep. 48:23-49:11, attached as Exhibit 1)

Partial Summary Judgment.  Moreover, LMC has not specified what evidence it expects to obtain – especially in light of the line card – from another deposition of Mr. McEnness, or that such evidence "probably exists".  Accordingly, LMC is not entitled to further discovery.

LMC also seeks access to the RCAB's privileged documents on the ground that the "RCAB has withheld documents and testimony which likely bears on the RCAB's search for policies."  As explained in the RCAB's Opposition to LMC's Motion to Compel Documents and Provide Testimony, filed September 22, 2004 ("LMC's Pending Motion to Compel"), LMC fundamentally misunderstands the doctrine of "at issue" waiver.[3]  A party does not waive the privilege simply by bringing a lawsuit to which the information is relevant.  *See Dedham-Westwood Water District v. National Union Fire Insurance Co.*, 2000 WL 33593142 (Mass.Super.).

## II.     UNDISPUTED FACTS ESTABLISH THAT THE POLICIES ISSUED TO THE RCAB BEFORE 1974 WERE STANDARD FORM ISO POLICIES

LMC also seeks further discovery on the terms and conditions of the primary policies issued to the RCAB by LMC prior to 1974.  It again seeks to recall the RCAB's first Rule 30(b)(6) witness, Mr. McEnness, to question him further on the RCAB's search for policies, and to gain access to the RCAB's privileged documents, on the premise that they contain materials relevant to the RCAB's search.  Rather, LMC seeks to leverage the testimony of Mary Kay Reardon, its Director of Corporate Claims, "that [policies issued prior to 1974] likely contained the Owner, Landlord and Tenant Liability form" ("OLT").  (Opposition ¶25).  Ms. Reardon, however, only testified that she "reviewed some records in preparation for this deposition, and there were indications that perhaps there was an OLT policy that was written …. " (Reardon

---

[3] In its Pending Motion to Compel, LMC argues that the RCAB put the question of "aggregates" at issue; LMC does not argue, even inferentially, that the RCAB has put the "search for policies" at issue.

dep. 94:4-11, attached as Exhibit 2).  The "indications" have not been elucidated by LMC. Moreover, counsel for the RCAB asked Ms. Reardon: "As you sit here today, you don't know whether they were OLT or CGL policies, is that right?"  Ms. Reardon answered "I do not know." (Reardon dep. 97:5-8, attached as Exhibit 3).

LMC's contention is not only contradicted by Ms. Reardon's testimony, but by numerous other pieces of evidence as well.  First, as acknowledged by LMC, the primary policies issued in 1974 reflect that they are renewals of the policies issued in 1971, covering the period from 1971-1974.  (Diederich Aff. Exs. 1, 2).  Second, when the RCAB first sought coverage for these claims, the form letter used by LMC to reject claims arising before September 23, 1974 cited language from a CGL policy – not an OLT policy – as the basis behind the disclaimer. (Attached as Exhibit 4).  Third, numerous other documents demonstrate that the coverage afforded to the RCAB was CGL coverage, (*See, e.g.*, Diederich Aff. Exs. 26, 30), including a binding memorandum and several endorsements for the period incepting September 23, 1971 that are clearly marked as providing comprehensive general liability coverage. (Diederich Aff. Ex. 27, 28 & 29).  Finally, although the RCAB would be entitled to a defense and indemnity for these claims regardless whether a CGL or OLT policy were in effect,[4] as LMC does not deny, LMC paid these claims for years under the terms of CGL policies.

The RCAB has presented undisputed evidence that the policies issued prior to 1974 were standard forms.  It does not, as LMC alleges, rely solely upon the Connolly Affidavit as support for that assertion.  LMC's own witnesses have testified that LMC used standard forms promulgated by ISO (or its predecessor) for primary policies issued in the 1960s and 1970s. (*See*

---

[4] Submitted herewith is the Affidavit of Kate Cimini, attaching an OLT policy form from 1966.  It is admissible under the ancient record doctrine.

Vega dep. 33:5-15; Reardon dep. 93:3-12; Bennett dep. 69:13-70:1, attached as Exhibit 5). Finally, when LMC first sought a coverage opinion from the law firm of Morrison, Mahoney & Miller ("Morrison"), Ms. Zinoman (LMC's division manager) sent Morrison several policy forms and partial policies issued to the RCAB. Included among those forms was a copy of a 1966 LMC policy form with a cover note stating that it would be the applicable policy if LMC conceded coverage from 1971. (Diederich Aff. Ex. 66). This form is identical in all substantive respects to the 1966 form promulgated by ISO. Ms. Zinoman also sent Morrison, Mahoney & Miller some policy forms which bear both the Kemper logo and the ISO copyright. (*See* Diederich Aff. Ex. 66).

