UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE, Plaintiff, v. LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A.04-10461-DPW |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF MARY KAY REARDON**

Lumbermens Mutual Casualty Company ("LMC") hereby opposes the motion of the Roman Catholic Archbishop of Boston, A Corporation Sole ("RCAB"), to strike the affidavit of Mary Kay Reardon ("Reardon Affidavit") submitted in opposition to the RCAB's motion for partial summary judgment. The Reardon Affidavit clearly evidences Ms. Reardon's personal knowledge of the material factual averments contained therein, and such averments do not contradict prior testimony in her capacity as LMC's Rule 30(b)(6) designee.

**I.      The Reardon Affidavit Clearly Evidences Ms. Reardon's Personal Knowledge of Its Material Factual Averments**

The RCAB's contention that the Reardon Affidavit fails to evidence her personal knowledge of its material averments is unfounded. The RCAB, itself, has directed the Court to 30(b)(6) testimony by Ms. Reardon which expressly establishes her direct involvement in LMC's handling of clergy sexual abuse claims since 1997. (*See* RCAB's Motion to Strike at p. 5, citing Reardon Deposition at 36:24-363:4.) In fact, Ms. Reardon's deposition testimony establishes her oversight of the handling of such claims since *1996*. (See Reardon Deposition (Ex. A, hereto), 21:7-22:2; 190:5-7; 284:22-285:1.)

BOST1-841228-1

Moreover, the Reardon Affidavit, itself, sufficiently establishes her personal knowledge of its averments.  First, not only does it clearly establish the basis for her having knowledge as to the handling of clergy sexual abuse claims by indicating her capacity as LMC's Director of Claims, but it also establishes her *actual* personal knowledge of the claim handling through her express averment of "personal knowledge." (*See* Reardon Affidavit, ¶¶ 1-2.)  *Cf.*, *Cadle Co. v. Hayes*, 116 F.3d 957, 961 (1st Cir. 1997) ("Statements made upon information and belief, as opposed to personal knowledge, are not entitled to weight in the summary judgment balance.").

Second, the RCAB's argument in support of its claim that Ms. Reardon does not possess personal knowledge, is fundamentally flawed.  The RCAB contends that her averments should be stricken as they are based upon inadmissible hearsay.  (*See* RCAB's Motion to Strike at pp. 5-6.)  Specifically, the RCAB argues that because Ms. Reardon, in her supervisory capacity, necessarily received information about the handling of clergy sexual abuse claims through reporting from the claims personnel working under her—i.e., those who actually effected the day-to-day handling—her averments are inadmissible hearsay.  *Id*.  The flaw in this reasoning is that "a statement is not hearsay if it is not used to prove the truth of the matter asserted, but rather, is used to prove an operative fact that gives rise to legal consequences." *Bolen v. Paragon Plastics, Inc.*, 754 F.Supp. 221, 225 (D.Mass. 1990).

To the extent that Ms. Reardon's averments contain information relating to assertions emanating from claims-handling activities for which she was not a first-hand participant (e.g., advisements from the RCAB's General Counsel to LMC claims personnel regarding the need to limit access to personnel files of perpetrator priests), the information is <u>not</u> being offered as

further proof of the truth of any such assertion.[1]  Rather, such is included to demonstrate Ms. Reardon's personal understanding of the "facts" of LMC's claims handling - whether predicated upon accurate or inaccurate reporting by LMC's lower-level claims personnel - and thus the foundation for her own consideration and oversight of same.  *See*, *e.g.*, *Majahad v. Reich*, 915 F.Supp. 499, 502 n.3 (D.Mass (1996) ("[T]o the extent the affidavits rely on second-hand knowledge or opinions, they merely establish the reasons why these persons thought [what they thought] - reasons directly relevant to the case and fully admissible at trial.  As the [defendant] points out, the affiants' potential testimony at trial on these matters would not be hearsay under Fed. R. Evid. 801(c) because it would not be offered to prove the truth of the matter asserted.").  Thus, to the extent that Ms. Reardon's averments make reference to claims-handling activities for which she may not have had first-hand participation, no hearsay problem exists as the averments speak directly to the state of <u>her</u> personal knowledge.

