UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE,<br><br>Plaintiff,<br><br>v.<br><br>LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Defendant. | Civil Action No. 04-10461-DPW |

**MEMORANDUM IN SUPPORT OF THE RCAB'S SECOND MOTION TO SUPPLEMENT THE RECORD ON SUMMARY JUDGMENT**

The Roman Catholic Archbishop of Boson, a Corporation Sole (the "RCAB") submits this Memorandum in support of its motion to supplement the record on its Motion for Partial Summary Judgment pending before this Court. The RCAB moves the Court to permit the inclusion of two letters from Lumbermens Mutual Casualty Company's ("LMC") outside counsel which refute LMC's clam that there was some agreement between the RCAB and LMC to modify the terms of the insurance policies LMC sold to the RCAB. (*See, e.g.*, Lumbermens Mut. Cas. Co.'s Opp. to Pl.'s Mot. for Partial Summ. J. at 34.)

**Statement of Facts**

At a deposition in July 2004, counsel for LMC produced certain opinions from Morrison Mahoney & Miller ("Morrison") that touched on a number of subjects. As the Court ruled on October 28, this act constituted a waiver of privilege as to a number of subjects covered in those letters. The Court held that LMC is obligated to turn over all documents generated prior to August 2003 touching on the subjects discussed in the Morrison letters. Counsel for the RCAB

9582104_1

requested that LMC produce those documents no later than November 9 in order allow a sufficient opportunity to review the materials prior to the Court's hearing of the Summary Judgment Motion on Wednesday, November 17. (*See* Ex. A). Counsel for LMC resisted the RCAB's request, stating that the topics discussed in the Morrison letters were irrelevant to the present summary judgment proceedings. (*See* Ex. B.)

Despite this claim, LMC did produce certain documents to the RCAB on November 10, 2004. (*See* Ex. C.)[1] Among those documents were the two letters attached as Exhibits 1 & 2 to the RCAB's Second Motion to Supplement the Record. The letters are dated February 3, 2003 and February 11, 2003 and are addressed to Augie Vega, a claims handler at LMC. Written by Patrick Maloney, who was acting as LMC's outside counsel at the time, the letters are dated immediately after the RCAB confronted LMC with the fact that the policies did not, in fact, contain aggregate limits. (*See* Plt's Stmt. of Facts as to Which There is No Genuine Issue to Be Tried ¶¶ 92–94.)

In the February 3, 2003 letter, Mr. Maloney wrote that:

- "We suggest that Kemper and the RCAB meet and reduce to writing an agreement as to aggregate limits on all policies: primary and umbrella." (Ex. 1 to Mot. to Supp. at LM 0000416.)

- "Kemper's willingness to participate in the mediation in a meaningful way may be a major factor in *reaching a written agreement* on aggregate limits." (*Id.* (emphasis added).)

---

[1] Counsel for LMC has represented to counsel for the RCAB that the documents produced on November 10, 2004 consist of only internal LMC documents and do not include documents maintained by outside counsel. LMC has refused to commit to provide responsive documents held at the Tressler firm prior to the upcoming hearing date. (*See* Ex. B.) While the RCAB does not wish to forestall the Court's consideration of the summary judgment motion, it submits that it is entitled to the production of the remaining responsive documents forthwith.

- "If *agreement cannot be reached* on aggregate limits, then the RCAB will basically be taking the position that Kemper has unlimited coverage." (*Id.* (emphasis added).)

- "We strongly recommend that an effort be made *to reach a final and written agreement* with the RCAB regarding aggregate limits." (*Id.* at LM 0000417 (emphasis added).)

In the February 11, 2003 letter, dated immediately after a meeting in Boston with RCAB officials (*see* Plt's Stmt. of Facts as to Which There is No Genuine Issue to Be Tried ¶ 93), Mr. Maloney wrote that the "purpose of our meeting was to determine whether or not the RCAB *would agree* to enter into an agreement regarding the existence of aggregate limits in not only the primary policies but also to the excess policies." (Ex. 2 to Mot. to Supp. at LM 0004395 (emphasis added).) Mr. Maloney also explained that:

> The pure language in our primary policies and in the coverage part which we believe would apply for the excess policy provides that the stated aggregate limits apply only to products and completed operations coverage. *Consequently, there would be no aggregates for the negligence claims filed against the RCAB.* At our meeting with the RCAB, we tried to get beyond the pure language of the policies and to discuss the course of conduct of the parties over the last 10 years. Based upon that conduct, *it was our position that Kemper and the RCAB could enter into an agreement currently acknowledging that in fact all of the primary policies and the excess policies have aggregate limits.*

(*Id.* (emphasis added).) Mr. Maloney wrote further that "it was our suggestion that the parties were in a position to memorialize the existence of those aggregates *in a current agreement*." (*Id.* at LM 0004360 (emphasis added.).) Mr. Maloney also wrote that, "[w]e advised the Archdioceses, as I believe, that *absent an agreement*, the number of lawsuits and claims against the Archdiocese will increase dramatically." (*Id.* (emphasis added).) Finally, he wrote that, "[a]fter we advised the Archdiocese of our reasoning, they met among themselves and almost

immediately advised us that they disagree that they can enter into a *current agreement* with us regarding aggregate limits." (*Id.* (emphasis added).)

## Argument

Contrary to counsel for LMC's claims, these letters bear directly on the issues before this Court on the RCAB's Motion for Partial Summary Judgment. LMC has argued in its defense that there was some sort of agreement between the RCAB and LMC to treat all of the RCAB policies as if they were subject to aggregate limits despite what LMC's former counsel euphemistically called the "pure language" of the policies. As Mr. Maloney's contemporaneous statements reveal, as late as February 2003, LMC was attempting to reach an agreement with the RCAB to apply aggregate limits, a claim contrary to the suggestion that such an agreement—either implicit or explicit—had been reached already. Indeed, Mr. Maloney's contemporaneous account of the efforts to obtain the RCAB's agreement to impose aggregate limits in 2003 underscores the incredibility of LMC's general argument that the RCAB had reached agreement with LMC in the years prior to 2003 to impose aggregate limits on the policies. According to Mr. Maloney, the RCAB did not even know that it had purportedly reached this agreement with LMC:

> Q. It was a knowing change -- knowing that it was superseding the language of the policies?
>
> A. No. *I don't think that they knew that they were superseding. Nobody was trying to concentrate to that extent*. They knew what they were agreeing to.

(Maloney dep. 83:15–21 (emphasis added, attached hereto as Exhibit D).) Contrary to this illusory agreement of which no one was aware, Mr. Maloney's contemporaneous letters make clear that it was only after the RCAB had uncovered LMC's misstatements of the policy terms that LMC attempted to reach a deal on aggregate limits.

Because these letters had not been produced to the RCAB at the time of its initial filing for summary judgment, it was not able to include them in the summary judgment record. In light of their relevance to the issues at hand, the documents should be incorporated into the summary judgment record.

                                   Respectfully submitted,

                                   THE ROMAN CATHOLIC ARCHBISHOP
                                   OF BOSTON, A Corporation Sole

                                   By its attorneys,

                                   /s/Paul B. Galvani_____
                                   Paul B. Galvani (BBO # 183800)
                                   Thomas H. Hannigan, Jr. (BBO # 220420)
                                   Bryan R. Diederich (BBO # 647632)
                                   Kate Cimini (BBO # 654336)
                                   Ropes & Gray LLP
                                   One International Place
                                   Boston, MA 02110
                                   (617) 951-7000

Dated: November 12, 2004