UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE,<br><br>Plaintiff,<br><br>v.<br><br>LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-10461-DPW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THE RCAB'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE THE AFFIDAVIT OF DENNIS R. CONNOLLY**

Lumbermens Mutual Casualty Company ("LMC") first moved this Court to strike the Affidavit submitted by Dennis R. Connolly on the ground that it had not had an opportunity to conduct discovery regarding Mr. Connolly's opinion. (*See* Def.'s Mot. to Strike Aff. of Dennis R. Connolly at 2.) Having been given that opportunity, LMC has failed totally to proffer any reason to challenge Mr. Connolly's opinion, let alone exclude it altogether.

**I.    MR. CONNOLLY'S EXPERT AFFIDAVIT IS ADMISSIBLE.**

The entirety of LMC's renewed opposition to Mr. Connolly's affidavit consists in the obvious assertion that Mr. Connolly lacks personal knowledge of the missing policies that LMC actually issued to the RCAB. Of course, this position ignores wholly the fact that Mr. Connolly is testifying as an expert witness and, therefore, his opinion is admissible regardless of such actual knowledge. (*See* Affidavit of Dennis R. Connolly at ¶ 1; Connolly dep. 4:11–16.[1]) The Federal Rules of Evidence provide that a witness who possesses "scientific, technical, or other specialized knowledge [that] will assist the trier of fact . . . to determine a fact in issue, [and who

is] qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. . . ." FED. R. EVID. 702. The rule applies in the context of a summary judgment motion: "To the extent an affiant is a qualified expert, her testimony need not be based on personal knowledge." *Fraser & Wise, P.C. v. Primarily Primates, Inc.*, 966 F. Supp. 63, 69 (D. Mass. 1996); *see also Pardue v. Fromm*, 941 F. Supp. 776, 780–81 (S.D. Ind. 1995) ("In making his affidavit, Dr. Davis did what was required of an expert: he affirmed the truth of his statements, he stated his qualifications, he stated that he had reviewed certain materials to render an expert opinion, and he stated his opinion."); *1836 Callowhill Street v. Johnson Controls, Inc.*, 819 F. Supp. 460, 462 (E.D. Pa. 1993) ("An expert's affidavit, although not based on personal knowledge . . . is eligible for summary judgment consideration if the affiant would be qualified to give the expert opinion at trial.").

LMC bases its opposition to Mr. Connolly's testimony on three spare references to his deposition, all of which concern his "personal knowledge." What LMC pointedly ignores are Mr. Connolly's substantial qualifications—based on over 40 years of experience in the insurance industry—to opine as to the terms and conditions of the policies that LMC issued to the RCAB in the years prior to 1983. As Mr. Connolly explained, both at his deposition and in his Affidavit, he has worked in the insurance industry as an attorney, claims adjuster, broker and consultant since 1965. (*See* Affidavit of Dennis R. Connolly ¶ 3 (hereafter, the "Connolly Aff.").) In his work at Liberty Mutual Insurance Company in the early 1960s, Mr. Connolly developed an understanding of what Kemper, a major competitor to Liberty Mutual, in fact did in terms of its insurance policies. (*See* Connolly dep. 14:6–22; 103:13–104:16.) Mr. Connolly's opinion is that LMC wrote insurance for the RCAB from the period beginning 1961 on the basis

---

[1] Pertinent extracts from the Connolly deposition are attached hereto as Exhibit A.

of the standard industry form, promulgated in 19555, which is attached to his Affidavit as Exhibit A. (*See* Connolly dep. 46:2–23; Connolly Aff. ¶ 18.) Indeed, LMC would not have issued a policy to RCAB inconsistent with the standard form, because:

> there would be no rational reason to not use it. It would be as if some video company suddenly decided that they would have videos of a different size or light bulbs with a different screw pattern.

(Connolly dep. 40:2–7.) Moreover, LMC continues to ignore both the ineluctable fact that Ms. Zinoman identified the standard ISO form promulgated in 1966 as that which it would have used, as well as of the testimony that LMC used standard forms. (*See* Diederich Aff. Ex. 67; Pl's Stmt. of Material Facts as to Which There is no Genuine Issue to be Tried ¶¶ 38-41.)

As a member of various insurance trade groups in the 1960s and 1970s, LMC issued standard form policies to its insureds, including to the RCAB, as detailed in Mr. Connolly's Affidavit. (*See* Connolly Aff. ¶¶ 16, 18.) LMC had no reason to use a different form for the RCAB because "it wasn't a terribly difficult risk" and, therefore, would have a pretty much standard treatment as far as policy form would be concerned. . . ." (Connolly dep. 28:19–23.)

## II.   MR. CONNOLLY'S OPINION IS UNCHALLENGED.

Having now had the opportunity to depose Mr. Connolly, LMC offers no substantive response to his opinion, but rather reiterates its red herring that he lacks personal knowledge of the policies LMC sold to the RCAB. Having chosen to oppose Mr. Connolly's Affidavit solely

on the ground of its incorrect "personal knowledge" theory[2], LMC has failed utterly to controvert Mr. Connolly's opinions regarding the timing and substance of the insurance that LMC sold to the RCAB during the disputed periods. Consequently, there is no evidence on which a reasonable jury could reach any other conclusion than that the RCAB's insurance policies were written on standard form policies from 1961 to 1983.

---

[2] LMC's Supplemental Memorandum does refer back to the arguments raised in its initial Memorandum in support of the Motion to Strike Mr. Connolly's Affidavit. Much of that initial opposition was based on the fact that Mr. Connolly had not been deposed, an issue which has now been resolved. The remainder merely rehashes the argument that Mr. Connolly has not seen the RCAB's policies and makes the argument that because Mr. Connolly's Affidavit uses the subjunctive mood in one paragraph, his credibility is best left for trial. At his deposition, counsel for LMC questioned Mr. Connolly regarding his use of the subjunctive mood as follows:

> Q. Are you prepared to say more than "it would have been"? For example, are you prepared to say that it was issued on a standard 1955 form?
>
> A. I think it was. I think for the reasons that I have just explained, it is just improbable that, to use the analogy of the screw-in light bulb, that some company would suddenly change the direction in which the screws went. These were standardized policies, so that you and I and insurance -- and policyholders would not have to read more than once, where each and every time, or for each and every insurer competing for business, you wouldn't have to go through the policy.

(Connolly dep. 46:2–17.) Thus, the frivolous objection that Mr. Connolly's affidavit is in the subjunctive mood was resolved in any event in his deposition.

## CONCLUSION

For the foregoing reasons, LMC's motion to strike the Affidavit of Dennis R. Connolly should be denied.

                            Respectfully submitted,

                            THE ROMAN CATHOLIC ARCHBISHOP
                            OF BOSTON, A Corporation Sole

                            By its attorneys,

                            /s/Paul B. Galvani_____
                            Paul B. Galvani (BBO # 183800)
                            Thomas H. Hannigan, Jr. (BBO # 220420)
                            Bryan R. Diederich (BBO # 647632)
                            Kate Cimini (BBO # 654336)
                            Ropes & Gray LLP
                            One International Place
                            Boston, MA 02110
Dated:  November 16, 2004        (617) 951-7000