UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE,<br><br>Plaintiff,<br><br>v.<br><br>LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-10461-DPW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### THE RCAB'S OPPOSITION TO LMC'S MOTION FOR LEAVE TO SUPPLEMENT THE RECORD WITH A SUPPLEMENTAL AFFIDAVIT FROM MARY KAY REARDON

The Roman Catholic Archbishop of Boston, a Corporation Sole (the "RCAB") hereby opposes Lumbermens Mutual Casualty Company's ("LMC") motion to supplement the record with an additional Affidavit of Mary Kay Reardon. The proposed supplement is procedurally unjustifiable and, in any event, does nothing to cure the flaws in Ms. Reardon's first Affidavit.

The Court on October 28 allowed possible future filings, but limited them to new matter arising out of new discovery. (*See* 10/28/04 Hr'g Tr. 51:20–52:1.) Ms. Reardon's Supplemental Affidavit is not that. Rather, it is a feeble attempt to plug a hole in response to the RCAB's Motion to Strike her first affidavit. LMC has already filed its opposition to that motion, without this second affidavit.

Ms. Reardon's initial Affidavit is rife with hearsay. She undertook to describe the content of conversations in which she did not participate, including one between Wilson Rogers, Jr. and Christine Zinoman in 1995 or 1996. (*See* Reardon Aff. ¶ 6; Mem. in Support of Mot. to Strike Aff. of Mary Kay Reardon at 5–6.) Not only did Ms. Reardon not personally participate

in that conversation, she did not even supervise Ms. Zinoman at the time. As she testified at her deposition:

> Q. And Christine Zinoman, did she ever report to you on these claims?
>
> A. Not directly.
>
> Q. To whom did she report?
>
> A. She would have reported to Paul Meany at the division level.
>
> Q. And during what time period?
>
> A. '94. Well, I take that back. There was someone prior to that. Maybe '95 is when she started reporting to Paul.

(Reardon dep. 25:8–17.)[1] In fact, much of Ms. Reardon's knowledge of what LMC learned or did not learn regarding the RCAB comes from secondhand accounts from other LMC personnel. (Reardon dep. 364:19–365:22.) Merely averring, as she does in her Supplemental Affidavit, that she was personally responsible for the RCAB claims at the time does nothing to rectify the inadmissibility of her initial hearsay Affidavit.

Ms. Reardon's claim that LMC would have behaved differently if only the RCAB had asserted sooner that there were no applicable aggregate limits in its insurance policies is flatly contradicted by her deposition testimony. When asked that very question, Ms. Reardon stated that LMC would have "reviewed" the situation. She did not say, as she now speculates after the fact, that LMC would have filed a declaratory judgment action against the RCAB or otherwise modified its handling of the RCAB matter. (*Compare* Reardon dep. 460:8–461:6 *with* Reardon Aff. ¶¶ 5 & 6.) That Ms. Reardon now states that she "had full authority to direct LMC's handling of these claims, including the initiation of declaratory actions whenever,

---

[1] All pertinent excerpts from Ms. Reardon's deposition are attached hereto as Exhibit A.

in my professional judgment, the facts and circumstances known to me warranted doing so," (*see* Supp. Aff. of Mary Kay Reardon ¶4) only renders more improbable the suggestion that she merely forgot to mention at her deposition all of the things that she would have done as the person responsible for the RCAB's claims.  Indeed, she did not direct such a filing even in 2003 when LMC was caught.  Both Reardon Affidavits are contrived attempts to create an issue where none exists.  Indeed, they constitute a bald attempt to transfer blame from LMC for its misconduct to the RCAB for not having ferreted it out sooner.

Even had Ms. Reardon directed the filing of a declaratory judgment action against the RCAB, such an action would have been brought in bad faith and was doomed to failure.  LMC's own outside attorneys had rejected as untenable the purported grounds of that potential action as early as 1995.  (*See* Mem. in Support of Mot. to Strike Aff. of Mary Kay Reardon at 3.)

Finally, Ms. Reardon is unqualified to testify about the purported "agreement" between the RCAB and LMC in any event.  In her deposition, she reflects just how bereft of support LMC's claim of an agreement really is.  She concedes that the written documents currently in LMC's possession reflect that there is no applicable aggregate limit in the RCAB's insurance policies:

> Q.  But based on the documents that you do have, is it your position that those documents contain annual aggregates applicable to these claims?
>
> A.  Based on the documents that I have currently in the possession of Lumbermens would indicate that the aggregates do not apply.

(Reardon dep. 318:24–319:7.)  She echoed that conclusion in her July 23, 2003 memorandum, writing that LMC "really ha[s] no argument on the aggregate . . . ." (Ex. B.)  She now argues, rather, that an agreement to impose aggregates existed on the basis of the conduct of LMC employees she now says she was supervising.  (*See* Reardon dep. 237:7–238:14.)  Yet she never

even checked the work of those underlings. (*Id.* 237:21–22.) Importantly, those who *were* responsible have no knowledge of any such agreement with regard to the application of aggregates. (*See* Bennett dep. 63:9–64:1 (Ex. C); *see also* Zinoman dep. 54:12–55:10 (Ex. D).) It was only when confronted with the fact that the RCAB's policies do not include an aggregate limit that LMC's outside attorney conjured up the notion that there was an agreement between the RCAB and LMC to treat the policies as if they had applicable aggregate limits. (*See* Ex. E at LM0000416; Ex. F at LM0004359.)[2] Like LMC's entire "agreement" argument, Ms. Reardon's Affidavit and its proffered Supplement are contradictory and at odds with her own testimony.

## CONCLUSION

For the foregoing reasons and the reasons detailed in the RCAB's Memorandum in Support of its Motion to Strike the Affidavit of Mary Kay Reardon, the Court should reject LMC's bid to resurrect the Reardon Affidavit, strike the original Affidavit, and deny the motion for leave to file a supplement thereto.

---

[2] Of course, the recent production of Mr. Maloney's opinion reflects that he knew there was never any such agreement. (*See* Mem. in Support of the RCAB's Second Mot. to Supplement the Record on Summ. J.)

-5-

Respectfully submitted,

THE ROMAN CATHOLIC ARCHBISHOP
OF BOSTON, A Corporation Sole

By its attorneys,


/s/Paul B. Galvani_____
Paul B. Galvani (BBO # 183800)
Thomas H. Hannigan, Jr. (BBO # 220420)
Bryan R. Diederich (BBO # 647632)
Kate Cimini (BBO # 654336)
Ropes & Gray LLP
One International Place
Boston, MA 02110
(617) 951-7000


Dated: November 16, 2004