1

```
 1            UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
     THE ROMAN CATHOLIC ARCHBISHOP
 3   OF BOSTON, A Corporation Sole,

 4            Plaintiff,

 5       -vs-                    C.A. No. 04-10461-DPW

 6   LUMBERMENS MUTUAL CASUALTY
     COMPANY,
 7                               ORIGINAL
              Defendant.
 8   _____

 9            VOLUME I - Pages 1 - 314

10

11            The deposition of MARY KAY REARDON,

12   called by the Plaintiff for examination,

13   pursuant to notice and pursuant to the

14   Federal Rules of Civil Procedure for the

15   United States District Courts pertaining to

16   the taking of depositions, taken before

17   DIANE L. STODULSKI, Certified Shorthand

18   Reporter, Registered Professional Reporter,

19   and Notary Public within and for the County

20   of Cook and State of Illinois at 200 South

21   Wacker Drive, Suite 3000, Chicago, Illinois,

22   commencing at the hour of 9:00 o'clock AM on

23   the 26th day of July, A.D. 2004.

24
```

CAROL RABER & ASSOCIATES
(312) 446-6926

EXHIBIT A

19

| | | |
|---|---|---|
| 1 | A.  Correct. | 09:21:12 |
| 2 | Q.  And do you recall at what level it | 09:21:12 |
| 3 | had to be brought to the attention of the | 09:21:18 |
| 4 | home office? | 09:21:18 |
| 5 | A.  You know, dollarwise I don't | 09:21:18 |
| 6 | remember because it varied from over the | 09:21:22 |
| 7 | years.  The authority levels would increase | 09:21:26 |
| 8 | to the branch claim operations. | 09:21:27 |
| 9 | Q.  When you started out at the BCO, | 09:21:29 |
| 10 | Grand Rapids, Michigan, were you at the | 09:21:39 |
| 11 | bottom tier level? | 09:21:40 |
| 12 | A.  Not quite the bottom.  I was an | 09:21:42 |
| 13 | adjuster and not a supervisor. | 09:21:44 |
| 14 | Q.  How many branches were there, do | 09:21:46 |
| 15 | you know, at Lumbermens at the time? | 09:21:49 |
| 16 | A.  Oh, wow.  My guess is 40 or more | 09:21:50 |
| 17 | claim offices. | 09:21:57 |
| 18 | Q.  And do you know whether there was a | 09:21:59 |
| 19 | claim office that would have been | 09:22:03 |
| 20 | responsible for policies written for the | 09:22:03 |
| 21 | Archdiocese of Boston? | 09:22:11 |
| 22 | A.  There wouldn't have been | 09:22:11 |
| 23 | necessarily one claim office responsible for | 09:22:12 |
| 24 | handling claims under those policies.  It | 09:22:18 |

20

```
 1  could have been more than one office.  We         09:22:18
 2  had a number of offices in Massachusetts.  I      09:22:21
 3  couldn't name them but generally the losses       09:22:24
 4  would be handled as to where the loss             09:22:30
 5  occurred, as to where the insured was             09:22:31
 6  principally located.                              09:22:35
 7       Q.   Did there come a time, Ms. Reardon,     09:22:35
 8  where you personally had any involvement          09:22:37
 9  with respect to claims against the                09:22:39
10  Archidiocese of Boston -- when I say the          09:22:42
11  Archdiocese for Boston, that's the shorthand      09:22:44
12  of the Archbishop of Boston?                      09:22:47
13       A.   When I was personally involved in       09:22:52
14  the claims?                                       09:22:55
15       Q.   Yes.                                    09:22:55
16       A.   Yes, there was.                         09:22:55
17       Q.   When did that happen?                   09:22:58
18       A.   I believe in early '97.                 09:22:58
19       Q.   So prior to '97 it is your              09:23:03
20  recollection you had no contact with respect     09:23:05
21  to claims handling related to the                 09:23:07
22  Archdiocese of Boston?                            09:23:13
23       A.   No, I knew that there were claims       09:23:13
24  involving the Archdiocese of Boston, but I        09:23:14
```

