Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, Illinois 60606-6308
312/627-4000
Fax 312/627-1717
www.tsmp.com

Patrick E. Maloney
(312) 627-4004
pmaloney@mail.tsmp.com

February 11, 2003

Mr. Augie Vega
Executive Liability Specialist
Kemper Insurance Companies
1 Kemper Drive
Long Grove, IL 60049-0001

    Re:    RCAB Lawsuits
           Your File No: 180 LU 014775
           Our File No: 33-2311-3

Dear Mr. Vega:

      This will summarize briefly our meeting in Boston with the attorneys for the RCAB. The purpose of our meeting was to determine whether or not the RCAB would agree to enter into an agreement regarding the existence of aggregate limits in not only the primary policies but also the excess policies. Mr. Dave Smith, Chancellor at the RCAB, was present along with two attorneys from the Rogers law firm and one attorney from the Goodwin and Proctor firm.

      Prior to our meeting, I had a telephone conversation with Wil Rogers, Jr. advising him why I thought it would be worthwhile to meet and avoid stirring this pot. The pure language in our primary policies and in the coverage part which we believe would apply for the excess policy provides that the stated aggregate limits apply only to products and completed operations coverage. Consequently, there would be no aggregates for the negligence claims filed against the RCAB. At our meeting with the RCAB, we tried to get beyond the pure language of the policies and to discuss the course of conduct of the parties over the last 10 years. Based upon that conduct, it was our position that Kemper and the RCAB could enter into an agreement currently acknowledging that in fact all of the primary policies and the excess policies have aggregate limits. The course of conduct shows that there was a dispute as to the years of coverage Kemper actually wrote, and that it was always the understanding of Kemper and the RCAB that the primary policies specifically had aggregate limits. In fact, Kemper never found any policies prior to 1974 yet we agreed to provide coverage based upon some miscellaneous materials that we had

LINCOLNSHIRE, ILLINOIS     WHEATON, ILLINOIS
COSTA MESA, CALIFORNIA     LOS ANGELES, CALIFORNIA     NEWARK, NEW JERSEY



LM 0004359

Mr. Augie Vega
Page 2
February 11, 2003

indicating that there was coverage. To be consistent, Kemper agreed to provide coverage from 1964 through 1983 on all primary policies on the basis of having aggregate limits of $300,000. Kemper over the years has taken a settlement posture throughout based upon the concept that the primary policies had aggregate limits. The Rogers law firm has been handling these cases for the Archdiocese from the inception and they have on many occasions met with Kemper and worked out agreements for the payment of these claims. For all of these reasons, it was our suggestion that the parties were in a position to memorialize the existence of those aggregates in a current agreement.

We also pointed out the consequences that would result absent such an agreement. We advised the Archdiocese, as I believe, that absent an agreement, the number of lawsuits and claims against the Archdiocese will increase dramatically. In addition, I expect that the settlement demands in these cases will go up and that the possibility of settling them will become more difficult. We advised the Archdiocese that the currently scheduled mediation would likely be very unsuccessful absent an agreement because Kemper would require much more information on each of these cases before it could be in a position to settle them. This is especially so because the number of cases that the Archdiocese will now be seeking coverage for has increased dramatically. We advised the Archdiocese that we would likely be drawn into declaratory judgment litigation which we have been trying to avoid throughout this process. This litigation would increase the publicity in these matters which, of course, so far has only resulted in many more claims and lawsuits being filed.

After we advised the Archdiocese of our reasoning, they met among themselves and almost immediately advised us that they disagree that they can enter into a current agreement with us regarding aggregate limits. Rather, it is their intention to take the position that the primary policies do not have aggregate limits and that our excess policies do not have aggregate limits. It is the plan of Wil Rogers, Jr. at this time to send a letter to the mediator handling these cases with a copy to the plaintiff's lawyers who are participating in the mediation advising them that his previous statement that all of the Kemper primary policies have been exhausted was a mistake on his part and that he would be advising the parties that there is a dispute on that issue between the Archdiocese and Kemper. We advised him that to make such a statement at this time would virtually blow all of these matters open and would be over our objection. Wil Rogers, Jr. stated that he would not release any such letter or statement without showing it to us initially.

LM 0004360

Mr. Augie Vega
Page 3
February 11, 2003

    We will know by Friday exactly what the Archdiocese is going to do, and we will then have to decide on our future course of handling these matters, whether we file a declaratory judgment on issues, and whether we participate in mediation.

                                            Very truly yours,

                                            Patrick E. Maloney

PEM/kjs/293790

LM 0004361