UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 04-10461-DPW |
| v. | ) ) ) | |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

**THE PARTIES' JOINT STATEMENT REGARDING PHASE II SCHEDULING**

Pursuant to the Court's order of November 17, 2004, the parties set forth below their respective positions with regard to the scheduling of Phase II discovery.

**I.    THE RCAB'S PROPOSED SCHEDULE**

Following the hearing before this Court on November 17, counsel for the RCAB conferred with counsel for LMC in an effort to agree upon a schedule for further proceedings in this action. In light of the comments of the Court at the conclusion of the hearing, I proposed on behalf of the RCAB that there be no further "phasing" of the action. Instead, I suggested to LMC that we should simply proceed now to conclude all discovery and pre-trial proceedings in order to have the case trial-ready on April 1, 2005. I proposed, therefore, that all discovery on all remaining issues -- including documentary discovery, depositions, and experts -- be completed by March 1. That would allow the parties more than 4 months to conduct such discovery, which is ample in light of all of the prior history between the two parties. For example, LMC has had access to all of the discovery ever conducted in the underlying cases, including scores of depositions including of members of the Church hierarchy. In addition, the RCAB has produced

all relevant documents from its files, and LMC has long had all claimant files. I proposed to LMC, that under the circumstances, the RCAB would be limited to ten depositions and LMC would be limited to fifteen depositions, exclusive of experts.

The approach proposed by the RCAB not only would allow sufficient time for all necessary discovery, but also would minimize controversy concerning whether topics are appropriate for inquiring in a given phase. I also commented that both sides would have all their rights to seek protective orders, or, indeed, to seek additional discovery come March if it were truly necessary. Finally, I noted that a Rule 30(b)(6) deposition might have to count as more than one deposition, depending on the circumstances. Mr. Zelle rejected the proposal and adhered to the proposal he submitted to the Court last week.

There are few issues remaining for resolution -- especially in light of LMC's unclean hands. While LMC asserts that it is free to pursue what it denominates "coverage defenses" and to pursue its counterclaim, those claims turn primarily on the baseless allegation that the bodily injuries were "expected or intended from the standpoint of the insured" and, therefore, uninsured. As we have articulated in prior submissions to the Court, however, Massachusetts law is clear -- in order to assert the defense of "expected or intended", the insurer must establish a specific intent to injure. *See Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 410–11 (1990); *Quincy Mut. Fire Ins. Co.*, 393 Mass. 81, 84–86 (1984) ("Our cases have concluded that an injury is nonaccidental only where the result was actually, not constructively, intended, i.e., more than recklessness.").

LMC pleads that its counterclaim its contention of "expected or intended" is predicated upon the report of the Attorney General issued on July 23, 2003. (*See* Ans., Countercl. & Jury Claim at 19 & n.1.). That report, however, focused primarily on the period commencing 1984

and, therefore, has no bearing on the period of insurance coverage of LMC, which ended in 1983. *See* Office of the Attorney Gen. of the Commonwealth of Mass., *The Sexual Abuse of Children in the Roman Catholic Archdiocese of Boston*, app. 1 at 1-2. Moreover, the Attorney General specifically concluded as follows, at page 22 of the Report.

> The investigation did not produce evidence that senior Archdiocese managers encouraged priests to abuse children, intended that priests would abuse children, intended to obstruct justice by helping abusive priests avoid arrest or punishment, interfered with the testimony or role of a witness in a judicial proceeding, or entered into unlawful agreements. Nor is there evidence that the Archdiocese benefited by priests sexually abusing children.

Accordingly, the Attorney General found precisely the opposite of what LMC would have to establish, were it free to pursue its putative defense and counterclaim.

Similarly, although LMC also claims that there was an absence of negligence on the part of the RCAB's supervisors -- even as it argues that those supervisors engaged in willful misconduct -- the issue is not whether there was negligent supervision in fact. Rather, the question is whether such negligence was pleaded by the claimants and whether the RCAB faced potential liability. *See Luria Bros. & Co., Inc. v. Alliance Assurance Co., Ltd.*, 780 F.2d 1082, 1091–92 (2d Cir. 1986). If so, the claims were covered and LMC should have indemnified the RCAB. RCAB repeats its position, therefore, that, as set forth in such cases as *Luria* and *Colonial Gas*, the ultimate issue is simply the reasonableness of the settlement at a macro level -- not the facts and circumstances of each of the individual cases. *See id.*; *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 823 F. Supp. 975, 980–92 (D. Mass. 1993).

