UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE ROMAN CATHOLIC ARCHBISHOP
OF BOSTON, A CORPORATION SOLE,

          Plaintiff,

v.

LUMBERMENS MUTUAL CASUALTY
COMPANY,

          Defendant.

Civil Action No. 04-10461-DPW

**MEMORANDUM OF LAW IN SUPPORT OF
LUMBERMENS MUTUAL CASUALTY COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Lumbermens Mutual Casualty Company ("LMC") is entitled to partial summary judgment dismissing all claims for insurance coverage asserted by the Roman Catholic Archbishop of Boston, a Corporation Sole ("RCAB") under any of the primary liability policies because they are barred by the applicable statute of limitations. A justiciable controversy arose on June 1, 1995, when LMC informed the RCAB that it was limiting coverage based on the policies' aggregate limits because the policies' aggregate limits for bodily injury claims do not apply to claims arising out of sexual abuse. This coverage position articulated by LMC was clearly at odds with the policies' terms and conditions.

**STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, the material facts of record are set forth below:

1)  LMC issued primary liability insurance policies to the RCAB, which covered certain RCAB institutions such as schools and hospitals, for the period from March 31, 1962 to March 31, 1983 (the "institution policies").

2)  In addition to the institution policies, for the period from September 23, 1971 to March 31, 1983, LMC issued separate primary liability insurance covering certain RCAB parishes (the "parish policies").

3)  Beginning in 1992 or 1993, the RCAB submitted claims to LMC seeking insurance coverage under the parish and institution policies for bodily injury claims resulting from sexual abuse committed by priests. **Deposition of Mary Kay Reardon as Rule 30(b)(6) designee of LMC, 45:11-45:17; Deposition of Wilson D. Rogers, Jr., as Rule 30(b)(6) Designee of the RCAB, 33:7-19**; **Deposition of Joseph F. McEnness, Jr., 94:12-21.  The Reardon, Rogers, Jr. and McEnness Deposition excerpts are attached to the Affidavit of Nancy M. Cremins (hereafter "Cremins Aff.") as Exhibits 1-3, respectively.**

4)  In a letter dated February 25, 1994, from Thomas H. Thompson at LMC to the RCAB's General Counsel, Wilson D. Rogers, Jr., written in response to a January 25, 1994 letter from Mr. Rogers relating to LMC's handling of the RCAB's claim for insurance coverage for the sexual abuse claims, Mr. Thompson wrote: "I direct your attention to the 'Insuring Agreement' section under Coverage Part 7 of the Combination Automobile General Liability Policy . . . ." **Cremins Aff., Exhibit 4.**

5)  During the course of this litigation, the RCAB has produced from its own records nineteen (19) separate copies of Coverage Part 7.  On August 4, 2004, the RCAB

produced twelve (12) copies, and on September 3, 2004, the RCAB produced seven (7) more copies.  **Cremins Aff., Exhibit 5-6.**

6) In connection with the applicability of aggregate limits to bodily injury claims, Coverage Part 7 states:

> III. Limits of Liability
>
> . . .
>
> Coverage Part A [Bodily Injury Liability] – The total liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence."
>
> Subject to the above provisions regarding "each occurrence", the total liability of the company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the declarations as "aggregate."

**See Cremins Aff., Ex. 5-6.**

7) During a meeting on June 1, 1995, LMC informed the RCAB that, subject to a full reservation of its rights, LMC would reimburse the RCAB for the settlement payments and defense costs incurred in connection with the sexual abuse claims against the RCAB (as opposed to the claims asserted against the priests themselves) arising out of the conduct of its priests.  In addition, during this meeting, which was attended by Benjamin Frank Bennett, a Division Claim Manager for LMC, Christine M. Zinoman, a Division Claim Supervisor, Wilson D. Rogers, Jr., the RCAB's General Counsel, and Paul Fallon, the RCAB's Insurance Claim Manager, LMC informed the RCAB that all indemnity payments would be applied against the

policies' aggregate limits. **Cremins Aff., Ex. 7 (Complaint), Ex. 2 (Rogers Deposition), 57:15-58:13.**

8) This Court has determined that the LMC policies' bodily injury aggregate limits do not apply to bodily injury claims resulting from sexual abuse. **Cremins Aff., Ex. 8 (11/19/04 Hearing Transcript), 67:17-69:1.**

9) Beginning in April, 1996, when LMC issued its first payment to reimburse the RCAB for sums paid to settle the sexual abuse claims, each time LMC made a payment on a claim, it indicated the policy period whose aggregate limit was depleted by the payment on its covering correspondence to the RCAB or on the check itself. **Cremins Aff., Ex. 9**.

