6/3/2004  June 3, 2004

```
1                  UNITED STATES DISTRICT COURT
2                    DISTRICT OF MASSACHUSETTS
3     * * * * * * * * * * * * * * *                              *
4   ROMAN CATHOLIC ARCHBISHOP     *  OF BOSTON, a Corporation    *
5     Sole                        *                              *
6                 Plaintiff       *                              *
7        VERSUS                   *     CA-04-10461-DPW
8   LUMBERMENS MUTUAL CASUALTY    *  COMPANY                     *
9                 Defendant       *                              *
10    * * * * * * * * * * * * * * *
11         BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
12            UNITED STATES DISTRICT COURT JUDGE
13                          HEARING
14                       JUNE 3, 2004
15  APPEARANCES:
16      PAUL B. GALVANI, ESQ. AND THOMAS H. HANNIGAN, ESQ.,    Ropes & G[r]
17      Massachusetts  02110, on behalf of the Plaintiff
18      MICHAEL D. LURIE, ESQ. AND JOHN E. TENER, ESQ,         Robinson & Col[e]
19      Massachusetts  02108, on behalf of the Defendant
20                      Courtroom No.  1 - 3rd Floor
21                      Boston, Massachusetts 02210
22      Pamela R. Owens - Official Court Reporter
23         John Joseph Moakley District Courthouse              1 Courth[ouse]
24              Boston, Massachusetts  02210
25      Method of Reporting:  Computer-Aided Transcription
```

EXHIBIT

2

6/3/2004  June 3, 2004

1    depositions on each.
2            THE COURT: No, I understand that. That's not
3    going to happen. I mean, there are several reasons it's
4    not going to happen. The first is who's has got time
5    between now and September 3rd to be doing that. But
6    more fundamentally, no, they don't get that. But it
7    seems to me that they do get some discovery with respect
8    to the files that deal with this.
9            Now, to the degree we're concerned with
10   privacy interests of victims and others, then, you know,
11   a protective order is the way to deal with that. And
12   that does bring me to the suggestion that there will be
13   withholding of documents in the initial discovery.
14   Initial discovery is everything. You turn over
15   everything you've got on this. If it's sensitive and
16   needs some form of protection, then I'm sure you can
17   work out a protective order to deal with it.
18           MR. GALVANI: Well, but that raises a question
19   as to whether this is material that they would
20   ultimately be entitled to.
21           THE COURT: I'm making the provisional
22   judgment that it is. Certainly, I want to get that
23   moving along so that they can start thinking about that.
24   That doesn't necessarily mean that they're going to be
25   -- let me be clear. They are not going to be doing

6/3/2004  June 3, 2004

1   of eight different counsel.  But also --
2              THE COURT:  Of how many?
3              MR. GALVANI:  Eight.
4              MR. HANNIGAN:  -- I just want to raise another
5   issue.  And that is that these negotiations were done in
6   the context of mediation.  You're going to run head long
7   into issues about asking people what was said or done in
8   the context of the mediation under the Massachusetts
9   mediation privilege.  So I want Your Honor to be aware
10  that that is a very substantial issue.  And when they
11  file deposition notices on the eight claimant's counsel,
12  you're going to hear screams that this was done in the
13  context of a mediation and you're not entitled to it.
14             THE COURT:  Okay.  Well, then they can spin
15  their wheels on that if they want and they can file
16  motions to compel.  Maybe I'll get to them in time and
17  maybe I won't.  This much I know:  You've got until
18  September 3rd to develop this.  You're going to have to
19  make a very strong showing that you've been deprived of
20  something under 56(f) before I deny it.  And I want the
21  incentives to be in place so that you're going to --
22  both sides are going to be exercising a little bit of
23  common sense in their approach to the discovery process
24  here.
25             But let me go back to it.  I think they are

1   entitled to all your paper.  And that ought to be part
2   of the initial discovery, initial disclosure discovery
3   here.  And they are entitled to depose counsel who
4   represented the Archdiocese in the settlement
5   negotiations.  And they're entitled to notice, whether
6   they get them or not, notice the counsel for at least
7   the steering committee -- I should say no more than
8   the steering committee.  I can't see the rest of these
9   people being dealt with.
10              MR. LURIE:  One other issue, Your Honor, if I
11  may.  With respect to -- if the focus of the discovery
12  is on what were the terms of various policies that were
13  issued and how they were procured and so on --
14              THE COURT:  How they were procured, what does
15  that mean?
16              MR. LURIE:  In other words, we understand that
17  the Archdiocese has a claims manager.  We don't know for
18  how many years back that goes.  Somebody was responsible
19  for purchasing insurance.  There were underwriting --
20              THE COURT:  Then you can take their
21  depositions.  I mean, this is --
22              MR. LURIE:  I just want to make sure that you
23  weren't precluding us from that because it's not
24  specifically within the items, the eight items.
25              THE COURT:  I mean to comprehend in lost

```
 1    to talk about the investigation of the claims here?
 2              MR. GALVANI:  No.  We can take that out.
 3              THE COURT:  And the cooperation of the insured
 4    or insurer?
 5              MR. GALVANI:  Well, the cooperation of the
 6    claimant or insured, I wouldn't want to eliminate the
 7    correspondence back and forth between the parties about
 8    the policies.  So, as long as it's clear that that
 9    discovery still is viable, then we could take out all of
10    number (8) for now.
11              THE COURT:  I think I'm inclined to say that
12    I'm going to let you have their investigation of this,
13    to leave (8) in on this.
14              MR. GALVANI:  Okay.
15              MR. LURIE:  Your Honor, would this be covered
16    -- I would have anticipated in the ordinary course that
17    the initial disclosures would have included all --
18              THE COURT:  It should have all the documents,
19    all the paper in this.
20              MR. LURIE:  And that would include the
21    underlying claim files and --
22              THE COURT:  As far as I'm concerned, it does.
23    They turn over -- paper discovery on this is going to be
24    entire, I think, for both parties.
25              MR. LURIE:  I just wanted to make sure that
```

