UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF BOSTON, A CORPORATION SOLE,<br><br>        Plaintiff,<br><br>v.<br><br>LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>        Defendant. | Civil Action No. 04-10461-DPW |

## AFFIDAVIT OF KATE CIMINI

I, Kate Cimini, hereby affirm as follows:

1. I am an attorney at the law firm of Ropes & Gray LLP, counsel to the Roman Catholic Archbishop of Boston, a Corporation Sole (the "RCAB"), in this matter.

2. I participated, under the supervision of Paul B. Galvani, in the production of documents from the priest personnel files pursuant to the Court's order of June 3, 2004, as well as in the RCAB's production of documents in July 2004.

3. During July 2004, I undertook to gather the files of all the priests accused of abuse in the claims affecting the LMC coverage period and that were listed on the index prepared by the RCAB pursuant to this Court's order and provided to LMC on July 1, 2004 (the "RCAB's Index").

4. While I received copies of most of the relevant files from the RCAB, the files of certain priests were already in the possession of attorneys at Ropes & Gray LLP, for reasons unrelated to this litigation. Accordingly, I sought to gather those files for copying and subsequent review and production.

5. Files of three of the priests at issue (Burns, Finegan, and Tivnan) had been temporarily set aside from the others in the possession at Ropes & Gray LLP. I was unaware of that fact, and, therefore, I did not send them for copying along with the files of all the other priests in Ropes & Gray's possession. This mistake was innocent and there was no attempt to avoid the RCAB's discovery obligation.

6. Because these files were not copied, likewise, they were not reviewed for relevance or privilege, and the portions of them that touched upon prior notice were not produced to LMC on August 13, 2004, when we produced the documents we identified in the other priest personnel files that were responsive to the Court's June 3, 2004 order.

7. The files of over one hundred individuals were copied and reviewed prior to the August 13, 2004 production. Several Ropes & Gray attorneys participated in that review. A protocol was established prior to the review to take a very broad view of what constituted "notice". That protocol required that all documents – regardless of the date of their creation – that mentioned or referred in any way to the RCAB's receipt of notice of similar misconduct by one of the priests was considered responsive. Thus, regardless when the document was created, if it reflected prior notice of misconduct by a perpetrator during the years of LMC's coverage, it was produced. Reviewers were told to err on the side of considering documents responsive. 1879 pages of documents were in this category, and were produced. They bear bates numbers RCA1500001-RCA1501879.

8. The protocol, which was based upon a review of applicable case and statutory law, required the reviewers to withhold documents protected by the attorney-client privilege, work product protection, religious comfort and guidance privilege, the

psychotherapist-patient privilege, and the First Amendment protection established under the federal and state constitutions. Those documents were listed on the privilege log.

9. At the time, I did not realize that the documents placed on the privilege log and withheld were publicly available or had been previously produced. If counsel for LMC had informed me that it knew these documents had been previously disclosed, I would have reevaluated our privilege log, as we are currently in the process of doing. In our earlier review of the claim files, we produced any documents that appeared to have been previously produced, without regard to possible privilege issues.

10. The first indication that something was missing from the August 13, 2004 production came at the deposition of Father Gilbert Phinn on January 7, 2005. I represented Father Phinn and the RCAB at that deposition.

11. Several times during that deposition, Mr. Zelle, counsel for LMC, asked why certain documents had not been produced to LMC. Unaware of any possible problem with the August 13, 2004 production, I responded that the RCAB had complied fully with its discovery obligations in this litigation.

12. Upon the conclusion of the deposition, I immediately began a search for the documents Mr. Zelle marked as exhibits in Father Phinn's deposition.

13. The first place I looked for the documents was in the database of documents produced by LMC to the RCAB in its initial production in July 2004. Of the twenty-seven exhibits, twenty-five were contained in that production, and, therefore, had been turned over to LMC by the RCAB before this litigation began.

14. I then discovered that the RCAB had not reviewed and produced documents from the files of Fathers Burns and Finegan on August 13, 2004. I reviewed

the documents marked by Mr. Zelle and determined that certain of them were responsive to the Court's order.

15. I subsequently determined that the files of the three priests mentioned above had been overlooked and had not been reviewed. *See* ¶5 above.

16. If LMC's counsel had informed me that it thought documents were missing, I would have endeavored to correct any error as quickly as possible.

SIGNED UNDER PENALTIES OF PERJURY THIS 26th DAY OF JANUARY, 2005.

/s/ Kate Cimini_____

Kate Cimini