# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

THE ROMAN CATHOLIC ARCHBISHOP
OF BOSTON, A CORPORATION SOLE,

          Plaintiff,

v.

LUMBERMENS MUTUAL CASUALTY
COMPANY,

          Defendant.

Civil Action No. 04-10461-DPW

---

## LUMBERMENS MUTUAL CASUALTY COMPANY'S
## REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

On January 11, 2005, Lumbermens Mutual Casualty Company ("LMC") filed a motion for partial summary judgment based on the expiration of the statutes of limitations for the claims asserted in the March 4, 2004 Complaint filed by the Roman Catholic Archbishop of Boston, A Corporation Sole ("RCAB"). On January 25, 2005, the RCAB filed an opposition brief that raises new matters (the "*Opposition*"). LMC respectfully submits this reply to address new matters raised in the *Opposition*.

### ARGUMENT

In its Complaint, the RCAB contends that LMC breached the insurance policies and engaged in a course of misrepresentation when "[i]n **June 1995** . . . LMC through its representatives represented that the primary policies carried . . . aggregate limits of $300,000 . . . [and] that the aggregate limit of liability for certain policy years had been eroded . . . ."

*Complaint,* ¶16 (emphasis supplied). In its opposition to this motion for summary judgment, the RCAB concedes that the relevant breach is defined by the allegations in the complaint. *Opposition, p. 12,* citing *Nortek, Inc. v. Liberty Mutual Ins. Co.*, 2004 Mass. Super Lexis 196, *14-15 (May 28, 2004). However, faced with the prospect of summary judgment based on its failure to comply with the applicable statutes of limitation, the RCAB now claims that the June 1, 1995 date is immaterial. The RCAB now suggests that "LMC's argument that the breach took place in June 1995 either misperceives or mischaracterizes the breaches of which the RCAB complains in this lawsuit" (*Opposition, p. 4*), but when the aspersions it casts at LMC are peeled away, the RCAB's Opposition simply presents the legally untenable argument that its cause of action did not accrue until it sustained quantifiable damages. See *Whitcomb v. Pension Dev. Co.*, 808 F.2d 167, 169 (1st Cir. 1986); *Campanella & Cardi Construction Co. v. Commonwealth*, 351 Mass. 184, 185 (1966); *International Mobiles Corp. v. Corroon and Black*, 29 Mass. App. Ct. 215, 221 (1990); *Restatement (Second) of Contracts* § 236 comment (a) (1981).

In a transparent effort to avoid the application of the well-settled law that a cause of action accrues at the time of the breach, as opposed to the time the damages are sustained, the RCAB now contends that LMC did not breach the insurance contract in 1995, when it began to apply aggregate limits and disclaimed coverage for any claim presented after the aggregate limits were exhausted. Rather, the RCAB argues that "the relevant breaches of contract are LMC's refusal to pay defense costs for claims falling within the scope of coverage, and LMC's refusal to indemnify the RCAB for loss or damage which the RCAB had become legally obligated to pay." *Opposition, p. 4.* This argument equates the breach of contract with the ensuing damages. In seeking to define the breach in terms of the damages caused by the breach, the RCAB appears to recognize that its cause of action will be time-barred if this Court adheres to precedent which

2

holds that a contract cause of action accrues when the terms of the contract are breached, even if no damages have been sustained.[1]

I. **THE RCAB's "CHARACTERIZATION" OF THE BREACH OF CONTRACT DOES NOT ESTABLISH THE DATE OF ACCRUAL FOR ITS BREACH OF CONTRACT CLAIM.**

On June 1, 1995, when LMC informed Attorney Rogers that the policies had aggregate limits and LMC would not provide any coverage to the RCAB after the aggregate limits were exhausted, the RCAB had the right to file a complaint alleging breach of contract. As stated in the RCAB's brief on June 1, 1995, LMC "invoked the aggregates as a basis upon which to deny coverage." *Opposition*, p. 11. Thus, on June 1, 1995, the RCAB had a right to bring an action against LMC for breach of contract, even though it had not yet suffered any damages. *Whitcomb*, 808 F.2d at 169; *Campanella & Cardi*, 351 Mass. at 185; *International Mobiles Corp.*, 29 Mass. App. Ct. at 221, citing *Restatement (Second) of Contracts* § 236 comment (a) (1981).