LMC has known the issues presented for resolution even before this lawsuit was filed. It could have conducted whatever discovery or engaged whatever expert it saw fit relevant to Phase I. Instead, it chose to wait until after the close of discovery and to invoke dilatory tactics. LMC is not entitled to reopen the deposition of the RCAB's first 30(b)(6) designee, nor is it entitled to root through the RCAB's privileged documents in the hope of finding some as yet unspecified document reflecting something somehow favorable to LMC. LMC is precluded from obtaining further discovery by its lack of diligence, its abject failure to identify specific facts that "probably exist", and its failure to explain why those facts are "susceptible of collection". Accordingly, its motion should be denied.

### III. UNDISPUTED FACTS ESTABLISH THAT THERE WAS NO "AGREEMENT" BETWEEN THE RCAB AND LMC TO APPLY AGGREGATE LIMITS TO CLAIMS FOR NEGLIGENT SUPERVISION AND LMC IS NOT ENTITLED TO FURTHER DISCOVERY

LMC also argues that it is entitled to additional discovery related to a fictitious "agreement" between LMC and the RCAB to apply otherwise inapplicable aggregate limits to the claims at issue. The only source of this additional discovery mentioned by LMC is the RCAB's privilege log. As explained in the RCAB's Opposition to LMC's Motion to Compel

Production of Documents, and in its Opposition to LMC's Pending Motion to Compel, LMC is not entitled to the documents on the RCAB's privilege log, because they are all protected by one or more privileges or protection that have not been waived by the RCAB.  However, even if the documents were not protected, LMC's indefensible proposed approach is not sanctioned by Rule 56(f).

In its Motion for Partial Summary Judgment, the RCAB made specific assertions as to the falsity of LMC's representations about this purported "agreement".  LMC has not disputed those assertions in its Rule 56.1 statement, although it apparently relied on that "agreement" as the basis for its Answer and Counterclaim.  At his deposition, Patrick Maloney, Chicago counsel for LMC, repeatedly asserted that, based on his personal analysis of the record, there had been such an "agreement", although none of LMC's other witnesses who administered LMC's policies to the RCAB's claims had relied on any "agreement" as the basis for the application of aggregate limits to claims for negligent supervision.  Instead, they claim to have believed that the policies themselves contained applicable aggregates – the opposite of an agreement to supersede the policy language.  Despite the fact that LMC's Statement of Material Facts is conspicuously silent about the existence of such an "agreement", LMC now seeks further discovery pertaining to this fictitious "agreement".

A party does not waive the privilege simply by bringing a lawsuit.  LMC is not entitled to review the RCAB's privileged documents.  In any event, LMC cannot satisfy the requirements of Rule 56(f) in order to delay the proceedings by claiming to be looking for non-existent evidence to prove a fictitious agreement.  This motion is yet another example of LMC's dilatory conduct in this litigation.

### IV.  THE CONNOLLY AFFIDAVIT

In its memorandum, LMC asserts that it is entitled to depose Mr. Connolly, although it does not specify as to what. As explained in the RCAB's Opposition to LMC's Motion to Strike the Connolly Affidavit (LMC's "Motion to Strike"), although LMC asserts that he has no personal knowledge as to the forms used by LMC (apparently ignoring the fact that he is an expert witness), it does not contest that LMC in fact used those forms. If LMC truly wanted to challenge the opinions expressed by Mr. Connolly, it should show that it did not use such forms – or it could have presented its own expert. However, since several of its witnesses have testified that LMC did rely on forms promulgated by ISO (or its predecessor), and LMC has produced other material evidence demonstrating that its policy forms were standard ISO forms, it cannot dispute Mr. Connolly's conclusion.

LMC has failed utterly to satisfy the requirements of Rule 56(f). LMC has not indicated what it hopes to find in its examination of Mr. Connolly, nor does it allege that such facts "probably exist", or that they are susceptible of collection. It also fails to demonstrate how these "facts" will influence the outcome of the pending summary judgment motion. Since the evidence is irrefutable that LMC did, in fact, use standard forms promulgated by ISO (and its predecessor), it cannot make any of these showings. Accordingly, its request for leave to obtain further discovery should be denied.

### CONCLUSION

LMC's Motion is merely another in a series of attempts to delay the resolution of the RCAB's claims against LMC. It is wholly without merit. LMC's Motion should be denied in its entirety.

                      Respectfully submitted,

                      ROMAN CATHOLIC ARCHBISHOP OF
                      BOSTON, A CORPORATION SOLE
                      By its attorneys,

                      /s/ Paul B. Galvani
                      Paul B. Galvani (BBO No. 183800)
                      Thomas H. Hannigan, Jr. (BBO No. 220420)
                      Bryan R. Diederich (BBO No. 647632)
                      Kate Cimini (BBO No. 654336)
                      Ropes & Gray LLP
                      One International Place
                      Boston, Massachusetts 02110-2624
                      (617) 951-7000

Dated: October 13, 2004