      The RCAB's hearsay attack on the averments of Ms. Reardon Affidavit are not directed to those averments that are based on Ms. Reardon's involvement with the RCAB claims as the senior supervisor of these claims from 1996 forward.   Thus, the RCAB does not contest on hearsay grounds her statements of personal knowledge as to the decisions that were or would have been made in the course the claims handling.[2]  Rather, the RCAB contends that Ms. Reardon's statements that LMC would have initiated declaratory actions and insisted upon complete disclosure of the RCAB investigative records of alleged perpetrator priests, if the RCAB ever objected to the application of aggregate limits against indemnity payments for clergy

---

[1] The summary judgment record, exclusive of the Reardon Affidavit, readily confirms the disputed nature of these assertions.  *See, e.g.*, Statement of Material Facts in opposition to RCAB's Motion for Partial Summary Judgment at ¶¶ 28 and 46.

[2] Interestingly, the RCAB devotes more than two pages of its brief to arguing the merits of LMC's coverage defenses, as well as to whether the RCAB, in fact, limited LMC's access to the personnel files of perpetrator priests. As these arguments are wholly irrelevant to determining the sufficiency of the Reardon Affidavit, they should be ignored.

3

sexual abuse claims, require "omniscience." This argument ignores the undisputed fact that Ms. Reardon had the responsibility and authority to decide whether LMC would initiate a declaratory judgment action as well as the responsibility and authority to require complete adherence to the policies' terms and conditions applicable to the RCAB's cooperation in the investigation of the sexual abuse claims. Consequently, the RCAB's characterization of Ms. Reardon's statements in these regards, as "speculation or surmise," is unfounded.

**II.    Ms. Reardon's Affidavit Averments Do Not Contradict Prior Testimony.**

The RCAB attempts to misconstrue both the statements in the Reardon Affidavit and her deposition testimony in an effort to strike the affidavit on the ground that it contradicts her deposition testimony. It is well settled that "[a] subsequent affidavit that merely explains or amplifies upon opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 32 (1st Cir. 2002). Clearly, Ms. Reardon's deposition testimony that Lumbermens would have "reviewed" the situation, had the RCAB ever objected to the application of aggregate limits, is not contradicted by the averments in her affidavit that the review would have resulted in the filing of declaratory judgment actions and the insistence upon complete access to the RCAB's investigative records. Because the RCAB's counsel chose to leave the deposition record vague and did not ask what LMC would have done after reviewing the situation, Ms. Reardon's Affidavit is both necessary and appropriate to explain and amplify her prior testimony. *Id*.

Furthermore, the RCAB misconstrues the following exchange:

Q.    So my question is: Did Lumbermens do anything between 1995 and today with respect to payment of claims that it would not have done had there been no applicable aggregates?

A. No I don't believe so.

*See* RCAB's Motion to Strike at p. 8, citing Reardon Dep. At 462:7-12. The question does not ask what LMC would have done if the RCAB had not agreed to limit LMC's indemnity payments to $300,000 per year. From 1994 through 2003, both LMC and the RCAB believed that the policies limited coverage to $300,000 per year. The statement in the Reardon affidavit sets forth the action LMC would have undertaken if the RCAB had not agreed to limit coverage to $300,000 per year and had objected at anytime prior to 2003 to that established practice. Since the averments in Ms. Reardon's affidavit do not contradict "clear answers to unambiguous questions in an earlier deposition," they should not be stricken. *Gillen*, 283 F.3d at 32.

### Conclusion

For the foregoing reasons, the Court should deny the RCAB's motion to strike the Reardon Affidavit.

>
> LUMBERMENS MUTUAL
> CASUALTY COMPANY
>
> By its counsel,
>
> */s/ Anthony R. Zelle*
>
> _____
> John E. Tener, BBO No. 563791
> Anthony R. Zelle, BBO No. 548141
> Mary L. Cataudella, BBO No. 553350
> Brian P. McDonough, BBO No. 637999
> Nancy M. Cremins, BBO No. 658932
> ROBINSON & COLE LLP
> One Boston Place
> Boston, MA 02108
> (617) 557-5900

Dated: October 26, 2004

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 26, 2004, a copy of the foregoing was served electronically upon counsel for the plaintiff, Paul D. Galvani, Esq., Ropes & Gray LLP, One International Place, Boston, MA 02110l.

                                                  _____
                                                    Anthony R. Zelle