21

| | | |
|---|---|---|
| 1 | was not personally involved in any of those | 09:23:19 |
| 2 | claims up until late '96 or early '97. | 09:23:20 |
| 3 | Q.   Do you recall if you were copied on | 09:23:24 |
| 4 | any documents before that? | 09:23:28 |
| 5 | A.   I don't recall being copied on | 09:23:28 |
| 6 | anything. | 09:23:31 |
| 7 | Q.   Where were you located at the time | 09:23:31 |
| 8 | that it first came to your attention? | 09:23:31 |
| 9 | A.   I was located in the home office. | 09:23:35 |
| 10 | Q.   So by that point you had left Grand | 09:23:40 |
| 11 | Rapids, and I will ask you where you went in | 09:23:43 |
| 12 | between, but you were in Long Grove? | 09:23:46 |
| 13 | A.   Yes. | 09:23:47 |
| 14 | Q.   And why did it come to your | 09:23:47 |
| 15 | attention at that point? | 09:23:48 |
| 16 | A.   Because Kemper was undergoing some | 09:23:50 |
| 17 | restructuring at the time, and we were | 09:23:54 |
| 18 | closing the division offices, but we were | 09:24:03 |
| 19 | still maintaining a structure in the home | 09:24:03 |
| 20 | office, in other words, authority levels, et | 09:24:03 |
| 21 | cetera, were still coming to the home | 09:24:07 |
| 22 | office.  We were just going to skip the | 09:24:07 |
| 23 | division level and eliminate that, and the | 09:24:09 |
| 24 | branch claim offices would go directly to | 09:24:10 |

25

| | | |
|---|---|---|
| 1 | claims at a division level; is that right? | 09:27:04 |
| 2 | A.   No, there were a couple of other | 09:27:06 |
| 3 | people who had been division people who were | 09:27:09 |
| 4 | then made home office people. | 09:27:12 |
| 5 | Q.   And that's when he started to | 09:27:15 |
| 6 | report to you on these claims? | 09:27:15 |
| 7 | A.   Yes. | 09:27:17 |
| 8 | Q.   And Christine Zinoman, did she ever | 09:27:19 |
| 9 | report to you on these claims? | 09:27:22 |
| 10 | A.   Not directly. | 09:27:25 |
| 11 | Q.   To whom did she report? | 09:27:25 |
| 12 | A.   She would have reported to Paul | 09:27:29 |
| 13 | Meany at the division level. | 09:27:32 |
| 14 | Q.   And during what time period? | 09:27:36 |
| 15 | A.   '94.  Well, I take that back. | 09:27:42 |
| 16 | There was someone prior to that.  Maybe '95 | 09:27:45 |
| 17 | is when she started reporting to Paul. | 09:27:49 |
| 18 | Q.   Do you know who she succeeded with | 09:27:54 |
| 19 | respect to these claims? | 09:27:59 |
| 20 | A.   Branch office personnel out of | 09:28:01 |
| 21 | Massachusetts. | 09:28:05 |
| 22 | Q.   Do you recall who that was? | 09:28:05 |
| 23 | A.   I believe there was a gentleman -- | 09:28:06 |
| 24 | a Ben Ewing who was handling the claims. | 09:28:10 |

237

| | | |
|---|---|---|
| 1 | Lumbermens told them that there were | 14:51:13 |
| 2 | aggregates in the policies? | 14:51:14 |
| 3 | A.   Yes.  We said that there were | 14:51:17 |
| 4 | aggregates in the policy.  We honestly felt | 14:51:18 |
| 5 | and believed there was a determination made | 14:51:22 |
| 6 | that the aggregates applied to these claims. | 14:51:23 |
| 7 | Q.   Who told the Archdiocese that there | 14:51:26 |
| 8 | were aggregates applicable to these claims? | 14:51:28 |
| 9 | A.   I know that Chris Zinoman was one. | 14:51:31 |
| 10 | Q.   Who else did? | 14:51:35 |
| 11 | A.   I don't know if anybody may have. | 14:51:35 |
| 12 | Let's put it this way.  Yes, I had told them | 14:51:36 |
| 13 | that there were aggregates applicable when | 14:51:40 |
| 14 | we discussed other issues when they came to | 14:51:41 |
| 15 | Long Grove for meetings.  That was my | 14:51:45 |
| 16 | personal involvement in the case. | 14:51:48 |
| 17 | Q.   And what language were you relying | 14:51:52 |
| 18 | on when you told them that there were | 14:51:52 |
| 19 | aggregates that were applicable? | 14:51:54 |
| 20 | A.   I will be very honest with you.  I | 14:51:57 |
| 21 | did not revisit the coverage issues on | 14:51:59 |
| 22 | aggregates. | 14:52:02 |
| 23 | Q.   I assume you are being very honest | 14:52:04 |
| 24 | in everything you say, Ms. Reardon.  I'm not | 14:52:05 |