In any event, the Court need not decide these questions now. Rather, it need only determine that fifteen depositions (exclusive of experts) between now and March 1, subject to the protections outlined above, are sufficient under the circumstances for LMC to develop

whatever evidence it wishes to pursue. In addition, LMC can file interrogatories and document requests, so long as all discovery is completed by March 1.

I also proposed that experts be designated by February 1 and that motions, including summary judgment motions, could be made at any time. This approach would permit a trial on April 1, 2005, or as soon thereafter as the Court could accommodate the parties. An expedited schedule is essential in light of LMC's financial circumstances.

Mr. Zelle agreed only with the proposition that discovery should proceed now on all issues and further agreed with the suggestion that the RCAB be limited to ten depositions. Otherwise, he rejected the proposal outright and said he adheres to the proposed schedule that he submitted to the Court on November 17, 2004. His schedule, which contemplates unlimited depositions and over a year to complete discovery, is simply further evidence of LMC's obfuscation and dilatory tactics.[1] The Court, respectfully, should adopt the proposal of the RCAB:

1. All discovery to be completed by March 1, 2005;

2. In addition to expert discovery, the plaintiff may take no more than ten and the defendant no more than fifteen depositions; any deposition pursuant to Fed. R. Civ. P. 30(b)(6) may count as more than one as circumstances require;

3. Experts shall be designated by February 1, 2005;

4. Motions may be filed at any time;

5. Case to be ready for trial by April 1, 2005.

---

[1] Documents produced in this action demonstrate that LMC's goal with respect to this litigation is to delay in order to exploit its faltering financial condition and to obtain additional leverage over the RCAB, forcing it to settle for a small fraction of the amount to which it is entitled. (*See, e.g.*, Memorandum from Mary Kay Reardon to Dennis Brand, July 23, 2003 ("Since the RCAB is now aware of the Kemper financial downgrade, now may be the time to force the coverage issue. A DJ would not be decided quickly and I believe the RCAB now has concerns about Kemper's financial stability.") (Diederich Aff. Ex. 55).)

**II.    LMC'S PROPOSED SCHEDULE**

*If* this action involved the RCAB's claim for insurance coverage for *only one* claim of sexual abuse that took place during the effective dates of the LMC policies, LMC would request, and would likely be allowed, to serve interrogatories, document requests, and requests for admission; would be allowed take the depositions of the priest accused of the abuse and the RCAB supervisory personnel who had knowledge of the incident.  In addition, LMC would request, and would likely be allowed, to take the deposition of the RCAB personnel with knowledge of the Chancery's, parish's and/or institution's policies and practices for preventing sexual abuse by its priests and handling sexual abuse claims.  LMC respectfully suggests that in that hypothetical case involving a claim for insurance coverage for **one** sexual abuse claim, the court would permit LMC six months to complete discovery and would allow no fewer than five depositions.

The present insurance coverage action involves more than 550 underlying sexual abuse claims that have been settled and more that 140 claims that are pending.   They involve more than 35 accused priests and an undetermined number of supervisory personnel at the parish, institution and chancery level.  Without the responses to written discovery, LMC cannot discern either the identity or the number of supervisory personnel upon whose conduct the underlying negligent supervision claims are predicated.  Accordingly, LMC submits that an expedited, yet reasonable, discovery schedule entails three months to complete written discovery; an additional six months to complete up to 75 depositions of fact witnesses; and an additional two months for expert discovery.  LMC's proposed schedule of dates for completing discovery events, which was previously filed with this court, is also attached to this submission.

Set for immediately below are, without limitation, some of the significant issues on which written and deposition discovery is required to establish the facts necessary to determine

whether the RCAB is entitled to insurance coverage for the underlying sexual abuse claims and whether LMC is entitled to recover the sums it previously paid to the RCAB under a reservation of rights.

### A.  Statute of Limitations.

Whether any or all of the RCAB's claims for coverage under the policies issued by LMC are barred by applicable statutes of limitations.

### B.  Expected or Intended Harm.

Whether the RCAB's particular policies, practices, and procedures concerning the handling of clergy sexual abuse allegations from 1961 to 1983 rendered the abuse of children intended or expected harm during that timeframe, including (i) the RCAB's policies, practices, and procedures regarding the chain of communication for notice of an occurrence, both internally (e.g., chain of communication from the parish or institution level to decision-maker level at the Chancery) and externally (e.g., communications from the RCAB to law enforcement authorities, insurers, and laity (i.e., parents of children potentially at risk due to continuing exposure to alleged perpetrator); (ii) its policies, practices, and procedures regarding the response to a notice of occurrence, including investigations conducted to confirm/deny validity of allegations; (iii) its policies, practices, and procedures regarding handling of alleged perpetrators during pendency of investigations; (iv) its policies, practices, and procedures regarding handling of alleged perpetrators upon determination of credible allegations; and (v) whether Vatican directives applicable to the handling clergy sexual abuse allegations from 1961 to 1983 made the abuse of children an inevitability in the RCAB during that timeframe, rather than a fortuitous (i.e., insurable) event.