10) By letter dated April 22, 1996, the RCAB's General Counsel, Wilson D. Rogers, Jr., wrote to Christine Zinoman, LMC's Division Liability Claim Examiner, and in reference to the aggregate balances on the institution and parish policies, noted that there were outstanding issues to resolve. Specifically, he wrote:

> Dear Ms. Zinoman:
>
> I am in receipt of the aggregate balances on the two policies which Kemper[1] has established to date. There are a number of issues which still remain outstanding in this regard, not the least of which is a resolution of this matter.
>
> First, as we have previously discussed, the Roman Catholic Archbishop of Boston, a Corporation Sole ("RCAB") had two policies in place with Kemper. The first policy covered schools, hospitals and other buildings (hereinafter described as "Policy A"). The second policy covered parishes within the Archdiocese of Boston (hereinafter referred to as "Policy B"). It is my understanding that Kemper has now acknowledged coverage on Policy A from March 31, 1964 through March 31, 1983 and coverage on Policy B from September 23, 1971 through March 31, 1983. As you know, it is the position of my client that these policies were in existence

---

[1] Kemper is the trade name for the group of insurance companies that includes LMC.

> well before the dates which you have suggested they were initiated. In addition, it is my client's position that excess insurance was placed with Kemper.
>
> Secondly, I am in receipt of what you have determined to be each year's aggregate balances for Policy A. We are still waiting for your determination of the aggregate balances for the period September 23, 1980 through March 31, 1983 for Policy B. I would appreciate an update in this regard.
>
> We also would request that you please identify the claims Kemper made payments on in order that we may compare this information with our records.
>
> As you know, I am concerned about the progress which we have made to date in attempting to resolve this matter especially in light of the fact that there remains a difference of opinion as to the years coverage was in place.

**Cremins Aff., Ex. 10**.

11) By letter dated May 5, 1997, the RCAB's General Counsel, Wilson D. Rogers, Jr., wrote to Paul D. Meany, LMC's Executive Liability Specialist, and again referred to the dispute between the RCAB and LMC concerning aggregate limits. In pertinent part, he wrote:

> As was discussed at our meeting, I would appreciate any information you may have with respect to the basis for the starting aggregates which Kemper Insurance provided to us when it recently became involved in indemnifying my client for the series of sexual misconduct claims which have been brought over the course of the last ten years. As we discussed, a number of these claims *sic* [should be "policies"] did not have a beginning aggregate of $300,000 as Kemper Insurance represented that it had previously made payments. Any information you would be able to provide us, which may prove helpful in identifying the claims which were previously paid out of these aggregates would be greatly appreciated.

**Cremins Aff., Ex. 11**.

12) On June 23, 1997, Mr. Rogers wrote to Mr. Meany and expressly objected to LMC's refusal to issue a check to reimburse the RCAB for the settlement of a sexual abuse

5

claim based on the exhaustion of the applicable policy's aggregate limit. Specifically, Mr. Rogers wrote:

> Dear Mr. Meany:
>
> I am writing as a follow-up to our most recent discussion regarding the settlement of the pending sexual misconduct claims against the Roman Catholic Archdiocese of Boston, a Corporation Sole. You advised me that you had not issued a check to reimburse the Roman Catholic Archdiocese of Boston, a Corporation Sole for the claim of Joseph DuLong, whereas there was insufficient aggregate remaining from the applicable policy years . . . .

**Cremins Aff., Ex. 12**.

13) The RCAB was aware in 1996 and 1997 that it was approaching its aggregate caps for certain policy periods as noted in correspondence sent by LMC. **Cremins Aff., Ex. 13.**

14) By letter dated June 16, 1997, LMC informed the RCAB that payments made under the institution policy in effect from March 31, 1964 through March 31, 1965 policy had breached its applied aggregate cap. **Cremins Aff., Ex. 14.**

15) On or about December 12, 1997, LMC's claim manager, Paul Meany, tendered to the RCAB the remaining balance of all of the parish and institution policies issued prior September 31, 1977, $1,901,370, to apply to the settlement of pending claims. **Cremins Aff., Ex. 15.**

16) By letter dated January 14, 1998, LMC confirmed the tender of the remaining balance of all the parish and institution policies issued prior September 31, 1977 to apply to the settlement of pending claims and informed the RCAB that the tendered amount, $1,901,370, exhausted the aggregate limits of all of the policies issued prior September 31, 1977. **Cremins Aff., Ex. 16 (Bates No. LM 0001163 is a legible copy of Bates No. RCA7001835).**

17) Attached to the January 14, 1998 letter are two charts. One chart, titled "Archdiocese of Boston Open Claims As of 1/13/98" lists 38 sexual abuse claims that are pending against the RCAB. **Cremins Aff., Ex. 16.** The letter from Mr. Meany to Mr. Rogers "confirm[s] your [Rogers'] correspondence advising me [Meany] of settlement on those cases on the open claims list with a 300K in the Status column." There are twelve such claims which the RCAB settled for a total of $3,600,000.