6/3/2004  June 3, 2004

1   MR. TENER: If I may be heard on that, Your
2   Honor, it's not a whole different issue. It's
3   interrelated fundamentally with how Your Honor will be
4   construing this contract and --
5       THE COURT: How so?
6       MR. TENER: You will have to look at a number
7   of factual predicates.
8       THE COURT: But I'm not going to look at it in
9   a specific sense. You're going to present me with
10  factual predicates, all the alternative ways of viewing
11  this. But do I have to look at individual priest files?
12  I don't think so, not early on.
13      MR. TENER: I think you said earlier their
14  discovery -- initial disclosure discovery -- must be all
15  documents. That would fundamentally include all the
16  claims files, all the personnel records, all the records
17  used in any way on the question of notice, on the
18  question of knowledge. That's a document production.
19  That's not deposition discovery. I understood Your
20  Honor to say that is producible.
21      THE COURT: You know, let me just tell you the
22  screen through which I'm listening to what you have to
23  say. And it is that I'm not going to countenance a
24  demand for such overburdensome discovery that it ties
25  everybody up from getting to what I think you have to

6/3/2004 June 3, 2004

1   get to. And, so, if that's what's involved, I'm not
2   really interested. If, by contrast, it is going to be
3   necessary for ultimate preparation for trial, then I
4   think you're entitled to it on an appropriate schedule,
5   not tomorrow, but I suspect that you're ultimately
6   going to have a right to at least look at this material
7   while I'm considering whether or not I'm going to
8   exclude it. There's no harm in that happening.
9          So, with that ground rule, why not? Why not
10  turn it over?
11         MR. GALVANI: Well, Your Honor, it creates an
12  enormous issue. There are a lot of documents in those
13  files that are protected under various privileges,
14  priest penitent, psychotherapist patient, attorney/
15  client.
16         THE COURT: But why can't you turn over the
17  stuff that has to do with the individual claims, the
18  claimants as to the individual priests that may have
19  found their way into the personnel file?
20         MR. GALVANI: Well, there is a lot of material
21  in the personnel file, as you might imagine. These
22  priests have been priests in some cases for decades.
23  And there's a personnel file and then there are separate
24  files that are generated when an issue arises. And a
25  lot of those files have privileged information in them.

6/3/2004  June 3, 2004

```
 1            THE COURT:  Well, not entirely.
 2            So let me go back to this.  The way in
 3   which I'm thinking about these cases, your claims on
 4   these cases -- of course, I don't understand them
 5   entirely, but I have some thoughts about supervisory
 6   responsibility here.  And it arises principally -- for
 7   me, anyway -- in a very standard sort of setting which
 8   is the responsibility of municipalities for police
 9   officer misconduct.  And invariably at the outset of
10   such cases, there's a demand for the personnel file.
11   And invariably, I say "no, you can't have the personnel
12   file."  But if there is information concerning similar
13   misconduct by the alleged supervised individual prior to
14   the incident that is the subject of the claim, then I
15   will turn it over or order it to be turned over subject
16   to some form of protective order until we've got some
17   idea of where it leads.
18            Now, narrowed to claims or notice to the
19   Archdiocese of acts of sexual misconduct of the type
20   that are claimed here -- and I guess it's -- is it all
21   pedophilia or not?
22            MR. GALVANI:  That's not a good term to use,
23   Your Honor.  That's a very narrow psychologic term and
24   is misused constantly by the people by reported it.
25   It has to do with pre-pubescent minors.  And actually
```