While the allegations in the RCAB's Complaint clearly establish that it seeks damages resulting from the partial disclaimer of coverage based on the application of aggregate limits that occurred on June 1, 1995, it presently seeks to characterize the breach as something different. However, the RCAB's contention that "[e]ach time the RCAB submitted a claim for defense costs and/or indemnity, and the claim was denied, another cause of action for breach of contract accrued" is devoid of any legal or logical rationale.[2] *Opposition*, p. 8. First, this facile

---

[1] The RCAB's recognition that a new legal theory is required to sustain its cause of action is further evidenced by the fact that it has abandoned its contention that this litigation can be resolved without examining the underlying claims individually. See *Opposition*, p. 6 (". . . the date on which these duties were breached by LMC **as to any particular claim** is the date on which it failed to pay the claim submitted by the RCAB . . . .").

[2] The RCAB's reliance on the *Commercial Union Assurance Co. v. Porter Hayden*, 116 Md. App. 605 (1997) for this proposition is misplaced. In *Porter Hayden*, the insured submitted asbestos-related bodily injury claims to its insurer throughout the years 1978, 1979 and 1980. *Id.* at 645. Commercial Union disclaimed coverage for all of these claims. *Id.* In 1987, Porter Hayden tendered five new claims to its insurer, and on September 21, 1987, Commercial Union disclaimed coverage for these claims. *Id.* at 618-619. **(Footnote continued on next page.)**

3

construction ignores the fact that it is the insurance policies themselves that establish the contractual rights and obligations of the parties, and that the partial disclaimer made by LMC on June 1, 1995 was (mistakenly) at odds with the terms of the policies. As alleged by the RCAB in its Complaint, as a result of the LMC's decision to apply aggregates limits, "the RCAB has been deprived of the benefit of insurance coverage for which it paid premiums to LMC." There is no difference between the breach of contract established by LMC's application of aggregate limits on June 1, 1995, and the breach that the RCAB could have alleged if LMC had fully disclaimed coverage, apart from the extent of damages that could have been alleged. Had LMC fully disclaimed, the RCAB would be claiming an additional $300,000 under each of the LMC policies. On the present undisputed facts, the RCAB had the right to file suit against LMC on June 1, 1995, because LMC breached the policies by partially disclaiming coverage at that time.

Second, the RCAB's assertion that separate causes of action accrued each time LMC applied the aggregate limits confuses the breach of contract with the ensuing damages. It defies logic to suggest that the RCAB had no cause of action in June of 1995, but rather had to wait until 1998, when all of the primary policies were exhausted, and then file separate lawsuits for breach of contract each time LMC refused to provide a defense or to indemnify the RCAB in connection with an underlying sexual abuse claim. LMC refused to defend or indemnify the RCAB for claims presented after January 14, 1998 based on the coverage position it advanced on

---

On September 21, 1990, Porter Hayden filed a declaratory judgment action seeking a declaration of Commercial Union's duty to defend and indemnify the five claims that were filed against it in August of 1987 and such other personal injury cases which may be tendered in the future. *Id.* The relief sought expressly excluded all of the underlying cases filed before 1987. *Id.* Applying Maryland's three-year statute of limitations, the court held that the action was not time-barred. In the present case, LMC's application of aggregate limits is analogous to Commercial Union's denial of asbestos-related claims in 1978, 1979 and 1980. Porter Hayden recognized that a claim based on the denial of those claims would be time-barred and, for that reason, its complaint expressly excluded a claim for relief based on the denial of those claims.

4

June 1, 1995, which constituted a breach of the insurance policies.[3] Affidavit of Nancy M. Cremins, Ex. 16. The absurdity of the RCAB's argument is exposed even more clearly when one observes that based on the standard espoused by the RCAB, it would have to file two lawsuits in connection with each underlying claim: the first when the underlying suit was filed and LMC refused to pay for the defense, and the second when LMC refused to indemnify the RCAB after the suit was settled.[4]

Third, the fact that the RCAB seeks, in this lawsuit, a determination of the LMC's **future** coverage obligations with respect to pending sexual abuse claims undermines its assertion that the accrual date for the breach of contract claim depends on the date of the underlying claim. See *Complaint*, ¶ 58 ("[a]s a result of LMC's breach of the contract of insurance, the RCAB ... **will be required to pay defense costs and make settlement payments**") (emphasis added). Clearly, when the RCAB filed this action, it recognized that its accrual was not postponed due to "uncertainty about the total extent of the damages." See *Swasey v. Barron*, 46 Mass. App. Ct. 127, 132 (1999).[5] To now argue that its cause of action did not arise until it sustained monetary damages is a product of desperate disingenuousness.