238

1  sure what that preface adds.  My question                14:52:08
2  was:  What language in the policies were you             14:52:12
3  relying on when you yourself personally told             14:52:13
4  somebody from the Archdiocese that there                 14:52:18
5  were, in fact, aggregates applicable to                  14:52:18
6  these claims?                                            14:52:23
7       A.   I was not relying on policy                    14:52:23
8  language at the time.                                    14:52:24
9       Q.   What were you relying on when you              14:52:24
10 said that?                                               14:52:28
11      A.   I was relying on the information               14:52:28
12 that was supplied by several other parties               14:52:29
13 prior to my involvement indicating that                  14:52:32
14 there were aggregates.                                   14:52:35
15      Q.   And that information was supplied              14:52:36
16 by whom?                                                 14:52:38
17      A.   That information was contained in              14:52:40
18 our claim files and our investigation.                   14:52:41
19      Q.   What document or documents                     14:52:45
20 specifically are you relying on for the                  14:52:47
21 proposition that there was agreement reached             14:52:49
22 with respect to the applicability of                     14:52:55
23 aggregates in the policies?                              14:52:58
24           MR. ZELLE:  Objection.                         14:53:00

315

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
    THE ROMAN CATHOLIC ARCHBISHOP
 3  OF BOSTON, A Corporation Sole,

 4        Plaintiff,

 5        -vs-                    C.A. No. 04-10461-DPW

 6  LUMBERMENS MUTUAL CASUALTY
    COMPANY,                      ORIGINAL
 7
          Defendant.
 8  _____

 9        VOLUME II - Pages 315 - 591

10        The deposition of MARY KAY REARDON,

11  called by the Plaintiff for examination,

12  pursuant to notice and pursuant to the

13  Federal Rules of Civil Procedure for the

14  United States District Courts pertaining to

15  the taking of depositions, taken before

16  DIANE L. STODULSKI, Certified Shorthand

17  Reporter, Registered Professional Reporter,

18  and Notary Public within and for the County

19  of Cook and State of Illinois at 200 South

20  Wacker Drive, Suite 3000, Chicago, Illinois,

21  commencing at the hour of 9:00 o'clock AM on

22  the 27th day of July, A.D. 2004.