### C.     The RCAB's Alleged Negligence.

Whether the RCAB's <u>actual</u> handling of particular claims rendered the resulting harm expected or intended (e.g., handling of multiple-claim abusers), or conversely, whether the <u>actual</u> circumstances of particular claims precludes a finding of negligent supervision by the RCAB (e.g., instances of a single claim against an alleged perpetrator priest), including (i) the actual chain of communication for each occurrence compensated by the "Global Settlement," both internally (e.g., actual chain of communication from the parish level to the decision-maker level at the Chancery for each occurrence), and externally notices (e.g., actual communications from the RCAB and its personnel to law enforcement authorities, insurers, and laity (e.g., parents of children potentially at risk due to continuing exposure to alleged perpetrator)); (ii) the RCAB's actual response to notice of each occurrence compensated by the Global Settlement, including the actual investigations conducted to confirm/deny validity of occurrence allegations, the actual handling of alleged perpetrators during pendency of investigations, and the actual handling of alleged perpetrators upon determination of credible allegations against them.

### D.     RCAB's Breach of its Duties under the Policies.

Whether the RCAB's concealment of its awareness of the sexual abuse that took place from 1962 through 1983 constitutes a breach of its duty to provide timely notice of an occurrence or claim and whether its concealment of material facts relating to the sexual abuse by its priests, after providing notice to LMC, violates the duty to cooperate in the event of a loss.

### E.     The Extent to which the LMC Policies are Implicated by Claims that were Included in the Global Settlement.

The extent of available coverage for the any portion of the "Global Settlement" entered into by the RCAB depends on, *inter alia*, (i) a determination of the trigger for each occurrence for which the RCAB is seeking coverage under LMC policies and the amount of recovery sought

for each; (ii) the reasonableness of the RCAB's waiver of any available liability defenses (e.g., statute of limitations, charitable immunity, lack of evidence of any negligent supervision); (iii) the RCAB's efforts to allocate damages sustained by each claimant as between the abuse, itself (for which the LMC policies provide no coverage), and the alleged negligent supervision of the abuser.

In light of the foregoing, LMC proposes the following discovery schedule:

| Date | Deadline |
|---|---|
| January 28, 2005 | Deadline for Rule 26(a)(1)(A) and 26(a)(1)(B) Initial Disclosures (to the extent that the RCAB has limited its previous disclosure to Phase I issues) |
| February 11, 2005 | Deadline for Plaintiff's and Defendant's Service of Interrogatories and Request for Production of Documents |
| March 25, 2005 | Deadline for Plaintiff's and Defendant's Responses to Interrogatories and Request for Production of Documents |
| September 1, 2005 | Deadline for Completion of Plaintiff's and Defendant's Depositions of Fact Witnesses (with the RCAB entitled to take a total of ten (10) depositions (as requested by it), and LMC entitled to take fifty (50) depositions. |
| September 15, 2005 | Deadline for Plaintiff's Designation of Expert Witnesses, Rule 26(a)(2) Expert Reports and List of Documents Relied Upon |
| October 30, 2005 | Deadline for Defendant's Designation of Expert Witnesses, Rule 26(a)(2) Expert Reports and List of Documents Relied Upon |
| December 15, 2005 | Deadline for Completion of Plaintiff's and Defendant's Experts' Depositions |

                                        Respectfully submitted,

| LUMBERMENS MUTUAL CASUALTY COMPANY | THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A Corporation Sole |
|---|---|
| By its attorneys, | By its attorneys, |
| /s/Anthony R. Zelle_____ | /s/Paul B. Galvani_____ |
| John E. Tener (BBO # 563791) | Paul B. Galvani (BBO # 183800) |
| Mary L. Cataudella (BBO # 553350) | Thomas H. Hannigan, Jr. (BBO # 220420) |
| Anthony R. Zelle (BBO # 548141) | Bryan R. Diederich (BBO # 647632) |
| Brian P. McDonough (BBO # 637999) | Kate Cimini (BBO # 654336) |
| Robinson & Cole LLP | Ropes & Gray LLP |
| One Boston Place | One International Place |
| Boston, MA 02108 | Boston, MA 02110 |
| (617) 557-5900 | (617) 951-7000 |

Dated:  November 22, 2004