18) The second chart attached to the January 14, 1998 letter lists the aggregate balances of all of the primary policies issued by LMC to the RCAB and shows that the aggregate limits of six primary policies, four of which were issued prior to September 23, 1977 when there were excess policies in place, had already been exhausted. **Cremins Aff., Ex. 16.**

19) The RCAB filed its Complaint against LMC on March 4, 2004. **Cremins Aff., Ex. 7.**

## ARGUMENT

**THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT ON THE PURELY LEGAL QUESTION OF THE RCAB'S FAILURE TO COMPLY WITH THE APPLICABLE STATUTES OF LIMITATIONS.**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment "is not precluded by just any factual quibble: the evidence manifesting the dispute must be 'substantial,' going beyond the allegations and defenses in the pleadings." *Dykes v. DePuy, Inc.*, 140 F.3d 31, 36 (1st Cir. 1998) (citation omitted). To defeat a properly supported motion for summary judgment, the non-moving party must establish the existence of a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the non-moving party." *Goldman v. First Nat'l Bank*, 985 F.2d 1113, 1116 (1st Cir. 1993), citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-moving party must go beyond the pleadings and, by affidavit, answers to interrogatories, and depositions or admissions on file, identify facts of record to demonstrate the existence of a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). Since the statute of limitations is the basis for summary judgment on the RCAB's claims for coverage under the primary policies, once LMC presents evidence which establishes that the RCAB's cause of action for breach of contract accrued more than six years before the RCAB filed its complaint, the RCAB bears the burden of presenting facts which would take its claims outside the statute. *Fay v. Aetna Life Ins. & Annuity Co.*, 307 F. Supp. 2d 284, 290 (D. Mass. 2004), citing *McGuiness v. Cotter*, 412 Mass. 617, 620 (1992).

Under Massachusetts law, the statute of limitations for the breach of contract claims is six years. M.G.L. c. 260, §2. Insofar the RCAB's complaint also alleges claims sounding in tort and based on G.L. c. 93A, the applicable statutes of limitations are three years and four years respectively. G.L. c. 260, §5A and G.L. c. 260, §2A. As a procedural device, the RCAB's claim for a declaratory judgment is subject to the same time limitations as the underlying claim and will be barred to the extent that the direct claim is barred. See *Gilbert v. City of Cambridge,* 932 F.2d 51, 57 (1st Cir. 1991) (court must focus on substance of the claim as opposed to its form as one for declaratory relief or damages); *Page v. LeRoux*, 43 Mass. App. Ct. 708 (1997).

LMC is entitled to partial summary judgment on its claims for insurance coverage under the primary policies because the RCAB's causes of action accrued on June 1, 1995 and the RCAB did not file its complaint until March 5, 2004. In its Complaint, the RCAB alleges that LMC breached the insurance policies by applying aggregate limits to the bodily injury claims resulting from the sexual abuse by RCAB priests and this Court has determined that the LMC

policies' bodily injury aggregate limits do not apply to these claims. Cremins Aff., Ex. 8 (11/19/04 Hearing Transcript), 67:17-69:1 The RCAB admits that it was aware of LMC's position that the aggregate limits applied on June 1, 1995. Cremins Aff., Ex. 7 (Complaint, ¶ 16). Yet the RCAB waited more than eight years and nine months to file a complaint alleging that LMC's position regarding the applicability of aggregate limits constituted a breach of the terms of the insurance contracts, was a misrepresentation, and violated the Massachusetts Unfair and Deceptive Trade Practices Act. Since these are the only operative facts and they are undisputed, LMC is entitled to summary judgment as a matter of law.