50

```
 1   most of what is involved in these cases is not that at
 2   all.
 3              THE COURT:  What would be the term of art?
 4              MR. HANNIGAN:  Well, I think the official term
 5   of art is something like ephebophilia.
 6              THE COURT:  That's one I'm not familiar with.
 7   What does that mean?
 8              MR. HANNIGAN:  It takes you from when
 9   pedophilia ends to adulthood, as I understand it.  So it
10   more or less --
11              THE COURT:  Through age of consent --
12              MR. HANNIGAN:  Yes.
13              THE COURT:  -- or being capable of providing
14   consent to --
15              MR. HANNIGAN:  I'm not sure whether it stops
16   at the criminal age of consent or 18, but it's --
17              THE COURT:  Are any of these claims -- for
18   instance, I think of claims of women who work in the
19   rectory.  Were those claims under this?
20              MR. HANNIGAN:  There were actually a few
21   claims that involved post-18, people who were in a
22   setting such as that or counseling situations, that kind
23   of thing, Your Honor.  So there were actually -- not
24   many, but there were a few in that context.
25              THE COURT:  As a practical matter, what does
```

1  it take to cull the files to see whether or not there
2  were prior complaints with respect to these priests of
3  the type that were alleged in the claim?
4          MR. HANNIGAN:  It would be a large amount of
5  work.  I mean, there are over a hundred, well over a
6  hundred clergy that were involved in the 540 claims.
7  And to go through and to do it right, to be careful
8  about it, would be a large amount of work.  It would be
9  very disruptive to the people in the delegate's office
10 where these files are kept.  I would request that that
11 not be required at this point.  If the Court does order
12 the personnel files turned over, those sort of things
13 would necessarily be included in there.  But it would be
14 a large amount of work to do it in advance, just to go
15 in and target those things.  And it would be a lot of
16 interpretation questions, I think, as to whether the
17 document itself fits the similar conduct.  There may be
18 a rumor that's unspecific, somebody saying, you know,
19 I mean, "he's fooling around with young kids."
20 Does that mean that he's fooling around sexually?  Is
21 he acting immaturely in a setting in which he's
22 involved with kids?  I mean, there would be a lot of
23 interpretation questions, I think.  And I would just be
24 worried that not only would it be a lot of work, we
25 might get it wrong.

6/3/2004  June 3, 2004

1    I do think that there's going to be at some
2    point a realistic prospect that some differentiation
3    among claims is going to be appropriate.  And while one
4    always wants to limit discovery to no more than is
5    necessary to resolve the case, you make judgments early
6    on at the outset about things that might be involved
7    that the parties can do and should do in evaluating.
8         And I think that my view is with respect to
9    the individual priests involved, that there should be
10   provided to the insurer defendant here materials that --
11   any materials in the personnel file that touch upon
12   prior notice as to similar misconduct.  Of course,
13   what's similar is always a question of judgment.  But I
14   think that has to be undertaken at this point.  Now,
15   does it get turned over on July 1st or whatever the date
16   is?  No, it doesn't, I don't think.  It has to be done
17   in a realistic time frame, but it's got to be done and
18   somebody has got to cull through those files to deal
19   with that so that they get that kind of information
20   available to them and have that information by no later
21   than September 3 and really before that so that they can
22   at least conceive the factual circumstances that may
23   take this out of coverage and with some degree of
24   precision.
25        So, I think whoever has got the responsibility

6/3/2004  June 3, 2004

1   to share some observations with you.  So, perhaps you'll
2   want to go talk to them.
3           MR. TENER:  Thank you.
4   [Pause]
5           THE COURT:  Is there anything further?
6           MR. TENER:  I think that's all, Your Honor.
7           THE COURT:  Okay.  So, what the order is --
8   let's be sure that we're all dealing with the same page
9   here.
10          The discovery with respect to items that are
11  set forth in the joint statement at page 9, lines 1
12  through 8 -- roughly speaking, lost policy discovery,
13  reconstruction of policy, and questions of global
14  settlement -- will be completed by September 3 unless
15  I shorten the time.
16          Discovery regarding the financial condition of
17  LMC or LMC's bad faith may not be inquired into at this
18  time.
19          I will not order the personnel files as such
20  to be turned over.  However, with respect to the
21  individual priests as to whom claims have been made, the
22  defendants shall be provided with the information from
23  the plaintiffs' files that touch upon prior notice of
24  similar conduct on a rolling basis by no later than
25  August 15, 2004.

1   as to the undertakings here.
2           MR. GALVANI: Right. Okay.
3           THE COURT: And then mediation and all of
4   that. We're just not going to do that at this point
5   until I've given you some form of direction on that and
6   given myself some form of direction on what I think
7   discovery can be.
8           MR. HANNIGAN: Thank you.
9           THE COURT: July 1st for an index of specific
10  claims setting forth the name of the priest involved,
11  the time of the, I guess, victim.
12          MR. LURIE: The events for which they are
13  seeking coverage.
14          THE COURT: Okay. The time period and whether
15  a particular settlement figure has been reached now.
16          MR. GALVANI: Well, they're going to get the
17  claim file.
18          THE COURT: Somebody is going to do this. And
19  at some point, I'm going to want to look at it in this
20  form, so do it in this form as well.
21          MR. HANNIGAN: These are the claims, Your
22  Honor, that impact the Kemper coverage.
23          THE COURT: Right, right. Okay.
24          MR. GALVANI: Thank you, Your Honor.
25          MR. HANNIGAN: Thank you.