---

[3] Even if the court applied the reasoning advanced by the RCAB, its claims would be barred by the statute of limitations because in the January 14, 1998 letter, LMC fully disclaimed coverage for any future claim made under pre-1977 policies. This lawsuit was not filed until March 4, 2004.

[4] This Court recently held that a demand letter does not trigger a duty to defend. *Liberty Mut. Ins. Co. v. Black & Decker Corp.*, 2005 U.S. Dist. Lexis 659, *11, n.2 (D. Mass. 2005). Thus, based on the RCAB's theory, it would have no recourse against LMC based on LMC's refusal to participate in the settlement of those claims that were presented by way of letter, a substantial percentage of the total, because the duty to defend, and the coexistent right to settle, never arose. Moreover, since the RCAB stopped submitting claims to LMC after it was informed that the aggregate limits had been exhausted, if the RCAB's theory for determining the accrual of the statute of limitations were applied, it would be impossible to determine that date. See, letter to Rogers from Meany dated February 14, 1998 informing that RCAB need not submit pre-77 claims. Ex. 11 to Affidavit of Brian McDonough submitted with LMC's Opposition to the RCAB's motion for partial summary judgment on the aggregate issue.

[5] The fact that the RCAB was aware, *in 1995*, that it was only a matter of time before the application of aggregate limits would result in monetary damages is evidenced by the correspondence between Attorney Rogers (the RCAB's General Counsel) and LMC, which is attached to the Affidavit of Nancy M. Cremins submitted in support of this motion.

5

Finally, the RCAB's characterization of LMC's violation of the policies' terms by its application of aggregate limits as an anticipatory breach is legally unfounded. In *John Beaudette, Inc. v. Sentry Mutual Ins. Co.*, 94 F.Supp. 77 (D. Mass. 1999), the case cited by the RCAB in support of its contention that LMC's application of aggregate limits beginning in 1995 was merely an expression of intent to commit a breach sometime in the future, the court referred to *Berkshire Mutual Ins. Co. v. Burbank*, 422 Mass. 659 (1996) to explain the distinction between "repudiation" and an actual breach of contract. *Beaudette*, 94 F.Supp. at 101 n.25. In *Berkshire*, the insurance policy had an arbitration clause which provided "'[t]he determination as to whether an injured person is legally entitled to recover damages from the owner or operator of a responsible [underinsured] automobile will be by' arbitration if the parties cannot agree." 422 Mass. at 661; *Beaudette*, 94 F.Supp. at 101. Thus, the court held that when Berkshire, the insurer, stated that it would not submit to arbitration, it was not a repudiation of the contract (a "statement 'indicating that the obligor will commit a breach'"), but that "[i]nstead, Berkshire committed an actual breach of the contract." *Beaudette*, 94 F.Supp. at 101 n.25. In the present case, as recognized in *Beaudette* and *Berkshire*, a cause of action accrues when there is a justiciable controversy, since "it would be illogical to let the statute of limitations for bringing an action begin to run before the action can be brought." *Beaudette*, 94 F.Supp. at 100; *Berkshire*, 422 Mass. at 661. On June 1, 1995, there was a justiciable controversy between LMC and the RCAB and the RCAB had six years from that date to file a lawsuit seeking the determination it seeks in the present case: whether LMC breached the insurance policies by applying aggregate limits.

## II. THE RCAB'S INEXPLICABLE FAILURE TO READ THE INSURANCE POLICIES IN ITS POSSESSION DID NOT TOLL THE STATUTE OF LIMITATIONS FOR ITS MISREPRESENTATION CLAIM.