23

24
```

CAROL RABER & ASSOCIATES
(312)446-6926

318

```
 1   WHEREUPON:
 2          MARY KAY REARDON,
 3   called as a witness herein, having been
 4   first duly sworn, was examined upon oral
 5   interrogatories and testified as follows:
 6          D I R E C T   E X A M I N A T I O N                09:00:09
 7   BY MR. GALVANI: (Cont'd).                                 09:00:09
 8      Q.   Good morning, Ms. Reardon.                        09:03:13
 9      A.   Good morning.                                     09:03:23
10      Q.   You understand you are still under                09:03:23
11   oath?                                                     09:03:23
12      A.   Yes.                                              09:03:23
13      Q.   I want to be clear on one point                   09:03:23
14   here.  You are testifying on behalf of the                09:03:25
15   corporation as a 30(b)(6) witness.  Is it                 09:03:27
16   the position of Lumbermens that the policies              09:03:32
17   that it sold to the Archdiocese of Boston,                09:03:38
18   in fact, contain annual aggregates                        09:03:43
19   applicable to sexual molestation claims?                  09:03:50
20      A.   My answer is that there is                        09:03:52
21   confusion because the policies that we have               09:03:55
22   we do not know if they are complete and                   09:03:57
23   accurate policies that were sold.                         09:04:02
24      Q.   But based on the documents that you               09:04:03
```

319

| | | |
|---|---|---|
| 1 | do have, is it your position that those | 09:04:06 |
| 2 | documents contain annual aggregates | 09:04:12 |
| 3 | applicable to these claims? | 09:04:12 |
| 4 | A.   Based on the documents that I have | 09:04:15 |
| 5 | currently in the possession of Lumbermens | 09:04:16 |
| 6 | would indicate that the aggregates do not | 09:04:20 |
| 7 | apply. | 09:04:21 |
| 8 | Q.   Now, is it Lumbermens' position | 09:04:26 |
| 9 | that notwithstanding what you have just said | 09:04:29 |
| 10 | that there was an agreement that was reached | 09:04:31 |
| 11 | between Lumbermens and the Archdiocese of | 09:04:34 |
| 12 | Boston that annual aggregates would apply? | 09:04:40 |
| 13 | A.   Yes. | 09:04:45 |
| 14 | Q.   And is it Lumbermens' position | 09:04:49 |
| 15 | that -- withdrawn. | 09:04:49 |
| 16 | When do you say that agreement | 09:04:52 |
| 17 | was reached -- | 09:04:52 |
| 18 | A.   I believe the agreement was reached | 09:04:56 |
| 19 | early on, probably in '95 or '96, when we | 09:04:56 |
| 20 | made a coverage determination to accept | 09:05:03 |
| 21 | coverage under a reservation of rights and | 09:05:04 |
| 22 | to participate in the defense of the claims. | 09:05:08 |
| 23 | Q.   And specifically when, as best as | 09:05:11 |
| 24 | you understand it, was that agreement | 09:05:17 |

<mark>320</mark>

```
 1   reached?                                                    09:05:20
 2      A.   With the first acknowledgment                       09:05:21
 3   letter to the Archdiocese advising of what                  09:05:23
 4   we had uncovered in the policy, and I                       09:05:27
 5   believe that might be 1995.                                  09:05:33
 6      Q.   It came -- there was an agreement                   09:05:34
 7   reached in a letter that Lumbermens sent to                 09:05:37
 8   the Archdiocese?                                             09:05:38
 9      A.   That's when Lumbermens advised the                  09:05:41
10   Archdiocese of the existence of aggregates                  09:05:44
11   for the policies.  The Archdiocese took                     09:05:47
12   exception with some of our coverage                          09:05:50
13   opinions, but they never took exception and                 09:05:51
14   never disagreed with the position regarding                 09:05:54
15   aggregates.                                                  09:05:57
16      Q.   So you are saying that Lumbermens                   09:05:57
17   sent letters to the Archdiocese in which it                 09:05:59
18   stated there were aggregates and the                         09:06:03
19   Archdiocese didn't protest?                                  09:06:06
20      A.   Correct.                                             09:06:08
21      Q.   And that's the agreement?                            09:06:08
22      A.   Yes, and there --                                    09:06:13
23           MR. ZELLE:  Objection.                               09:06:13
24           THE WITNESS:  I would like to                        09:06:13
```

<mark>Case 1:04-cv-10461-DPW   Document 82-2   Filed 11/16/2004   Page 11 of 15</mark>