Under Massachusetts law, it is well established that a cause of action for breach of contract begins to accrue at the time of the breach. See *Saenger Organization, Inc. v. Nationwide Insurance Licensing Associates, Inc.,* 119 F.3d 55, 64 (1st Cir. 1997). This rule applies even though a specific amount of damages is not ascertainable at the time of the breach or even if damages may not be sustained until a later time. "A cause of action for breach of contract generally accrues at the time of breach, **even if the amount of damages may be unknown or if damages might not be sustained until later**." *Whitcomb v. Pension Dev. Co.*, 808 F.2d 167, 169 (1st Cir. 1986) (emphasis added), citing *Campanella & Cardi Construction Co. v. Commonwealth*, 351 Mass. 184, 185 (1966); see also, *International Mobiles Corporation v. Corroon and Black*, 29 Mass. App. Ct. 215, 221 (1990) citing *Restatement (Second) of Contracts* § 236 comment (a) (1981) ("even if the injured party sustains no pecuniary loss or is unable to show such loss with sufficient certainty, he has at least a claim for nominal damages"); *Nortek, Inc. v. Liberty Mutual Ins. Co.*, 2004 Mass. Super Lexis 196, *14-15 (May 28, 2004)

("[a] cause of action for breach of contract accrues at the time of the breach. This rule applies even though a specific amount of damages may not be sustained until a later time").[2]

In *International Mobiles Corporation*, the insured filed breach of contract and negligence claims against an insurance agent who failed to procure adequate insurance coverage. The court identified the date of the breach as the date the agent failed to obtain adequate insurance coverage and rejected the insured's argument that its right to file suit "did not 'ripen' until June, 1986 when it was required to pay" damages as a result of the lack of insurance. *Id.* at 222. The court held that although an amount of damages may not be determined until after the time of the breach, if at all, the cause of action still accrues at the time of the breach. *Id.* citing *Boston Tow Boat Co.* v. *Medford Natl. Bank*, 232 Mass. 38, 40-42 (1919); *DiGregorio* v. *Commonwealth*, 10 Mass. App. Ct. 861, 862 (1980). Accordingly, even if the RCAB could present evidence that it did not incur any financial injury before March 4, 1998, it would not be sufficient to preclude summary judgment.[3]

For the limitations clock to begin ticking, the RCAB did not need to know every fact required to prevail on its claims. *Wolinetz v. Berkshire Life Ins. Co.*, 361 F.3d 44, 48 (1st Cir. 2004), citing, *Riley v. Presnell*, 409 Mass. 239, 243 (1991). It is sufficient that on June 1, 1995, the RCAB knew that LMC was limiting its payments under the policies to $300,000 per policy period and that by simply reviewing the terms of Coverage Part 7, which its counsel finally did more than eight years later, it could have ascertained the fact that the policies' aggregate limits did not apply to bodily injury claims resulting from sexual abuse. While the statute of

---

[2] A true and accurate copy of this decision is attached as Cremins Aff., Ex. 17.

[3] Though they are not material facts, prior to March 4, 1998, the RCAB did incur "out-of-pocket" monetary damages as a result of bodily injury claims based on sexual abuse by Fr. Robert M. Burns. The RCAB paid $825,000 to settle a claim based on the sexual abuse of a victim by Fr. Robert M. Burns in August, 1992, and paid $900,000 to settle a second claim based on the sexual abuse of a victim by Fr. Robert M. Burns in August, 1994. Cremins Aff. Ex. 18.

limitations will be tolled by the "discovery rule," where the claim involves an "inherently unknowable wrong," the policy language in Coverage Part 7 that restricted the bodily injury aggregate limits was not "incapable of detection by the wronged party through the exercise of reasonable diligence."  See *International Mobiles*, 29 Mass. App. Ct. 215, 223 (1990) citing *Melrose Hous. Auth. v. New Hampshire Ins. Co.,* 24 Mass. App. Ct. 207, 212 (1987); see also, *Key Trust Co. of Maine v. Doherty, Wallace, Pillsbury and Murphy, P.C.*, 811 F.Supp. 733, 737 (D. Mass. 1993), quoting *Edwards v. John Hancock Mutual Life Ins. Co.*, 973 F.2d 1027,1029 (1st Cir. 1992) (a cause of action may be tolled until the facts that give rise to it, "either become known or should have become known to the injured party **in the exercise of reasonable diligence**") (emphasis added); *Saenger Org., Inc. v. Nationwide Insurance Licensing Assoc.*, 119 F.3d 55, 65 (1st Cir. 1997), citing *Williams v. Ely*, 423 Mass. 467, 473 n.7 (1996) (for discovey rule to apply, the claim must be inherently unknowable).  Thus, the RCAB cannot rely upon the "discovery rule" to extend the statute of limitations.[4]