The RCAB contends that although LMC misstated the terms of the insurance policy in 1995, thus giving rise to a misrepresentation claim, the statute of limitations for that claim was tolled because "the RCAB actually discovered that the policies did not contain aggregate limits . . . . [in] late 2002 or early 2003." *Opposition*, p. 16-17. This argument is unavailing for two reasons. First, if the "discovery rule" were applicable, it would not toll the statute of limitations until "the RCAB **actually** discovered that the policies did not contain aggregate limits." It would only toll the cause of action until the facts that give rise to it, "'should have become known to the injured party **in the exercise of reasonable diligence.**'" *Key Trust Co. of Maine v. Doherty, Wallace, Pillsbury and Murphy, P.C.*, 811 F.Supp. 733, 737 (D. Mass. 1993), quoting *Edwards v. John Hancock Mutual Life Ins. Co.*, 973 F.2d 1027, 1029 (1st Cir. 1992) (emphasis added). The RCAB has admitted that all it had to do was "go back and review the portions of the policies it had in order to determine if additional coverage could be sought from its insurer." *Opposition*, p. 17 citing the Deposition of Wilson D. Rogers, III, which is attached as Ex. 7 to the Casey Affidavit. Thus, the RCAB cannot credibly contend that through the exercise of reasonable diligence it could not have determined that it was entitled to additional coverage in 1995.

Second, the discovery rule only tolls a statute of limitations when the claim involves an "inherently unknowable wrong" that is "incapable of detection by the wronged party through the exercise of reasonable diligence." *International Mobiles*, 29 Mass. App. Ct. at 223 citing *Melrose Hous. Auth. v. New Hampshire Ins. Co.*, 24 Mass. App. Ct. 207, 212 (1987); see also, *Saenger Org., Inc. v. Nationwide Insurance Licensing Assoc.*, 119 F.3d 55, 65 (1st Cir. 1997) (for discovery rule to apply, the claim must be inherently unknowable) citing *Williams v. Ely*, 423

Mass. 467, 473 n.7 (1996); *Tagliente v. Himmer*, 949 F.2d 1, 5 (1st Cir. 1991), citing *Friedman v. Jablonski*, 371 Mass. 482, 485-87 (1976). As evidenced by the RCAB's admission that all it had to do "to determine if additional coverage could be sought" was to "go back and review the portions of the policies it had," there is no rational basis for the RCAB's contention that the alleged misrepresentation concerning the applicability of aggregate limits was "inherently unknowable" or "incapable of detection."[6] Massachusetts Courts do not forgive a policyholder's failure to read its insurance policy. *Fay v. Aetna Life Ins. and Annuity Co.*, 307 F. Supp. 2d 284, 291 (D. Mass. 2004); *Loguidice v. Metropolitan Life Ins. Co.*, 336 F.3d 1 (1st Cir. 2003).

---

[6] The RCAB's argument that it was excused from the exercise of reasonable diligence by LMC's alleged concealment of the policies terms because LMC owed the RCAB a fiduciary duty is not only factually unsupported, it is legally untenable. See *Fay v. Aetna Life Ins. and Annuity Co.*, 307 F. Supp. 2d 284, 291 n.19 (D. Mass. 2004) ("[t]he relationship between an insurer and a policy holder does **not** entail a fiduciary duty"), citing *Szymanski v. Boston Mutual Life Ins. Co.*, 56 Mass. App. Ct. 367, 381-82 (2002).

8

## CONCLUSION

Since the undisputed facts establish that the RCAB's claims for insurance coverage under the primary policies arose on June 1, 1995, and the RCAB did not file the present action until March 4, 2004, LMC is entitled to summary judgment dismissing the RCAB's breach of contract, misrepresentation, and 93A claims based on the alleged denial of coverage under the primary policies.

Respectfully submitted,

LUMBERMENS MUTUAL CASUALTY COMPANY

By its attorneys,
ROBINSON & COLE LLP

*/s/ Anthony R. Zelle*

John E. Tener, BBO No. 563791
Mary L. Cataudella, BBO No. 553350
Anthony R. Zelle, BBO No. 548141
Brian P. McDonough, BBO No. 637999
Nancy M. Cremins, BBO No. 658932
Robinson & Cole LLP
One Boston Place
Boston, Massachusetts 02108
(617) 557-5900

Dated: February 4, 2005