```
                                                              364
 1    Mr. Meany at any time during those four              09:47:11
 2    years whether there were aggregates                  09:47:17
 3    applicable to these claims?                          09:47:17
 4         A.   Yes, because he would relay to me          09:47:18
 5    when the aggregates were exhausted.                  09:47:22
 6         Q.   And you had discussions with him           09:47:25
 7    about that?                                          09:47:29
 8         A.   I basically looked at the documents        09:47:29
 9    that he prepared and confirmed that he was           09:47:30
10    tracking the aggregates.                             09:47:33
11         Q.   Did you ever at that time or during        09:47:37
12    that four-year period ever say to him, gee,          09:47:38
13    where did these aggregates come from?                09:47:43
14         A.   No.                                        09:47:47
15         Q.   And he never volunteered it to you?        09:47:47
16         A.   No.  The coverage position had been        09:47:49
17    taken many years earlier by prior staff              09:47:52
18    members and it was not reviewed again.               09:47:56
19         Q.   Did you know that Mr. Meany went to        09:48:06
20    Boston from time to time to meet with                09:48:06
21    lawyers from Dunn & Rogers?                          09:48:10
22         A.   Yes.                                       09:48:12
23         Q.   And did you receive reports of             09:48:13
24    those meetings?                                      09:48:15
```

365

| | | |
|---|---|---|
| 1 | A. I would receive verbal reports. I | 09:48:16 |
| 2 | don't know that there were any written | 09:48:22 |
| 3 | reports, but there may have been. | 09:48:22 |
| 4 | Q. Verbal includes both oral and | 09:48:25 |
| 5 | written? | 09:48:28 |
| 6 | A. I'm sorry, oral. | 09:48:29 |
| 7 | Q. Verbal means words? | 09:48:34 |
| 8 | A. That's fine. | 09:48:34 |
| 9 | Q. You received oral reports not | 09:48:34 |
| 10 | written reports? | 09:48:36 |
| 11 | A. I received oral reports for | 09:48:37 |
| 12 | certain, and I may have received written | 09:48:40 |
| 13 | reports. I can't recall specifically. | 09:48:41 |
| 14 | Q. How often did Mr. Meany go to | 09:48:44 |
| 15 | Boston; do you know? | 09:48:45 |
| 16 | A. I don't know. | 09:48:47 |
| 17 | Q. Do you know why he went to Boston? | 09:48:53 |
| 18 | A. He went to Boston to discuss the | 09:48:53 |
| 19 | cases, the pending cases. | 09:48:53 |
| 20 | Q. To ask Dunn & Rogers for | 09:48:55 |
| 21 | information? | 09:49:03 |
| 22 | A. Yes. | 09:49:03 |
| 23 | Q. Did he authorize settlement of any | 09:49:03 |
| 24 | of the cases? | 09:49:03 |

460

1   Q.   Would it have not handled the    13:15:33
2   claims were there no aggregates?    13:15:36
3          MR. ZELLE:  Objection.    13:15:37
4          THE WITNESS:  Lumbermens still    13:15:39
5   would have participated under a reservation    13:15:40
6   of rights on the claims.    13:15:44
7   BY MR. GALVANI:    13:15:44
8   Q.   So what did Lumbermens do to its    13:15:44
9   own detriment that it would not otherwise    13:15:47
10  have done if the Archdiocese had pushed back    13:15:51
11  and said no, we disagree there are no    13:15:54
12  aggregates?    13:15:57
13         MR. ZELLE:  Objection.    13:15:59
14         THE WITNESS:  If the Archdiocese    13:16:00
15  had raised the issue of aggregates, it would    13:16:02
16  have been reviewed.    13:16:06
17  BY MR. GALVANI:    13:16:06
18  Q.   If the Archdiocese had said we    13:16:06
19  disagree, we don't have the policies, we    13:16:09
20  don't know whether there are aggregates or    13:16:10
21  not; if they had affirmatively said that or    13:16:14
22  had gone further and said there are no    13:16:15
23  aggregates, what would Lumbermens have done    13:16:18
24  differently from what it did do?    13:16:19

```
                                                        461
 1              MR. ZELLE:  Objection, that's a              13:16:22
 2   compound question.                                      13:16:22
 3              THE WITNESS:  Any time an insured            13:16:29
 4   takes an exception with a coverage position,            13:16:32
 5   that issue is re-reviewed and relooked at by            13:16:35
 6   staff.                                                  13:16:41
 7   BY MR. GALVANI:                                         13:16:41
 8        Q.   Well, that issue was re-reviewed by           13:16:44
 9   staff and Lumbermens continued nonetheless              13:16:45
10   to assert that there were aggregates; is                13:16:50
11   that correct?                                           13:16:53
12              MR. ZELLE:  Objection.                       13:16:53
13              THE WITNESS:  There were never any           13:16:53
14   objections or issues taken by the                       13:16:56
15   Archdiocese regarding aggregates.  Regarding            13:17:02
16   other conditions of the policy, yes.                    13:17:02
17   BY MR. GALVANI:                                         13:17:02
18        Q.   In the year 2003 the Archdiocese              13:17:02
19   said wait a minute, we have the policies,               13:17:06
20   and we don't see any aggregates here,                   13:17:06
21   correct?                                                13:17:10
22        A.   Yes.                                          13:17:10
23        Q.   Did Lumbermens change its position            13:17:11
24   at that time and say no, you are right,                 13:17:14
```