A recent insurance coverage case decided by Judge Van Gestel is analogous to the present case.  In *Nortek v. Liberty Mutual Ins. Co.,* 2004 Mass. Super. Lexis 196, *10-12 (May

---

[4] Even if the discovery rule applied, it would not excuse more than eight years of neglect on the part of the RCAB and its counsel in failing to review the insurance policies.  The RCAB's General Counsel, Wilson D. Rogers, Jr. attended the meeting on June 1, 1995 when LMC informed the RCAB that it would apply aggregate limits to the sexual abuse claims. Cremins Aff., Ex. 2 (Rogers Deposition), 57:15-58:13.  Two years earlier, by letter dated October 14, 1993, Attorney Rogers wrote to LMC contesting LMC's initial disclaimer of coverage for the sexual abuse claims.  Cremins Aff., Ex. 19.  By letter dated January 25, 1994, Attorney Rogers again wrote to LMC expressing his disagreement with LMC's coverage position. Cremins Aff., Ex. 20.  Yet Attorney Rogers never reviewed any insurance policy issued by LMC to the RCAB, despite the fact that by letter dated February 24, 1994, LMC wrote to Attorney Rogers to "direct your [Attorney Rogers'] attention to the "Insuring Agreement" section under Coverage Part 7 of the Combination Automobile General Liability Policy . . . ." (Coverage Part 7 includes the "Limits of Liability" section that restricts the bodily injury aggregate limits to the products and completed operations hazards.)  Cremins Aff., Ex. 2 (Rogers Deposition), 110:13-21; Cremins Aff., Ex. 4.  In June of 1995, when LMC informed the RCAB that it was applying aggregate limits to the policies, all Attorney Rogers or anyone else at the RCAB had to do was read Coverage Part 7, to which it was directed by LMC, to discover that the application of aggregate limits to the sexual abuse claims violated the terms of the policies.  See *Fay v. Aetna Life Ins. & Annuity Co.*, 307 F. Supp. 2d 284, 292 (D. Mass 2004) ("Defendants make the unassailable argument that plaintiffs were on notice of their injury when the policy was delivered because all they had to do was read it to know that it was something other than what they had anticipated").

28, 2004), the insured alleged that the insurer breached the policies by improperly allocating settlement payments to policies over various years. As a result of the allocation, the insured was subsequently required to pay additional "retrospective" premiums. *Id.* More than six years before the filing of the action, the insurer informed the insured of the manner in which the settlement payments would be allocated among the policies. *Id.* at 8-10. The court held that because the insured had notice of the insurer's allocation position and waited more than six years before it filed its complaint alleging that the allocation constituted a breach of the insurance contracts, the claims against the insurer were barred by the statute of limitations. *Id.* at 18.

As in the present case, where Attorney Rogers wrote to LMC on numerous occasions prior to March 4, 1998 taking issue with LMC's coverage positions, in *Nortek*, the insured's risk manager wrote to the insurer more than 6 years before the filing of the action and contested the insurer's allocation position. *Id.* at 8. The court pointed to a date in the record (contained in correspondence from the insured to the insurer) which established that the insured's Director of Risk Management "knew full well that Liberty was allocating the . . . Loss Claims" over specific policy years. *Id.* at 15. In the present case, the correspondence from the RCAB's General Counsel, Attorney Rogers, to LMC in 1996 and 1997 which expressly refers to the exhaustion of the policies' aggregate limits irrefutably demonstrates that he (and consequently the RCAB) "knew full well" that LMC was applying aggregate limits. That Attorney Rogers never reviewed the insurance policies' Coverage Part 7, to which he was explicitly directed by LMC in February of 1994, and purportedly did not realize that the aggregate limits did not apply to the sexual abuse claims, may support a legal malpractice claim; however, it does not excuse the RCAB's failure to file its claim for insurance coverage with the applicable statute of limitations period.

## CONCLUSION

Since the undisputed facts establish that the RCAB's claims for insurance coverage arose on June 1, 1995 and the RCAB did not file the present action until March 4, 2004, LMC is entitled to summary judgment dismissing all of the RCAB's claims for coverage under the LMC primary policies.

Respectfully submitted,

LUMBERMENS MUTUAL
CASUALTY COMPANY

By its counsel,

/s/ Anthony R. Zelle___
John E. Tener, BBO No. 563791
Anthony R. Zelle, BBO No. 548141
Mary L. Cataudella, BBO No. 553350
Brian P. McDonough, BBO No. 637999
Nancy M. Cremins, BBO No. 658932
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108
(617) 557-5900

Dated: January 11, 2005